# EXHIBIT 2

United States District Court,

E.D. Virginia,

Alexandria Division.
DUNN COMPUTER CORPORATION, d/b/a STEELCLOUD, Plaintiff,
v.
LOUDCLOUD, INC., Defendant.
No. CIV. A. 00-1793-A.
Jan. 10, 2001.

After e-business computer service provider received letter from competitor demanding that it cease and desist use of name "STEELCLOUD," which was similar to names used by competitor, provider filed action against competitor, seeking declaration that its use of "STEELCLOUD" mark did not infringe or dilute trademark rights of competitor, and alleging trademark misuse under common law and the Lanham Act. Competitor moved to dismiss. The District Court, Ellis, J., held that: (1) cease and desist letter did not create a "case or controversy" required to bring action under the Declaratory Judgment Act; (2) trademark misuse claim was not ripe; and (3) provider could not bring claims under the Lanham Act alleging trademark infringement or wrongful registration of trademark.
Motion granted.

West Headnotes

[1] KeyCite Notes 

⇨118A Declaratory Judgment
 ⇨118AIII Proceedings
  ⇨118AIII(B) Jurisdiction and Venue
   ⇨118Ak272 k. Jurisdiction Not Enlarged. Most Cited Cases

⇨118A Declaratory Judgment KeyCite Notes 
 ⇨118AIII Proceedings
  ⇨118AIII(B) Jurisdiction and Venue
   ⇨118Ak274 Jurisdiction of Federal Courts
    ⇨118Ak275 k. Diversity of Citizenship. Most Cited Cases

The Declaratory Judgment Act is not a jurisdictional grant; its more modest purpose is to allow federal courts to issue declaratory judgments only in cases that (i) meet the constitutional "case or controversy" requirement, and also (ii) present a valid basis for subject matter jurisdiction, that is, diversity or federal question jurisdiction. U.S.C.A. Const. Art. 3, § 2, cl. 1; 28 U.S.C.A. §§ 1331, 1332, 2201.

[2] KeyCite Notes 

⇨118A Declaratory Judgment
 ⇨118AI Nature and Grounds in General

&#x21EA;118AI(A) In General
  &#x21EA;118Ak5 Discretion of Court
    &#x21EA;118Ak5.1 k. In General. Most Cited Cases

The exercise of declaratory judgment jurisdiction under the Declaratory Judgment Act rests within the sound discretion of the district court. 28 U.S.C.A. § 2201.

[3] KeyCite Notes 

&#x21EA;118A Declaratory Judgment
  &#x21EA;118AI Nature and Grounds in General
    &#x21EA;118AI(D) Actual or Justiciable Controversy
      &#x21EA;118Ak62 k. Nature and Elements in General. Most Cited Cases

In general, the presence of a "case or controversy" under the Declaratory Judgment Act depends on whether the facts alleged show a controversy of sufficient immediacy and reality to warrant issuance of a declaratory judgment. 28 U.S.C.A. § 2201.

[4] KeyCite Notes 

&#x21EA;118A Declaratory Judgment
  &#x21EA;118AIII Proceedings
    &#x21EA;118AIII(F) Hearing and Determination
      &#x21EA;118Ak365 k. Scope of Inquiry and Powers of Court. Most Cited Cases

In resolving a factual dispute concerning the existence of a case or controversy required to support an action under the Declaratory Judgment Act, the court need not accept the allegations of the complaint as true, but may look behind the complaint and view the evidence to determine whether a controversy in fact exists. 28 U.S.C.A. § 2201.

[5] KeyCite Notes

&#x21EA;118A Declaratory Judgment
  &#x21EA;118AIII Proceedings
    &#x21EA;118AIII(E) Evidence
      &#x21EA;118Ak345 Weight and Sufficiency
        &#x21EA;118Ak345.1 k. In General. Most Cited Cases

Plaintiff bringing action under the Declaratory Judgment Act bears the burden to establish, by a preponderance of the evidence, that the two-part test for a case or controversy has been met; this test is whether, at the time of filing, there existed (i) an objectively real and reasonable apprehension of litigation and (ii) a course of conduct which brought plaintiff into adversarial conflict with the declaratory defendant. 28 U.S.C.A. § 2201.

[6] KeyCite Notes 

&#x21EA;118A Declaratory Judgment

⇐118AII Subjects of Declaratory Relief
   ⇐118AII(N) Trademarks
      ⇐118Ak237 k. In General. Most Cited Cases

One letter to e-business computer service provider from competitor, which demanded that provider cease and desist use of name similar to those used by competitor, did not create a "case or controversy" required to bring action under the Declaratory Judgment Act, where letter did not explicitly threaten litigation and was competitor's sole act directed at provider. 28 U.S.C.A. § 2201.

[7] KeyCite Notes 

⇐382T Trademarks
   ⇐382TIX Actions and Proceedings
      ⇐382TIX(A) In General
         ⇐382Tk1562 k. Time to Sue and Limitations. Most Cited Cases
         (Formerly 382k543)

Trademark misuse claim brought by e-business computer service provider against competitor, based on letter from competitor demanding that provider cease and desist use of name which was similar to names used by competitor, was not ripe for adjudication; competitor had not asserted a trademark infringement claim against provider.

[8] KeyCite Notes 

⇐382T Trademarks
   ⇐382TVIII Violations of Rights
      ⇐382TVIII(D) Defenses, Excuses, and Justifications
         ⇐382Tk1531 k. Misuse of Mark by Plaintiff. Most Cited Cases
         (Formerly 382k375.1)

Trademark misuse is not an independent cause of action, but is, instead, only an affirmative defense to a trademark infringement claim.

[9] KeyCite Notes 

⇐382T Trademarks
   ⇐382TVII Registration
      ⇐382TVII(B) Proceedings Concerning Federal Registration
         ⇐382Tk1315 Judicial Review or Intervention
            ⇐382Tk1317 Nature and Form of Remedy; Jurisdiction and Authority of Courts
               ⇐382Tk1317(1) k. In General. Most Cited Cases
               (Formerly 382k232.1)

Action under the Lanham Act to determine the right to registration of mark, to cancel registration or otherwise rectify the register requires a "registered mark," not one that may come into existence in the future. Lanham Trade-Mark Act, § 37, 15 U.S.C.A. § 1119.

[10] KeyCite Notes 

○—382T Trademarks
   ○—382TVII Registration
      ○—382TVII(D) Misuse of Federal Registration
         ○—382Tk1381 False or Fraudulent Registration in General
            ○—382Tk1382 k. In General. Most Cited Cases
               (Formerly 382k264)

Section of Lanham Act imposing liability on any person who shall "procure registration" in Patent and Trademark Office of mark by false means requires that such person have obtained, rather than simply applied for, registration of mark. Lanham Trade-Mark Act, § 38, 15 U.S.C.A. § 1120.

*824 Christopher M. Collins, Christopher M. Collins, P.C., McLean, VA, for Plaintiff.
Kara Marie Sacilotto, Perkins Coie, Washington, DC, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.
This trademark action, which includes two claims for declaratory judgment and one claim for trademark misuse, was brought by plaintiff solely on the basis of *825 having received a single cease-and-desist letter that did not include an explicit threat to sue. At issue on defendant's threshold dismissal motion are the following questions:
(i) whether a declaratory judgment action based on a single cease-and-desist letter presents a justiciable case and controversy as required by Article III of the Constitution;
(ii) whether the discretionary exercise of federal declaratory judgment jurisdiction is warranted for such an action, even assuming the existence of a case or controversy;
(iii) whether a common law trademark misuse claim can be asserted as an affirmative cause of action;
(iv) whether a cause of action under Section 37 of the Lanham Act, 15 U.S.C. § 1119, exists where, as here, there is a trademark application pending, but no existing registered trademark; and
(v) whether a cause of action under Section 38 of the Lanham Act, 15 U.S.C. § 1120, exists where, as here, there is a trademark application pending, but no existing registered trademark.
For the reasons that follow, the answer to each of these questions is no.

### I

This declaratory judgment action involves two companies engaged in providing network and computer services to e-businesses. Plaintiff, Dunn Computer Corporation, was founded in 1987. It provides companies with network applications and appliances, such as desktop and notebook computers and consulting services. Defendant, Loudcloud, Inc., was launched in September 1999 to provide e-businesses with high-performance website infrastructuring services. In November 1999, defendant filed an intent-to-use application with the Patent and Trademark Office ("PTO") to register the trademark LOUDCLOUD for goods and services it provides. Since then, defendant has filed more than 300 additional trademark applications to register as trademarks other terms that incorporate the word "cloud," such as "security cloud," "database cloud," "content cloud," and many others.[FN1]

FN1. Other examples include: "audit cloud," "billing cloud," "e-commerce cloud," "myloudcloud," "affiliate cloud," "fulfillment cloud," "stress cloud," "profile cloud," "user cloud," "staging cloud," "intranet cloud," "payment cloud," "customer support cloud," "news cloud," "wireless cloud," and "smart cloud."

In March 2000, plaintiff decided to change its name from Dunn to Steelcloud, Inc. apparently to reflect the nature of its current business.[FN2] Consistent with this change, plaintiff filed with the PTO an "intent-to-use" application to register the mark STEELCLOUD. On October 2, 2000, plaintiff commenced doing business under the trade name STEELCLOUD.

FN2. The record does not disclose what specific relation "Steelcloud" has to the nature of plaintiff's business.

On discovering that plaintiff was using the trademark STEELCLOUD for services similar to defendant's, defendant's attorney sent a letter to plaintiff expressing concern that plaintiff's use of STEELCLOUD would cause customer confusion. This letter stated, in pertinent part as follows:

It has come to our attention that your company recently began using the trademark STEELCLOUD for services similar to those of Loudcloud, which you market to the same class of customers as Loudcloud···· Your company competes directly with Loudcloud in providing packaged back-end services for businesses engaged in e-commerce, including the provision of hardware, software, systems analysis and expert consultation services ···· The STEELCLOUD mark is confusingly similar to LOUDCLOUD. In addition to the identical "CLOUD" portion, "LOUD" and "STEEL" both connote *826 power and strength···· Consequently, your company's adoption of STEELCLOUD is likely to cause confusion in the marketplace and therefore constitutes a violation of our client's rights in its trademark LOUDCLOUD.

In short, your adoption of STEELCLOUD is likely to confuse the public and dilute the strength of the LOUDCLOUD mark; it is thus a violation of Loudcloud's rights under federal and state trademark and unfair competition laws. We therefore demand that your company immediately:

1. Cease and desist all use of the trade name, company name and trademark STEELCLOUD ···;
2. Cease and desist all use of the Internet domain name "steelcloud.com"···, and assign any such domain names to Loudcloud;
3. Publish ··· a corrective notice, and issue a press release, stating that neither your company, nor its products or services, are in any way affiliated with, sponsored or endorsed by Loudcloud, Inc., and that you have ceased all use of the STEELCLOUD mark.

Our client considers protection of its intellectual property to be a critical part of its business. It has already successfully persuaded the owners of the marks THUNDERCLOUD and LAUNCHCLOUD to change their names. We hope you will amicably agree to do the same.

We look forward to your response on or before October 27, 2000, indicating your compliance with the demands of this letter.

Within eight days of receiving this letter and without responding to or contacting defendant, plaintiff filed a three-count complaint, in which Counts I and Count II seek a declaratory judgment that plaintiff's use of the STEELCLOUD mark does not infringe or dilute any trademark rights of the defendant. Count III of the complaint is a claim of trademark misuse under (i) common law and (ii) Sections 37 and 38 of the Lanham Act, 15 U.S.C. §§ 1119, 1120. Defendant responded by filing the instant threshold dismissal motion.

II

[1] [2] The Declaratory Judgment Act, 28 U.S.C. § 2201, is not a jurisdictional grant. See Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671-72, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). Its more modest purpose is to allow federal courts to issue declaratory judgments only in cases that (i) meet the constitutional "case or controversy" requirement and also (ii) present a valid basis for subject matter jurisdiction, i.e., diversity or federal question jurisdiction. See Jeffrey Banks, Ltd. v. Jos. A. Bank Clothiers, Inc., 619 F.Supp. 998, 1001 (D.Md.1985). And, importantly, even where a request for a declaratory judgment meets both of these requirements, the "exercise of [declaratory judgment] jurisdiction rests within the sound discretion of the district court." [FN3]

FN3. Bausch & Lomb Inc. v. CIBA Corp., 39 F.Supp.2d 271, 275 (W.D.N.Y.1999); see also Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co., 342 U.S. 180, 183-84, 72 S.Ct. 219, 96 L.Ed. 200 (1952) (noting that "[n]ecessarily, an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts"); White v. National Union Fire Ins. Co., 913 F.2d 165, 168 (4th Cir.1990) (citing A.L. Mechling Barge Lines v. United States, 368 U.S. 324, 82 S.Ct. 337, 7 L.Ed.2d 317 (1961)).

[3] [4] [5] In general, the presence of a case or controversy depends on "whether the facts alleged ... show ... a controversy ... of sufficient immediacy and reality to warrant issuance of a declaratory judgment." Maryland Cas. Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941). In resolving a factual dispute concerning the existence of a case or controversy, the "court need not accept the allegations of the complaint as true ... [but] may look behind the complaint and view the evidence to determine whether a *827 controversy in fact exists." [FN4] In this regard, the declaratory judgment plaintiff bears the burden to establish, by a preponderance of the evidence, that the two-part test for a case or controversy has been met. See Circuit City Stores, Inc. v. Speedy Car-X, Inc., 1995 WL 568818, at *3 (E.D.Va.1995). This test is whether, at the time of filing, there existed (i) an objectively "real and reasonable apprehension of litigation" and (ii) a "course of conduct which brought [plaintiff] into adversarial conflict with the declaratory defendant." [FN5]

FN4. CAE Screenplates, Inc. v. Beloit Corp., 957 F.Supp. 784, 788 & n. 8 (E.D.Va.1997) (quoting International Harvester Co. v. Deere & Co., 623 F.2d 1207, 1210 (7th Cir.1980)).

> FN5. Maryland Casualty, 312 U.S. at 273, 61 S.Ct. 510; see also Windsurfing Int'l Inc. v. AMF Inc., 828 F.2d 755, 757 (Fed.Cir.1987); CAE Screenplates, 957 F.Supp. at 788; Virgin Enters. Ltd. v. Virgin Cuts Inc., 53 U.S.P.Q.2d 1026, 1030, 1999 WL 1273342 (E.D.Va.1999).

Analysis, therefore, properly begins with whether plaintiff's apprehension of being sued by defendant was objectively real and reasonable. [FN6] Put another way, this prong is established "if defendant's actions create in plaintiff a 'reasonable apprehension' of being sued for infringement." Jeffrey Banks, 619 F.Supp. at 1002 (citations omitted). And, the proper focus in this regard is on defendant's conduct and statements, because "apprehension alone, if not inspired by defendant's actions, does not give rise to an actual controversy." [FN7] Furthermore, while direct evidence of threatening contacts initiated by the defendant or a background of litigation between the parties is strong evidence of a reasonable apprehension of litigation, an objectively reasonable apprehension of imminent litigation must be determined from the totality of the circumstances.[FN8]

FN6. See CAE Screenplates, 957 F.Supp. at 788 (stating that determination of the reasonableness of the apprehension is "an objective one, focusing on whether the

[defendant's] conduct rose to a level sufficient to indicate an intent to enforce its patent") (citations omitted).

> FN7. *Trippe Mfg. Co. v. American Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir.1995) (quoting *International Harvester*, 623 F.2d at 1210; see *Circuit City Stores*, 1995 WL 568818, at *4).

> FN8. *See, e.g., Trippe Mfg.*, 46 F.3d at 627 (holding that no actual controversy existed because declaratory judgment defendant had not threatened trademark infringement suit and totality of circumstances did not reasonably suggest that suit was imminent); *Circuit City Stores*, 1995 WL 568818, at *4 (holding that a sufficient apprehension may also arise indirectly through, for example, the "commercial realities [where the plaintiff] must 'run a risk of real liability if it goes ahead to exercise what it believes are its legal rights in the commercial market' ") (quoting 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 32.18 (3d ed.1994)).

[6] These principles, applied here, point persuasively to the absence of a case or controversy, as the record falls short of establishing an objectively reasonable apprehension of imminent litigation. Simply put, one cease and desist letter does not a case or controversy make where, as here, that letter invites negotiation, but does not explicitly threaten litigation, and was defendant's sole act directed at plaintiff. These meager facts fall short of the constitutional case or controversy threshold. More is required. Specifically, courts finding a case or controversy in analogous circumstances have relied on various additional factors, including:
(i) a cease-and-desist letter threatening litigation and setting forth the elements of a prima facie claim of trademark infringement against the declaratory judgment plaintiff; FN9
FN9. See *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396-97 (9th Cir.1982).

(ii) a cease-and-desist letter coupled with formal opposition of the declaratory judgment plaintiff's trademark application to the PTO; FN10
FN10. See *Manufacturers Hanover Corp. v. Maine Sav. Bank*, 225 U.S.P.Q. 525, 527 (S.D.N.Y.1985). The grounds for a trademark infringement action include: (i) ownership of a registered mark and (ii) attempts by any person to use a product that is "likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1).

*828 (iii) a response to the filing of a declaratory judgment action that includes a counterclaim for trademark infringement damages; FN11
FN11. See *Chesebrough-Pond's*, 666 F.2d at 396-97; *Progressive Apparel Group, Inc. v. Anheuser-Busch, Inc.*, 1996 WL 50227, at *3 (S.D.N.Y. Feb.8, 1996).

(iv) a cease-and-desist letter followed by a failed attempt to settle the dispute prior to initiating litigation; FN12
FN12. See *Circuit City Stores*, 1995 WL 568818, at *2; *Jeffrey Banks, Ltd.*, 619 F.Supp. at 1002.

(v) a cease-and-desist letter coupled with ongoing litigation between the parties. FN13
FN13. See *Intel Corp. v. CFW Wireless, Inc.*, 2000 WL 1455830, at *1 (W.D.Va. Sept. 15, 2000).

None of these additional factors is present here. First, while defendant's letter references the likelihood of confusion standard-the basis of a trademark infringement suit-defendant has not and cannot state a prima facie case of federal trademark infringement because defendant has no registered trademarks on which to rely.[FN14] Second, defendant has not filed a counterclaim in the instant action. Finally, the cease-and-desist letter indicated defendant's desire to settle and invited plaintiff to respond to the letter.[FN15] These facts are insufficient to create a reasonable apprehension of an imminent suit for trademark infringement.[FN16]

FN14. See 15 U.S.C. § 1114 ("Any person who shall, without the consent of the registrant ⋯ use in commerce any ⋯ imitation of a registered mark ⋯ which ⋯ is likely to cause confusion ⋯ shall be liable in a civil action."); *Chesebrough-Pond's, Inc.*, 666 F.2d at 396-97 (applying statutory standard for trademark infringement action under 15 U.S.C. § 1114).

> FN15. Defendant's invitation to negotiate in this case stands in contrast to the invitation extended by the claimant in *Manufacturers Hanover Corporation.* In the letter sent by the claimant in that case, the offer to negotiate was accompanied by the statement that the claimant's "aggressive [trademark] policy ⋯ occasionally required the initiation of formal legal proceedings." See 1985 WL 181 at *2. No such similar threat to institute an infringement action was included in this defendant's letter.

> FN16. *Chesebrough-Pond's* offers an instructive contrary example. There, the Ninth Circuit found a reasonable apprehension of imminent litigation because, in addition to the cease-and-desist letter, the defendant there declared (i) its intent to oppose the plaintiff's trademark application to the PTO, (ii) relied on its registered trademark to state a prima facie case of infringement, (iii) claimed a strong likelihood of confusion, and (iv) responded to the filing of the declaratory judgment action with a counterclaim for damages. See *Chesebrough-Pond's, Inc.*, 666 F.2d at 396-97. Except for the likelihood of confusion claim in both cease-and-desist letters, none of the additional elements found in *Chesebrough-Pond's* is present here.

Plaintiff's argument to the contrary mistakenly relies on defendant's defense of its trademark against others and on media reports describing the financial worth of defendant's founder.[FN17] Neither argument is persuasive on the question whether *defendant's* actions created a reasonable apprehension of litigation. The defense of its trademark consists of similar cease-and-desist letters sent to four other putative infringers of defendant's trademark. Settlements prior to litigation resulted in three of the four cases. In the fourth instance, negotiations took place but resulted in an impasse, which was then followed by litigation initiated by defendant. None of this activity-the negotiations, the three settlements, or the one instance of litigation-involved actions directed at plaintiff. And, typically, conduct by the defendant not directed at the plaintiff will not form the basis of a case or controversy.[FN18] This is especially so in the case at *829 bar, where, at best, the facts reflect that defendant resorts to litigation to protect its trademarks only after it determines that the dispute cannot be resolved without litigation.

FN17. Plaintiff contends that defendant's founder is worth a "billion dollars."

> FN18. See *CAE Screenplates Inc. v. Beloit Corp.*, 957 F.Supp. 784, 792 (E.D.Va.1997) (holding that prior litigation against parties unconnected to the plaintiff cannot "precipitate an actual controversy"); *Circuit City Stores,*

> 1995 WL 568818, at *4 (stating that the reasonableness of apprehension is determined by focusing on defendant's actions directed at plaintiff). A different result might obtain, however, were the record to reflect a pattern of practice that creates a reasonable apprehension of imminent litigation. For example, had defendant sent this cease-and-desist letter to fifty putative infringers and filed suit against most of these companies, then the conduct not directed at plaintiff may, in the totality of the circumstances, give rise to a reasonable apprehension. Such is not the case here.

Nor is the defendant's founder's supposed wealth any more probative of a reasonable apprehension of imminent litigation. No logical connection exists between the fact that defendant's founder is wealthy and the likelihood that defendant would prefer to initiate litigation before attempting settlement. People with great means, like those with lesser means, recognize the benefits of resolving cases before initiating litigation, and they often act accordingly.

In sum, plaintiff's declaratory judgment action is premature. A case or controversy cannot be manufactured out of a single cease-and-desist letter that invites negotiation and does not threaten litigation. Such a letter, by itself, does not allow plaintiff to meet its burden of showing an objectively reasonable apprehension of imminent litigation.[FN19]

FN19. Worth noting is that while this first prong of the case or controversy requirement is not met, the second prong-a course of conduct which brought plaintiff into adversarial conflict with defendant-is met in this case. See CAE Screenplates, 957 F.Supp. at 789. This second prong is met, as plaintiff filed an intent-to-use application for STEELCLOUD and has commenced doing business under that name.

But even assuming, *arguendo,* the existence of a case or controversy, there are sound and sufficient reasons to decline jurisdiction in this matter. Nor is there any doubt that federal courts may decline declaratory judgment jurisdiction in appropriate circumstances. The Declaratory Judgment Act is an exception to the general rule that a federal court must exercise the jurisdiction which is conferred upon it. See Public Affairs Assoc., Inc. v. Rickover, 369 U.S. 111, 112, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962) (holding that declaratory judgment jurisdiction is discretionary). The Act gives district courts a " 'unique breadth of ... discretion to decline to enter a declaratory judgment' even if jurisdiction exists."[FN20] In general, declaratory judgment jurisdiction should be exercised only when the declaratory relief sought: (i) is not premature, (ii) "will serve a useful purpose in clarifying and settling the legal relations in issue," (iii) "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding," and (iv) is not being used merely as a procedural device for a declaratory judgment plaintiff to select the choice of forum. Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 422 (4th Cir.1998) (citations omitted). These criteria are not met here. First, this action is premature; it "raise[s] the sword of litigation ... when other avenues for resolution of the dispute" are available. See Bausch & Lomb Inc. v. Alcide Corp., 684 F.Supp. 1155, 1160 (W.D.N.Y.1987). The Act's purposes are better served by encouraging parties to attempt resolution of disputes prior to initiating litigation, and, therefore, in the circumstances at bar, the exercise of jurisdiction runs counter to the policy of (i) encouraging settlement of disputes prior to litigation and (ii) preventing parties from using declaratory judgment actions as a *830 tool to strengthen a negotiation position [FN21] or to preempt claimant's choice of forum.[FN22] Simply put, district courts should not exercise their discretionary declaratory judgment jurisdiction in ways that encourage races to the courthouse and discourage settlement. See BASF Corp. v. Symington, 50 F.3d 555, 557 (8th Cir.1995). In sum, this premature declaratory judgment action is an appropriate case for declining jurisdiction. Rather than hastily filing suit, plaintiff, like the other recipients of defendant's

letters, should have responded to the letter's request for negotiation by contacting defendant and attempting to resolve the matter.
FN20. *Bausch & Lomb Inc. v. CIBA Corp.*, 39 F.Supp.2d 271, 274 (W.D.N.Y.1999) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)); see also *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir.1998); *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir.1996).

> FN21. See *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 815 (Fed.Cir.1996) (finding that district court properly viewed declaratory judgment complaint as a tactical measure to improve plaintiff's negotiation position, which does not "further[ ] the objectives of the Declaratory Judgment Act"); *Bausch & Lomb Inc. v. CIBA Corp.*, 39 F.Supp.2d at 275.

> FN22. See *Perez v. Ledesma*, 401 U.S. 82, 119 n. 12, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971) (Brennan, J. dissenting) ("The federal declaratory judgment is not a prize to the winner of a race to the courthouse.").

### III

Count III of the complaint asserts a claim for trademark misuse premised on three distinct grounds: (i) a common law theory of "trademark misuse," (ii) Section 37 of the Lanham Act, 15 U.S.C. § 1119, and (iii) Section 38 of the Lanham Act, 15 U.S.C. § 1120. Closely examined, each ground fails as a matter of law.

[7] [8] To begin with, plaintiff's common law theory of trademark misuse claim fails because it is not ripe for adjudication. Trademark misuse is not an independent cause of action, but is, instead, only an affirmative defense to a trademark infringement claim.[FN23] Because no trademark infringement claim has yet been asserted against plaintiff, there is no occasion here for an assertion of the misuse defense. Plaintiff concedes that trademark misuse is only an affirmative defense, not an independent cause of action, but argues that the claim is proper here because plaintiff anticipates that defendant will make a counterclaim of trademark infringement.[FN24] While it is certainly true that federal courts "regularly consider the merits of affirmative defenses raised by declaratory plaintiffs,"[FN25] they only do so if the declaratory judgment action itself is appropriate. See *Public Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 248, 73 S.Ct. 236, 97 L.Ed. 291 (1952). That is not true here, for, as noted, plaintiff lacks an objectively reasonable apprehension of an imminent suit by defendant. Accordingly, the trademark misuse claim, like plaintiff's declaratory judgment act claim, is not yet ripe for adjudication. To allow such a claim would contravene the limited procedural purpose of the Declaratory Judgment Act and encourage races *831 to the courthouse. See, e.g., *Skelly Oil Co.*, 339 U.S. at 673-74, 70 S.Ct. 876 (holding that a declaratory judgment action cannot be brought "merely because an anticipated defense derived from federal law"). Accordingly, to the extent that Count III is based on a common law theory of trademark misuse, it must be dismissed.
FN23. *Juno Online Services, L.P. v. Juno Lighting, Inc.*, 979 F.Supp. 684, 685-87 (N.D.Ill.1997) (noting that trademark misuse has never been permitted as an affirmative claim). Plaintiffs cite no authority in the Fourth Circuit or elsewhere allowing trademark misuse as an independent cause of action. Instead, authority is uniform in allowing trademark misuse only as an affirmative defense to a trademark infringement action. *See, e.g., Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1069 (5th Cir.1997) (per curiam) (defendant answered claim of trademark dilution with a number of affirmative defenses, including trademark misuse); *Helene Curtis Indus. Inc. v. Church & Dwight Co., Inc.*, 560

F.2d 1325, 1336 (7th Cir.1977) (holding that defendant failed to make out the affirmative defense of trademark misuse); *People for the Ethical Treatment of Animals v. Doughney*, 113 F.Supp.2d 915, 921 (E.D.Va.2000) (same).

> FN24. Plaintiff's cited cases on this point are inapposite because each involves the assertion of defenses to claims made by the opposing party. See *Estee Lauder, Inc. v. The Fragrance Counter, Inc.*, 189 F.R.D. 269 (S.D.N.Y.1999) (allowing trademark misuse to be asserted as defense to claim of trademark infringement); *Rolls-Royce Motors, Ltd. v. A & A Fiberglass, Inc.*, 428 F.Supp. 689 (N.D.Ga.1976) (same).

> FN25. *BASF Corp.*, 50 F.3d at 558 (citing *Kelly v. Robinson*, 479 U.S. 36, 40, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986)).

[9] Plaintiff's claim under Section 37 of the Lanham Act, 15 U.S.C. § 1119, also fails because defendant does not have a registered mark. Section 37 of the Lanham Act states, in pertinent part, that:
In any action *involving a registered mark* the court may determine the right to registration, order the cancellation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register ...."
15 U.S.C. § 1119 (emphasis added). Because this case does not involve any registered marks, no federal jurisdiction exists to order or cancel a registration under this statutory provision. Plaintiff essentially concedes this point, but argues that one of defendant's many applications for registration may be approved during the pendency of this lawsuit, after which jurisdiction would be proper under Section 37. The short answer to this argument is that a Section 37 claim must involve an existing "registered mark," not one that may come into existence in the future. Thus, the trademark misuse claim is not ripe for adjudication, but must await, at least, the registration of one of defendant's proposed marks by the PTO. Accordingly, to the extent that Count III rests on 15 U.S.C. § 1119, the motion to dismiss must be granted.

[10] The final asserted basis for relief under Count III is Section 38 of the Lanham Act, 15 U.S.C. § 1120. Plaintiff's claim fails under this statute because the defendant has not "procured" registration of a mark as required by the statute. Section 38 of the Lanham Act provides:
Any person who shall *procure registration* in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof.
15 U.S.C. § 1120 (emphasis added). The plain meaning of the phrase "any person who shall procure registration" is any person who has *obtained*, rather than simply *applied for*, registration of a mark. As the Seventh Circuit put it, "Section 38 makes sense when 'procure' is taken to mean 'obtain' and little sense when taken to mean 'apply for.' " See *County Mut. Ins. Co. v. American Farm Bureau Fed'n*, 876 F.2d 599, 601 (7th Cir.1989). And this is sensibly so, because under the Lanham Act, only the registration of a mark causes injury to others.[FN26]
FN26. Filing an intent-to-use application does not confer any rights to exclude another from use of a mark. Only when a mark is registered-that is, when the registrant makes use of the mark-does the law confer the right to exclude. See 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 16.2 (4th ed.1996).

Plaintiff seeks to avoid this conclusion by reliance on the Trademark Law Revision Act ("TLRA"), 15 U.S.C. §§ 1150-57, a 1988 amendment to the Lanham Act, which permits an application for registration based on an "intent-to-use" the trademark, as opposed to the former standard that permitted applications only upon junior use of the trademark.[FN27] The TLRA, *832 plaintiff argues, implicitly redefined 'procure' in Section 38 to include application for a registration. Plaintiff's argument fails because the TLRA cannot be said to have changed the plain meaning of "procure." Indeed, Congress changed nothing in Section 38. Had Congress sought to expand the scope of liability for fraud in the procurement of registered trademarks, as plaintiff urges, it could have amended Section 38 to read "procure or attempt to procure." Because Congress chose not to amend Section 38 in this fashion, and because Congress was presumably aware of contrary judicial construction of Section 38,[FN28] there is no basis for assuming that Congress intended the TLRA to change the scope or meaning of the provision. *See North Star Steel Co. v. Thomas,* 515 U.S. 29, 34, 115 S.Ct. 1927, 132 L.Ed.2d 27 (1995).

FN27. Under the TLRA, "the filing of the application to register ⋯ shall constitute constructive use of the mark, conferring *a right of priority*⋯ on or in connection with the goods or services specified in the registration against any other person except for a person whose mark has not been abandoned and who, prior to such filing-(1) has used the mark; [or] (2) has filed an application to register the mark which is pending or has resulted in registration of the mark." 15 U.S.C. § 1057(c) (emphasis added). This change was necessary, according to the Senate Report, because "[the previous use] requirement unfairly discriminates [by putting] significant legal risks on the introduction of new products and services ⋯ [and provides no] assurance that after selecting and adopting a mark, and possibly making a sizable investment ⋯, it will not learn that its use of the mark infringes the rights another acquired through earlier use." S.Rep. No. 100-515 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5577.

FN28. *See, e.g., Country Mut. Ins. Co.,* 876 F.2d at 601.

Plaintiff's Section 38 argument also fails as plaintiff cannot show it is a "person injured thereby." *See* 15 U.S.C. § 1120. This follows from the fact the TLRA confers no right on defendant to exclude others from using a mark merely because an intent-to-use application has been filed. Such a filing establishes only a constructive use of the mark which, upon registration, has the same legal effect as actual use of a trademark at common law. *See* 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 16.17 (4th ed.1996). This constructive use establishes a right of priority for the intent-to-use applicant only over others who have not made use of the trademark prior to the filing of the application. Accordingly, a party that uses a trademark would have priority over a non-user who files an intent-to-use application if the party's use predated the non-user's filing of the application. But importantly, no statutory trademark rights to preclude others from using a mark vest in the applicant until the PTO registers the trademark. *See* 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 16.2 (4th ed.1996).[FN29] Thus, the only effect on plaintiff of defendant's filing of an intent-to-use application is that plaintiff, who made use of the trademark *after* the application was filed, must await the PTO's registration decision on defendant's trademark application before obtaining a ruling on its own application for registration.[FN30] If the PTO rejects defendant's applications, it can then consider the registration of plaintiff's trademark, as plaintiff is the next to make prior use of the mark. In these circumstances, that plaintiff must await PTO action on defendant's applications before obtaining PTO action on its own application does not mean plaintiff is a "person injured thereby" within the meaning of Section 38.[FN31]

FN29. Federal rights are contingent upon successful registration of the mark, *i.e.*, that the registrant make use of the mark.

FN30. Plaintiff's concern that defendant's intent-to-use application jeopardizes its investment in the mark, STEELCLOUD, stems not directly from defendant's filing but rather more directly from plaintiff's failure either to file an earlier intent-to-use application or to research more thoroughly whether anyone had made actual or constructive use of the mark.

FN31. Plaintiff, however, is not without an existing remedy, as it is entitled to oppose defendant's trademark applications at the PTO. See 15 U.S.C. § 1063 (allowing anyone who may be damaged by a registration to challenge the application even before it is finally and officially given federal sanction). And, where, as here, it seems unlikely that defendant has a bona fide good faith intention to make use of all of the more than 350 applications it submitted, plaintiff may have a meritorious basis for its opposition. In fact, the PTO has already expressed some concern regarding the lack of specificity in defendant's filings for registration. (Complaint ¶ 61.)

*833 Accordingly, plaintiff has not asserted a valid claim under Section 38 of the Lanham Act because defendant has neither procured registration of a mark nor suffered a qualifying injury. Thus, to the extent that Count III is based on 15 U.S.C. § 1120, the motion to dismiss must be granted.

## IV

For the foregoing reasons, plaintiff's premature claims for declaratory judgment, Counts I and II, must be dismissed for failure to meet the case or controversy requirement and, alternatively, for failure to meet the criteria for the discretionary exercise of declaratory judgment jurisdiction. Count III also must be dismissed as premature and because there is no existing registered trademark on which to base claims under Sections 37 and 38 of the Lanham Act.
An appropriate Order will issue.
E.D.Va.,2001.
Dunn Computer Corp. v. Loudcloud, Inc.
133 F.Supp.2d 823, 57 U.S.P.Q.2d 1626


Motions, Pleadings and Filings (Back to top)

- 1:00CV01793 (Docket) (Oct. 25, 2000)
END OF DOCUMENT