IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FREECYCLESUNNYVALE, a California unincorporated association,<br><br>    Plaintiff,<br><br>  v.<br><br>THE FREECYCLE NETWORK, INC., an Arizona corporation,<br><br>    Defendant.<br>_____/ | No. C 06-00324 CW<br><br>ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO DISMISS |

    Defendant The Freecycle Network, Inc. moves to dismiss Plaintiff's complaint on the grounds that the complaint fails to state a claim upon which relief may be granted.  Plaintiff FreecycleSunnyvale opposes the motion.  The matter was heard on March 31, 2006.  Having considered the papers filed by the parties and oral argument on the motion, the Court DENIES Defendant's motion in part and GRANTS it in part, with leave to amend.

BACKGROUND

    The following facts are taken from Plaintiff's complaint. "Freecycling" is a practice by which a person with an unwanted

item, a "freecycler," gives the item away rather than destroying it or sending it to a landfill. Organizations that promote freecycling use email distribution lists to assist freecyclers to announce the items they no longer want. Many freecyclers announce the availability of the items they wish to give away by, for example, sending an email message to an email distribution list. Many of the email distribution lists freecyclers use are hosted by Yahoo! as part of its Yahoo! Groups online service.

Plaintiff, founded in October, 2003, provides support and assistance to local freecyclers through its online group service account hosted on Yahoo!. Plaintiff entered into a contract with Yahoo!, whereby it received Yahoo!'s online services to assist freecyclers in the Sunnyvale, California area in freecycling items, in exchange for its compliance with Yahoo!'s conditions. Plaintiff formed a Yahoo! group with the name "FreecycleSunnyvale."

Defendant, founded in May, 2003 with its principal place of business in Arizona, provides nation-wide assistance to local freecycling organizations that wish to create internet fora for freecycling.

Defendant, and freecyclers generally, treated freecycling as the common or generic name for giving something away to another for free. Initially, Defendant provided support for Plaintiff and granted permission for Plaintiff to create a graphic logo reading "FreecycleSunnyvale" as long as it was used for non-commercial purposes under specific rules which govern all organizations belonging to its network.

On August 27, 2004, Defendant submitted an application to

2

register the mark "freecycle" and its graphic logo on the Principal Register in the United States Patent and Trademark Office (PTO). That application is still pending.

On November 1, 2005, Defendant sent an email message to Plaintiff, informing Plaintiff that the Freecycle name and logo were trademark-protected. The email demanded that Plaintiff cease its use of the Freecycle name and logo. On November 5, 2005, Plaintiff responded, stating that the term freecycle is a generic one, and reminding Defendant that it had granted Plaintiff a license to use a graphic logo derived from Defendant's logo, so long as it was not used for commercial purposes. On November 14, 2005, Defendant responded, demanding that Plaintiff remove from its Yahoo! online group service account all mention of the term freecycle and the Freecycle logo within forty-eight hours, or it would file with Yahoo! a trademark and copyright infringement report.

On or about November 21, 2005, Defendant sent a communication to Yahoo!, falsely asserting that Plaintiff's use of the freecycle term and the logo constituted trademark infringement of its registered term "freecycle" and of its logo. On November 21, 2005, Yahoo! then terminated its contract with Plaintiff, ceasing to provide online services.

The termination of its Yahoo! Group rendered Plaintiff unable to assist freecyclers in freecycling items. Plaintiff therefore suffered harm as a direct and proximate result of Defendant's false assertions that Plaintiff's use of the word freecycle and/or the graphic logo Defendant had licensed to Plaintiff for non-commercial

3

1  use infringed Defendant's trademark rights in that term and/or that
2  logo.  On January 18, 2006, Plaintiff filed an opposition to the
3  Defendant's trademark application.
4      Plaintiff now seeks a declaratory judgment of non-infringement
5  of trademarks, and claims that Defendant has tortiously interfered
6  with its contractual relations with Yahoo!, its online service
7  provider.

## REQUEST FOR JUDICIAL NOTICE

9      Defendant requests that the Court take judicial notice of two
10 documents: (1) a copy of the Notice of Opposition filed by the
11 Plaintiff on January 18, 2006, in the United States PTO before the
12 Trademark Trial and Appeal Board, and (2) a copy of a SunnyvaleFree
13 Yahoo! online group service account as of February 22, 2006.
14 Plaintiff objects on the grounds that these facts were not alleged
15 in the complaint and therefore cannot be considered in this motion
16 to dismiss.
17     Under Rule 201 of the Federal Rules of Evidence, a court may
18 take judicial notice of facts that are not subject to reasonable
19 dispute because they are either generally known or capable of
20 accurate and ready determination.  The Ninth Circuit has held that
21 a court may take judicial notice of records and reports of
22 administrative bodies.  See Interstate Natural Gas Co. v. Southern
23 California Gas Co., 209 F.2d 380, 385 (9th Cir. 1953).  The Ninth
24 Circuit has also held that a court may properly look beyond the
25 complaint to matters of public record.  See Mack v. South Bay Beer
26 Distributors, 798 F.2d 1279, 1282 (9th Cir. 1986), abrogated on
27 other grounds by Astoria Federal Sav. and Loan Ass'n v. Solimino,

4

501 U.S. 104 (1991).

The Court will take notice of the Notice of Opposition to Defendant's registration application because it is a report by the PTO, an administrative body, and a matter of public record.

The opening page of an online group service account called SunnyvaleFree is presumably offered to show that Plaintiff still operates its business through Yahoo!, under a different name. The Court will not take notice of this document. It is not the report of an administrative body. Also, there is no proof from this document that the page represented is attributable to Plaintiff.

## DISCUSSION

I.  Declaratory Relief

The Declaratory Judgment Act (DJA) permits a federal court to "declare the rights and other legal relations" of parties to "a case of actual controversy. 28 U.S.C. § 2201; see also Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 893 (9th Cir. 1986). The "actual controversy" requirement of the DJA is the same as the "case or controversy" requirement of Article III of the United States Constitution. American States Ins. Co. v. Kearns, 15 F.3d 142, 143 (9th Cir. 1993).

Under the DJA, a two-part test is necessary to determine whether a declaratory judgment is appropriate. Principal Life Insurance Co. v. Robinson, 394 F.3d 665, 669 (9th Cir. 2005). First, the court must determine if there exists an actual case or controversy within the court's jurisdiction. Id. Second, if so, the court must decide whether to exercise its jurisdiction. Id.

    A.  Actual Case or Controversy

Defendant claims Plaintiff has not alleged facts sufficient to satisfy the "reasonable apprehension of litigation" requirement under the DJA. Further, Defendant claims that its cease and desist request is insufficient to be considered a threat of a lawsuit sufficient to trigger the DJA.

In Societe de Conditionnement en Aluminium v. Hunter Engineering Co., Inc., 655 F.2d 938, 944 (9th Cir. 1981), the court held that, rather than focus on an actual threat of litigation, "[a] better way to conceptualize the case or controversy standard is to focus on the declaratory judgment plaintiff. An action for a declaratory judgment that . . . the plaintiff is not infringing, is a case or controversy if the plaintiff has a real and reasonable apprehension that he will be subject to liability if he continues to manufacture his product." See also Chesebrough-Pond's, Inc. v. Faberge, Inc., 666 F.2d 393 (9th Cir. 1982)(advocating a "flexible approach that is oriented to the reasonable perceptions of the plaintiff"); Principal Life, 394 F.3d at 671 (holding the appropriate standard is whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."). If the plaintiff is engaged in the ongoing use of the allegedly infringed trademark, the showing of apprehension "need not be substantial." See Societe, 655 F.2d at 944.

The Ninth Circuit has held that less than a cease and desist letter threatening a lawsuit can create a reasonable apprehension of liability. In Chesebrough-Pond's, 666 F.2d at 397, the

6

1  defendant sent the plaintiff a letter requesting it withdraw an
2  application to register a trademark for a men's toiletry and
3  cosmetic line which the defendant asserted was similar to its own
4  product line.  Id. at 395.  The defendant stated that if the
5  plaintiff did not comply, it would file an opposition proceeding in
6  the PTO.  Id.  Although this letter did not threaten litigation,
7  the court nonetheless held that the plaintiff "had a real and
8  reasonable apprehension that such action would be taken," and
9  allowed the declaratory judgment claim to proceed.  Id. at 397.

10    In Societe de Conditionnement, 655 F.2d at 940, two
11 manufacturers who made similar aluminum products were competing for
12 a contract with a buyer.  One party threatened the buyer, stating
13 that if he purchased from the other company, he would sue the buyer
14 for patent infringement.  Id. at 941.  The Ninth Circuit held that
15 a threat of litigation made to a third party can be sufficient to
16 create reasonable apprehension that litigation is imminent, even
17 though the party was not specifically threatened with litigation.
18 Id. at 945.  Thus, mere threats of litigation against third parties
19 can be enough to meet the reasonable-apprehension requirement.

20    Here, Plaintiff received two threatening emails from
21 Defendant.  The first warned that Plaintiff should "please consider
22 this your official notice to stop using the trademark-protected
23 Freecycle name and logo, as well as any and all copyrighted texts,
24 graphics, rules, guidelines, title or its URL."  Complaint, Exhibit
25 7.  The second email was phrased more aggressively:

> This is your second and final notification to
> cease and desist using the trademark-protected
> Freecycle (TM) name and logo, any confusingly

7

> similar derivations thereof, and The Freecycle Network's (TM) copyrighted texts/rules/guidelines in your Yahoo group. Please do make the necessary changes to your group name, group URL, and applicable texts to avoid any confusion with Freecycle services or delete the group immediately. Realize that unauthorized use of these protected materials is confusing to the public and may be damaging the Freecycle Network's reputation and goodwill. Moreover, your unauthorized use is a violation of the Yahoo Terms of Service, and a trademark and copyright infringement report will be filed with Yahoo if we cannot verify that these materials have been removed with (sic) 48 hours of the sending of this notice. . . . [A]ny Freecycle mark, logo or name, as well as any and all materials copyrighted by The Freecycle Network must be removed before the end of the 48-hour period.

This second email invoked the language of trademark infringement law and presented an ultimatum. Although a lawsuit was not threatened, the language of the letter implies a harsh response for failure to cease usage. Under the standard set forth in Societe, based on reading these emails, Plaintiff could develop a real and reasonable apprehension that it would be subject to liability. As in Cheeseboro-Pond's, where a threat of filing an opposition proceeding in the PTO was enough to create an apprehension of liability, here, the threat of reporting Plaintiff to Yahoo!, which effectively would shut down its primary network for freecyclers, is enough to create a reasonable apprehension. In fact, Defendant did report Plaintiff to Yahoo!, and Yahoo! did shut it down. Therefore, Plaintiff had no opportunity to continue using the term and logo.

Defendants cite Dunn Computer Corp. v. Loudcloud, Inc., 133 F. Supp. 2d 823, 827 (E.D. Va. 2001) for the proposition that a cease-

8

and-desist letter without threat of litigation is insufficient trigger the DJA. In that case, the court held that a cease-and-desist letter that does not "explicitly threaten litigation" does not create a case or controversy. Id. However, that case is not binding on this Court. Moreover, here no threat of lawsuit was necessary, because it is alleged that Defendant merely reported Plaintiff to Yahoo!, which resulted in the shutting down of Plaintiff's online service. This was the same result as would have followed had Defendant filed suit and obtained an injunction against Plaintiff.

Defendant also cites Xerox Corp. v. Apple Computer Inc., 734 F. Supp 1542, 1546 (N.D. Cal. 1990), for the same proposition. However, in that case, the plaintiff seeking a declaratory judgment never received a cease-and-desist letter or any communication requesting it to cease use of the copyrighted material in question. Id. at 1544. Thus, both cases cited by Defendant are unpersuasive. The motion to dismiss the claim for relief under the DJA on the ground that there is no case or controversy is denied.

B. Exercise of Court's Discretion

Defendant argues that the Court should decline to exercise its jurisdiction to hear this DJA claim because Plaintiff has already filed an opposition before the PTO and has not exhausted its administrative remedies.

Under the DJA, in addition to finding that there is an actual case or controversy, the district court must decide whether to exercise its discretion. Principal Life, 394 F.3d at 669. In making this determination, the district court must consider the

9

factors set forth in Brillhart v. Excess Ins. Co., 316 U.S. 491, 495 (1942).  The Ninth Circuit states, "The Brillhart factors remain the philosophic touchstone for the district court.  The district court should avoid needless determination of state law issues; it should discourage litigants from filing declaratory actions as a means of forum shopping; and it should avoid duplicative litigation." Government Employees Ins. Co. v. Dizol, 133 F.3d 1220, 1225 (9th Cir. 1998); see also Continental Cas. Co. v. Robsac Industries, 947 F.2d 1367, 1371-73 (9th Cir. 1991).  The district court must "balance concerns of judicial administration, comity, and fairness to the litigants." Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1367 (9th Cir. 1991)).  Other relevant considerations include:

> whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems.  In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

Kearns, 15 F.3d at 145.

This cause of action raises no State law issues, only federal trademark issues.  Also, there is no evidence that Plaintiff has filed this declaratory action for the purposes of forum shopping. There is no duplicative litigation, only a proceeding in the PTO, which may take years to resolve.  A declaratory judgment would clarify the rights of the parties concerning the use of the

10

"freecycle" term and logo.

Plaintiff has a legitimate interest in clarifying its right to use the term "freecycle." Plaintiff's business involves supporting freecycling in the Bay Area, but currently it cannot operate its original online group service account as "FreecycleSunnyvale" because Defendant caused Yahoo! to revoke its contract with Plaintiff for this internet service. Plaintiff's interest in clarifying the right to use "freecycle" is especially important given that Defendant claims Plaintiff violated its terms of use regarding the "freecycle" name and logo without providing information as to how Plaintiff has done so.

Defendant incorrectly claims that Plaintiff must first exhaust administrative remedies by waiting for the results of its opposition to the trademark application before filing this declaratory relief action in district court. The PTO cannot decide issues of trademark infringement; this is a matter that must be decided in a court. See e.g. Goya Foods, Inc. v. Tropicana Products, Inc., 846 F.2d 848, 853-54 (2d Cir. 1988)(outcome of PTO proceeding does not affect legal determination of infringement claim; district court must still independently decide validity and priority of marks and likelihood of consumer confusion.).

Because the PTO cannot resolve infringement claims, it was reasonable for Plaintiff to believe, irrespective of the PTO's decision, that it was likely to be subject to litigation. Furthermore, there is no indication of how long the application to register the trademark will take, or if it will ever be granted. Thus, Plaintiff is not acting incorrectly by bringing this action

11

for declaratory judgment.  The Court exercises its jurisdiction to hear this claim.  Defendant's motion to dismiss the declaratory judgment claim is denied.

II.  Tortious Interference

Plaintiff's tortious interference claim is based on its allegations that Defendant intentionally interfered with its then-existing contract with Yahoo!, which caused Yahoo! to terminate Plaintiff's online group service account.  Defendant argues that the claim should be dismissed because Plaintiff fails to allege the required elements of a tortious interference claim, including Defendant's wrongful act and a factual basis for monetary damages.

To state a cause of action for intentional interference with contractual relations in California, a plaintiff must plead the following elements: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach and disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage."  Pacific Gas & Electric Co. v. Bear Stearns & Co., 50 Cal.3d 1118, 1126 (1990).

A.  Wrongful Act

Defendant claims that Plaintiff fails to allege a wrongful act.  The action of the defendant in inducing a breach of contract must be wrongful, but "[i]ntentionally inducing or causing a breach of an existing contract is . . . a wrong in and of itself." Quelimane Co. v. Stewart Title Guaranty Co., 19 Cal. 4th 26, 55 (1998).  Id.  Later, whether the Defendant "can establish that it

12

had a legitimate business purpose which justified its actions [in interfering in the contract] is, . . . a matter for trial." Id. at 56.

Under California law, Plaintiff must only allege that Defendant intentionally interfered in its contract with Yahoo!. Plaintiff alleged this in its complaint, and therefore has met its burden.

B.   Factual Basis for Money Damages

Defendant claims that Plaintiff fails to allege a factual basis for money damages, a necessary element in a claim of tortious interference under California law.

In causes of action for tortious interference with business relations in California, damages must be plead. Quelimane, 19 Cal. 4th at 56. Defendant cites the Second Restatement of Torts for the proposition that a party who wrongfully interferes with a contract between two parties is liable for the resulting "pecuniary loss." Rest. 2d Torts, § 766.

Plaintiff does not allege any monetary damages. Plaintiff also cites the Second Restatement of Torts, for the proposition that tortious interference can cause a broad array of damages, including emotional distress and harm to the plaintiff's reputation. At the hearing, Plaintiff indicated that it might seek injunctive relief even if it alleged no damages. Defendant cites no authority for the proposition that a plaintiff must prove, much less plead, actual out-of-pocket monetary loss. However, Plaintiff also has failed to allege emotional distress or reputational damage, and the complaint does not seek injunctive relief. The

13

1  Court grants Defendant's motion to dismiss the tortious
2  interference claim, but grants leave to amend, for Plaintiff to add
3  allegations of damage and/or a request for injunctive relief.

## CONCLUSION

For the foregoing reasons, the Court DENIES in part Defendant's motion to dismiss for failure to state a claim, and GRANTS it in part, with leave to amend.  If Plaintiff files an amended complaint, it must do so by April 7, 2006.

IT IS SO ORDERED.

Dated:  4/4/06

*Claudia Wilken*
_____
CLAUDIA WILKEN
United States District Judge