1  Ian N. Feinberg (SBN 88324)
   ifeinberg@mayerbrownrowe.com
2  Eric B. Evans (SBN 232476)
   eevans@mayerbrownrowe.com
3  Dennis S. Corgill (SBN 103429)
   dcorgill@mayerbrownrowe.com
4  MAYER, BROWN, ROWE & MAW LLP
   Two Palo Alto Square, Suite 300
5  3000 El Camino Real
   Palo Alto, CA  94306-2112
6  Telephone:     (650) 331-2000
   Facsimile:     (650) 331-2060
7
   Attorneys for Plaintiff
8  FREECYCLESUNNYVALE

9
                    **UNITED STATES DISTRICT COURT**
10
                    **NORTHERN DISTRICT OF CALIFORNIA**
11
                              **SAN JOSE DIVISION**
12

13
14  FREECYCLESUNNYVALE,                          CASE NO. C 06-00324 CW
    a California unincorporated association,
15                                               **AMENDED COMPLAINT FOR**
                     Plaintiff,                  **DECLARATORY JUDGMENT OF**
16                                               **TRADEMARK NON-INFRINGEMENT**
    v.                                           **AND TORTIOUS INTERFERENCE WITH**
17                                               **BUSINESS RELATIONS**
    THE FREECYCLE NETWORK,
18  an Arizona corporation,

19                   Defendant.

20
21
22
23
24
25
26
27
28
    44019604.1
                                                 AMENDED COMPLAINT AND JURY DEMAND
                                                              CASE NO: C 06-00324 CW

Plaintiff FreecycleSunnyvale ("FreecycleSunnyvale"), through its *pro bono* attorneys Mayer, Brown, Rowe & Maw LLP, alleges upon knowledge as to itself and its own actions, and on information and belief as to all other matters, against Defendant The Freecycle Network as follows:

## THE PARTIES

1. Plaintiff FreecycleSunnyvale is an unincorporated non-profit association with its principal place of business in Sunnyvale, California, which is located in the Northern District of California. FreecycleSunnyvale promotes freecycling by providing support and advice to freecyclers.

2. Defendant The Freecycle Network is an Arizona non-profit corporation with its principal place of business in Tucson, Arizona. The Freecycle Network also promotes freecycling by providing support and advice to freecyclers who wish to create Internet fora for freecycling. The Freecycle Network has provided support, advice and other services to freecycling associations in California within the jurisdiction of this Court.

## JURISDICTION AND VENUE

3. Jurisdiction is proper in this court because this litigation arises under federal law, namely 15 U.S.C. § 1051 *et seq*. (Lanham Act). The Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1338(a) (trademarks), and 28 U.S.C. § 2201 (Declaratory Judgment Act).

4. This Court has supplemental jurisdiction over FreecycleSunnyvale's state law claims under 28 U.S.C. § 1367(a) because these claims are so related to FreecycleSunnyvale's Lanham Act claims as to form part of a single case or controversy because they arise from the same nucleus of operative facts and amount to a single judicial proceeding.

5. This Court has personal jurisdiction over The Freecycle Network because The Freecycle Network conducts business in California by, among other things: (a) providing support, advice and other services to freecycling associations in California within the jurisdiction of this Court and (b) operating online services hosted by Yahoo! Inc. ("Yahoo!"), an online service provider with its headquarters in California within the jurisdiction of this Court.

6. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1391(c).

7. An actual case or controversy has arisen between the parties. The Freecycle Network has: (a) threatened litigation against FreecycleSunnyvale, (b) caused FreecycleSunnyvale's online service provider, Yahoo!, to suspend FreecycleSunnyvale's Yahoo! Group online service and (c) asserted that FreecycleSunnyvale's use of the generic term "freecycle" constitutes trademark infringement. These statements have caused injury to FreecycleSunnyvale and threaten further injury in the future.

**INTRA-DISTRICT ASSIGNMENT**

8. Because it arises under the Lanham Act, this action is an Intellectual Property Action. Under Local Rule 3-2(c), it is therefore subject to assignment on a district-wide basis.

**NATURE OF THE ACTION**

9. FreecycleSunnyvale promotes freecycling, the practice by which a person with an unwanted item, a freecycler, gives the item away rather than destroying the item or sending the item to a landfill. FreecycleSunnyvale, until recently, administered an Internet forum, hosted by Yahoo!, its online service provider, where freecyclers could freecycle items.

10. The Freecycle Network claims trademark rights in the generic terms "freecycle" and "freecycling" and in a logo it licensed to FreecycleSunnyvale. The Freecycle Network sent a communication or communications to Yahoo! falsely asserting that FreecycleSunnyvale's use of these terms and/or the logo constituted trademark infringement.

11. The Freecycle Network's false statements caused Yahoo! to terminate its contract with FreecycleSunnyvale and stop providing online services.

12. FreecycleSunnyvale now seeks a declaration that use of the generic terms "freecycle" and "freecycling" and/or the licensed logo is not trademark infringement, and compensation for damages it has suffered.

**GENERAL ALLEGATIONS**

**Freecycling**

13. Freecycling is the common or generic name for the practice by which a person with an unwanted item gives the item to another, often a person who is poor or disadvantaged in

some way, for free.  A person who freecycles is called a freecycler.  Freecycling has two principal advantages for society:  (1) it reduces landfill by preventing or delaying the disposal of items unwanted by their current owners; and (2) it gives those same items to others for free, who do want them and may be unable to afford to purchase them.

14. Many freecyclers announce the availability of the items they wish to give away online by, for example, sending an email message to an email distribution list.  Many of the email distribution lists freecyclers use are hosted by Yahoo! as part of its Yahoo! Groups online service.

15. Freecyclers who use the Yahoo! Groups online service to freecycle items enter into a contract with Yahoo!  In exchange for their compliance with Yahoo!'s conditions, the freecyclers receive Yahoo!'s online services.  These services allow freecyclers to reach many other freecyclers in their area by sending a single email message.

16. The Freecycle Network was founded in May 2003.  The Freecycle Network helped popularize freecycling by assisting local freecycling groups, including FreecycleSunnyvale, in using Yahoo!'s online services to freecycle items.

17. FreecycleSunnyvale was founded in October 2003.  It entered into a contractual relationship with Yahoo! and used Yahoo!'s online services to assist freecyclers in the Sunnyvale, California area in freecycling items.

18. FreecycleSunnyvale used a Yahoo! Group with the name "freecyclesunnyvale."

19. FreecycleSunnyvale promotes freecycling through the internet and, in particular, its Yahoo! Groups online services account.  Internet users access particular web sites or group accounts through internet links that represent portals or channels of communication.  Once a particular link becomes established and recognized in an online community, internet users rely upon that link as a unique address to contact a particular web site or group account.

20. On or shortly after October 2003, FreecycleSunnyvale entered into a contract with Yahoo! to obtain an online group service account.  The online community and, in particular, Freecyclers in the Sunnyvale area thereafter adopted the internet link associated with this account as a unique address at which they could reliably contact FreecycleSunnyvale for assistance in freecycling activities.

1    21.    FreecycleSunnyvale initially received enthusiastic support from The Freecycle
2  Network.
3    22.    When a member of FreecycleSunnyvale requested assistance in creating a graphic
4  logo reading "FreecycleSunnyvale," the Board Chair and Executive Director of The Freecycle
5  Network, granted permission to do so, provided that the logo was not used for commercial
6  purposes. The text of the email granting permission reads: "Yeah, Sunnyvale! … You can get the
7  neutral logo from http://www.freecycle.org , just don't use it for commercial purposes or maybe
8  Mark or Albert can help you to do your own fancy schmancy logo!"
9    23.    Freecyclers and The Freecycle Network treated freecycling as the common or
10 generic name for giving something away to another for free. In August 2004, The Freecycle
11 Network's home page included, among others, the references to freecycling:
12        (a) "Number of cities freecycling: 1,210"
13        (b) "Number of people freecycling: 406,949"
14        (c) "Have fun and keep on Freecyclin'!"
15        (d) "How does Freecycling work?"
16        (e) "Who can Freecycle?"
17 The Freecycle Network submitted a copy of the home page of its website, containing these uses
18 of freecycle and freecycling in a generic sense, as a specimen to its pending application for
19 registration of the mark FREECYCLE on the Principal Register on or about August 27, 2004.  A
20 copy of the application and specimen submitted is attached as Exhibit 1.
21   24.    The Freecycle Network's use of the terms freecycle and freecycling in a generic
22 sense is consistent with prevailing practice in the national media. Examination of publicly-
23 accessible media sources reveals hundreds of newspaper and magazine articles that use freecycle
24 and freecycling to refer to the practice of recycling by giving something away to another for free.
25 Examples include:
26        (a) "If a true packrat hordes [sic], a 'freecycler' can't stand to see something that might
27            be useful to someone go to waste, languishing unused in a musty garage, attic,
28            bottom dresser-drawer or—worse yet—a landfill."  Katharine Mieszkowski, *From*

*each according to his junk, to each according to her need,* Salon.com, Nov. 23, 2003, *at* http://www.salon.com/tech/feature/2003/11/25/freecycle/print.html (Attached as Exhibit 2);

(b) "Freecyclers use Yahoo Groups as a free bulletin board, requiring registration only. Givers post their excess items on Yahoo and takers send an e-mail saying they will come and pick it up." Mike Cassidy, *Freecycling Movement Gains Ground in Valley*, San Jose Mercury News, Jan. 27, 2004, at C1 (Attached as Exhibit 3);

(c) "Dusty but new exercise equipment, a five-person hot tub, and enough white Ikea bookshelves to furnish a small college town have been posted online through a new group that practices freecycling, the giving away of useful but unwanted goods to keep them out of landfills and maybe help someone less fortunate in the process." Tina Kelley, *One Sock, With Holes? I'll Take It; Freecycling Brings Castoff Goods Back From the Bin*, The New York Times, March 16, 2004, at B1 (Attached as Exhibit 4);

(d) "Known as 'freecycling,' the approach creates Web-based communities in cities across the country that allow members to post by e-mail a listing of items they are looking to unload. The catch? Everything much be given away free." *Gambits and Gambles in the World of Technology,* The Wall Street Journal, May 6, 2004 (Attached as Exhibit 5); and

(e) "And just how does one freecycle? . . . If there's an object, or even a service, you want to give or receive, you post an e-mail, leave a contact and, if someone bites, arrange for a pickup. The rules are simple: no politics or spam, and everything must be free." Richard Jerome and Strawberry Saroyan, *Free For All*, People, May 10, 2004, at 195 (Attached as Exhibit 6).

**The Freecycle Network Attempts to Seize the Generic Term Freecycle**

25. Despite the generic nature of the terms freecycle and freecycling, The Freecycle Network filed an application for the registration of the mark FREECYCLE and a graphic logo

44019604.1                           5

using that mark on the Principal Register of trademarks on or about August 27, 2004. The application is still pending.

26. In late 2004 or early 2005, The Freecycle Network altered the text of its website to remove some, but not all, uses of freecycle and freecycling in a generic sense. The Freecycle Network's website continues to include many hundreds of instances where freecycle and freecycling are used in the generic sense to refer to the practice of recycling by giving something away to another for free.

27. In January or February 2005, The Freecycle Network began to assert the right to exclusive use of the terms freecycle and freecycling.

28. The Freecycle Network has created usage guidelines for users of its services. These guidelines direct users to avoid using the terms freecycle and freecycling in a generic sense.

29. Freecyclers need to use to use the generic term, "freecycle," and its derivations, because there is no acceptable substitute generic terminology for freecyclers to describe and promote freecycling activities. For example, The Freecycle Network has attempted to use the following terms, none of which accurately describe freecycling:

    (a) "Recycling" is not acceptable because it describes a different activity that involves the collection of used materials that would otherwise be waste to be broken down into new products.

    (b) "Gifting" is not acceptable because it vaguely refers to an overly broad range of activities that includes newly purchased items for a family member's birthday to the donation of computer programs to the public domain.

    (c) "Exchange" is not acceptable because it connotes a transaction in which both sides provide goods or services of a roughly equivalent value.

30. The Freecycle Network has not found an adequate substitute for the generic term freecycling. "[A] gifting or exchange-oriented [web]site" or "gifting or exchanging unwanted items with fellow users" have not achieved wide acceptance.

31. The Freecycle Network has replaced the simple question "How does Freecycling work?" on its home page with "How does it work?"

### The Present Dispute

32. On or about November 1, 2005, The Freecycle Network sent an email message to FreecycleSunnyvale. The email message informed FreecycleSunnyvale that it must "stop using the trademark-protected Freecycle name and logo, as well as any and all copyrighted texts, graphics, rules, guidelines, title, or its URL (Yahoo group name)." A copy of this email message is attached as Exhibit 7.

33. On or about November 5, 2005, FreecycleSunnyvale sent an email message to Yahoo! describing the generic nature of the term freecycle and informing Yahoo! of the license The Freecycle Network had granted FreecycleSunnyvale to use a graphic logo derived from The Freecycle Network's graphic logo, so long as Freecycle Sunnyvale did not use the logo "for commercial purposes." A copy of this email message is attached as Exhibit 8.

34. On or about November 14, 2005, The Freecycle Network sent a second email message to FreecycleSunnyvale. This message described itself as FreecycleSunnyvale's "second and final notification to cease and desist using the trademark-protected Freecycle(TM) name and logo." The message stated that FreecycleSunnyvale's "use [of the term freecycle] is a violation of the Yahoo Terms of Service, and a trademark and copyright infringement report will be filed with Yahoo if we cannot verify that these materials have been removed with 48 hours of the sending of this notice." A copy of this email message is attached as Exhibit 9.

35. On or before November 21, 2005, The Freecycle Network sent a communication or communications to Yahoo! falsely claiming that FreecycleSunnyvale had infringed The Freecycle Network's trademark rights in the term freecycle and/or in its graphic logo and requesting that Yahoo! terminate the FreecycleSunnyvale Yahoo! Group.

36. On or about November 21, 2005, Yahoo! terminated the FreecycleSunnyvale Yahoo! Group.

37. On or about November 21, 2005, Yahoo! sent an email message to FreecycleSunnyvale. The message asserted that FreecycleSunnyvale might have violated

Yahoo!'s Terms of Service.  The message also stated that "If your use of your Yahoo! account is brought to our attention again, and we believe that such use violates the [Terms of Service], then we may terminate your account without further notice."  A copy of this email message is attached as Exhibit 10.

38.  The Freecycle Network's false claim that FreecycleSunnyvale had infringed The Freecycle Network's trademark rights has damaged FreecycleSunnyvale's reputation and ongoing business relation with Yahoo!  The Terms of Service for Yahoo! accounts provides that, in response to a claim of intellectual property infringement, Yahoo! may bar a user from further service.  The Freecycle Network's false claim places FreecycleSunnyvale at a continuing risk of losing its ability to contract with Yahoo! for an online group service account.

39.  The termination of its Yahoo! Group rendered FreecycleSunnyvale unable to assist freecyclers in freecycling items.  FreecycleSunnyvale therefore suffered harm as a direct and proximate result of The Freecycle Network's false assertions that FreecycleSunnyvale's use of the word freecycle and/or the graphic logo The Freecycle Network had licensed to FreecycleSunnyvale for non-commercial use infringed The Freecycle Network's trademark rights in that term and/or that logo.

## FIRST CLAIM FOR RELIEF

**(Declaratory Judgment of Non-Infringement of Trademarks)**

**(15 U.S.C. § 1051 *et seq.*)**

40.  FreecycleSunnyvale realleges and incorporates by reference paragraphs 1 through 39 hereof as if set forth herein in full.

41.  Freecycle has claimed that FreecycleSunnyvale's use of the words "freecycle" and "freecycling" and/or the graphic logo The Freecycle Network had licensed to FreecycleSunnyvale for non-commercial use constitutes trademark infringement and has threatened to bring a lawsuit against FreecycleSunnyvale on this basis

42.  An actual, present and justiciable controversy has arisen between FreecycleSunnyvale and Freecycle concerning FreecycleSunnyvale's right to use the words

1  "freecycle" and "freecycling" and/or the graphic logo The Freecycle Network had licensed to
2  FreecycleSunnyvale for non-commercial use.

3  43.  FreecycleSunnyvale seeks a declaration from this Court that its use of the generic
4  terms "freecycle" and "freecycling" and/or the graphic logo The Freecycle Network had licensed
5  to FreecycleSunnyvale for non-commercial use does not constitute trademark infringement.

6  44.  In the alternative, FreecycleSunnyvale seeks a declaration from this Court that The
7  Freecycle Network has dedicated the terms "freecycle" and "freecycling" and/or the graphic logo
8  The Freecycle Network had licensed to FreecycleSunnyvale for non-commercial use to the public
9  domain and that FreecycleSunnyvale's use of those terms and/or that logo does not constitute
10 trademark infringement.

11 45.  In the second alternative, FreecycleSunnyvale seeks a declaration from this Court
12 that The Freecycle Network has engaged in uncontrolled or naked licensing of the terms
13 "freecycle" and "freecycling" and/or the graphic logo The Freecycle Network had licensed to
14 FreecycleSunnyvale for non-commercial use and thereby abandoned any trademark rights it
15 might otherwise of acquired, and that therefore FreecycleSunnyvale's use of those terms and/or
16 that logo does not constitute trademark infringement.

17 **SECOND CLAIM FOR RELIEF**
18 **(Tortious Interference with Business Relations)**

19 46.  FreecycleSunnyvale realleges and incorporates by reference paragraphs 1 through
20 39 hereof as if set forth herein in full.

21 47.  The Freecycle Network has tortiously interfered with FreecycleSunnyvale's
22 contractual relations with Yahoo!, its online service provider.

23 48.  FreecycleSunnyvale had a valid contract with Yahoo!

24 49.  The Freecycle Network knew of FreecycleSunnyvale's contract with Yahoo!

25 50.  The Freecycle Network sent a communication or communications to Yahoo!
26 falsely alleging that FreecycleSunnyvale's use of the generic terms "freecycle" and "freecycling"
27 and/or the graphic logo The Freecycle Network had licensed to FreecycleSunnyvale for non-
28

commercial use infringed The Freecycle Network's trademark rights in those terms and/or that logo.

51. By making this false allegation, The Freecycle Network intended to cause Yahoo! to terminate its contractual relations with FreecycleSunnyvale.

52. The Freecycle Network's conduct actually disrupted FreecycleSunnyvale's contract with Yahoo! because it induced Yahoo! to terminate that contract and to suspend the online services it provided to FreecycleSunnyvale.

53. FreecycleSunnyvale has been injured as a proximate result of The Freecycle Network's tortious interference with its contract with Yahoo!

    (a) As a result of The Freecycle Network's intentional interference with FreecycleSunnyvale's contract with Yahoo!, FreecycleSunnyvale's established internet link was disrupted. FreecycleSunnyvale was injured, and continues to be injured, because FreecycleSunnyvale is unable to promote and assist freecyclers in the Sunnyvale area who use the FreecycleSunnyvale name, which is the most established, reliable, and continuously-available means to locate the internet address at which freecyclers may contact FreecycleSunnyvale.

    (b) As a result of The Freecycle Network's intentional interference with FreecycleSunnyvale's contract with Yahoo!, FreecycleSunnyvale is unable to use or allow the use of the generic term, "freecycle," or any of its derivations, on its group account. FreecycleSunnyvale was injured, and continues to be injured, because FreecycleSunnyvale is unable to use the generic terms that accurately describe and promote freecycling among freecyclers in the Sunnyvale area, all to the detriment of FreecycleSunnyvale's efforts to promote freecycling.

    (c) As a result of The Freecycle Network's intentional interference with FreecycleSunnyvale's contract with Yahoo!, FreecycleSunnyvale has been identified as a trademark infringer to Yahoo! FreecycleSunnyvale was injured, and continues to be injured, because FreecycleSunnyvale's reputation with Yahoo! has been irreparably damaged.

54. Unless The Freecycle Network is restrained by preliminary and permanent injunctions, FreecycleSunnyvale will continue to suffer severe and irreparable harm in that The Freecycle Network will continue to disseminate false claims of trademark infringement and FreecycleSunnyvale will continue to be damaged by its inability to use the generic term, "freecycle," or any of its derivations. FreecycleSunnyvale has no adequate remedy at law because monetary damages, which may compensate for past injury, will not afford adequate relief from the fear and threat of continuing false claims of trademark infringement by The Freecycle Network.

55. Although injured by the tortious conduct of The Freecycle Network, FreecycleSunnyvale specifically waives any right it may have to recover monetary damages that it has incurred to date on the ground that the freecycling public would be better served if the non-profit corporation, The Freecycle Network, uses its resources to promote freecycling rather than to pay damages to the unincorporated association, FreecycleSunnyvale, which also operates on a non-profit basis.

## **PRAYER FOR RELIEF**

WHEREFORE, FreecycleSunnyvale respectfully prays for:

1. Judgment granting FreecycleSunnyvale the declaratory relief it seeks;
2. A preliminary and permanent injunction against The Freecycle Network, and all of its officers, employees, and agents, enjoining them from interfering with FreecycleSunnyvale's business relations by disseminating false claims of trademark infringement;
3. A declaration that this case is exceptional under 15 U.S.C. § 1115(a)(3);
4. An order awarding FreecycleSunnyvale its attorneys' fees in this action;
5. An order awarding FreecycleSunnyvale its costs in this action; and

////

////

////

////

6. Such other and further relief to which FreecycleSunnyvale may be entitled as a matter of law or equity or which this Court deems just and proper.

Dated: April 6, 2006

MAYER, BROWN, ROWE & MAW LLP

By:  /s/ Ian N. Feinberg
Ian N. Feinberg
Eric Evans
Dennis Corgill
Attorneys for Plaintiff
FREECYCLESUNNYVALE