1  PAUL J. ANDRE, Bar No. 196585
   (pandre@perkinscoie.com)
2  LISA KOBIALKA, Bar No. 191404
   (lkobialka@perkinscoie.com)
3  ESHA BANDYOPADHYAY, Bar No. 212249
   (ebandyopadhyay@perkinscoie.com)
4  SEAN M. BOYLE, Bar No. 238128
   (sboyle@perkinscoie.com)
5  PERKINS COIE LLP
   101 Jefferson Drive
6  Menlo Park, CA 94025
   Telephone:    (650) 838-4300
7  Facsimile:    (650) 838-4350

8  Attorneys for Defendant
   The Freecycle Network, Inc.
9

10                  UNITED STATES DISTRICT COURT

11                 NORTHERN DISTRICT OF CALIFORNIA

12                        OAKLAND DIVISION

13

14  FREECYCLESUNNYVALE, a California        CASE NO. C 06-00324 CW
    unincorporated association.,
15                                          **THE FREECYCLE NETWORK, INC.'S**
                     Plaintiff,             **OPPOSITION TO FREECYCLESUNNYVALE'S**
16                                          **MOTIONS TO DISMISS COUNTERCLAIMS**
          v.                                **UNDER FED.R.CIV.P. 12(b)(6) AND TO**
17                                          **STRIKE STATE-LAW COUNTERCLAIM**
    THE FREECYCLE NETWORK, INC., an         **UNDER CAL. CODE CIV. PROC. § 425.16**
18  Arizona corporation,

19                     Defendant.

20  _____

21
    AND RELATED COUNTERCLAIMS
22

23

24

25

26

27

28

1

2

## TABLE OF CONTENTS

I.     INTRODUCTION..................................................................................................... 1

II.    STATEMENT OF ISSUES TO BE DECIDED.......................................................... 2

III.   STATEMENT OF RELEVANT FACTS ................................................................... 2

       A.    Counterdefendant's Claims Regarding The Freecycle Network's
             Trademarks ...................................................................................................... 2

       B.    The Freecycle Network's Counterclaims Against Counterdefendant ............... 3

       C.    The Freecycle Network's Unrelated Arizona Action........................................ 3

IV.    ARGUMENT ............................................................................................................ 5

       A.    Counterdefendant's Request to Dismiss The Freecycle Network's Claims
             Under §§ 32(1) and 43(2) Must be Denied ....................................................... 6

             1.    The Freecycle Network's Substantive Right in its Marks Warrants
                   Protection ................................................................................................ 6

             2.    The Freecycle Network's Claim Under § 43(a) of the Lanham Act
                   Moots any Potential Standing Issues Under § 32(1) ............................. 7

             3.    The Freecycle Network has Sufficiently Alleged Contributory
                   Infringement by Counterdefendant ........................................................ 8

       B.    Counterdefendant's Request to Dismiss The Freecycle Network's Claim for
             Unfair Competition Must be Denied ................................................................ 10

             1.    The Freecycle Network Alleges a Recognized Unfair Competition
                   Claim ..................................................................................................... 10

             2.    The Freecycle Network Has Sufficiently Pled Unfair Competition ... 11

       C.    Protection of One's Trademark Right Does Not Fall within California's
             Anti-SLAPP Statute ...................................................................................... 12

             1.    Counterdefendant Has Not Satisfied Its Burden Of Proof ................. 13

             2.    Even if Counterdefendant Satisfies its Burden of Proof, The
                   Freecycle Network is Likely to Prevail on its California Unfair
                   Competition Counterclaim .................................................................... 15

V.     CONCLUSION ....................................................................................................... 17

1

**TABLE OF AUTHORITIES**

**CASES**

Albillo v. Intermodal Container Servs., Inc.,
    114 Cal. App. 4th 190 (2003)........................................................................ 15, 16

Big Bear Lodging Ass'n v. Snow Summit, Inc.,
    182 F.3d 1096 (9th Cir. 1999)............................................................................ 5

Brown & Bigelow v. B.B. Pen Co.,
    191 F. 2d 939 (8th Cir. 1951)............................................................................ 6

Conley v. Gibson,
    355 U.S. 41 (1957) .................................................................................. 5, 9, 11

Donchez v. Coors Brewing Co.,
    392 F. 3d 1211 (10th Cir. 2004)....................................................................... 10

Fidelity Fin. Corp. v. Fed. Home Loan Bank of S. F.,
    792 F.2d 1432 (9th Cir. 1986), *cert denied* 497 U.S. 1064 (1987)...................... 5

Forschner Group, Inc. v. Arrow Trading Co.,
    904 F. Supp. 1409 (S.D.N.Y 1995).................................................................. 10

Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Ohio,
    849 F. 2d 1012 (6th Cir. 1988) ................................................................... 7, 10

Gallimore v. State Farm Fire & Cas. Ins. Co.,
    102 Cal. App. 4th 1388 (2002).................................................................. 12, 15

Gilligan v. Jamco Develop. Corp.,
    108 F.3d 246 (9th Cir. 1997)............................................................................. 5

Globetrotter Software, Inc. v. Elan Computer Group, Inc.,
    63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999) ................................................... 13

Grupo Gigante SA De CV v. Dallo & Co.,
    391 F.3d 1088 (9th Cir. 2004).......................................................................... 16

Herr v. Nestle U.S.A., Inc.,
    109 Cal. App. 4th 779 (2003)........................................................................... 15

Inwood Labs., Inc. v. Ives Labs., Inc.,
    456 U.S. 842 (1982) .......................................................................................... 8

Irwin v. Mascott,
    93 F. Supp. 2d 1052 (N.D. Cal. 2000). ........................................................... 16

1

2

Lockheed Martin Corp. v. Network Solutions, Inc.,
    194 F.3d 980 (9th Cir. 1999)..................................................................... 9

3

4

Macia v. Microsoft Corp.,
    327 F.Supp. 2d 278 (D. Vt 2003) ............................................................ 6

5

Mario Valente Collezioni, Ltd. v. AAK Ltd.,
    280 F.Supp.2d 244 (S.D.N.Y 2003) ......................................................... 6

6

7

Mershon Co. v. Pachmayr,
    220 F.2d 879 (9th Cir. 1955)..................................................................... 9

8

9

Prudhomme v. The Procter & Gamble Co.,
    800 F. Supp. 390 (E.D.La 1992) ............................................................. 6

10

Qualitex Co. v. Jacobson Prods. Co.,
    514 U.S. 159 (1995) ............................................................................... 10

11

12

Troy Group, Inc. v. Tilson,
    364 F. Supp. 2d 1149 (C.D. Cal. 2005) ................................................. 13

13

14

Two Pesos, Inc. v. Taco Cabana, Inc.,
    505 U.S. 763 (1992) ............................................................................... 10

15

16

U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.,
    190 F.3d 963 (9th Cir. 1999).................................................................. 12

17

United States v. Redwood City,
    640 F.2d 963 (9th Cir. 1981).................................................................... 5

18

19

Wal-Mart Stores, Inc. v. Samara Bros., Inc.,
    529 U.S. 205 (2000) ................................................................................. 6

20

21

Weinberg v. Feisel,
    110 Cal. App. 4th 1122 (2003)............................................................... 13

22

**STATUTES**

23

California Code of Civil Procedure § 32(1) ........................................... 6, 7

24

25

California Code of Civil Procedure § 425.16........................................ 12, 13

26

Federal Rule of Civil Procedure, Rule 8 .............................................. 8, 11

27

Federal Rule of Civil Procedure, Rule 12 ............................................ 5, 11

28

1

**OTHER AUTHORITIES**

2

15 United States Code § 43(a) (Lanham Act) ................................................................. 1, 8, 10

3

4 J. THOMAS MCCARTHY, McCarthy on Trademarks & Unfair Competition § 25:18
  (4th Ed. 2003) ........................................................................................................... 9

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I.    INTRODUCTION

FreecycleSunnyvale ("Counterdefendant") has no grounds on which to request dismissal of The Freecycle Network, Inc.'s ("The Freecycle Network") well-pled counterclaims.  Its suggestion to the contrary is merely disingenuous, as it is well established that protection of trademarks under the Lanham Act is not conditioned on obtaining formal registration for the marks at issue.  Such registration merely confers procedural advantages to the registrant.  Additionally, Counterdefendant's erroneous assertion that actual third party infringement must be established in order to successfully plead contributory infringement must be rejected, as a claimant asserting such a cause of action must merely allege an intent to induce infringement.  Furthermore, it is widely acknowledged that claims of unfair competition are appropriate under § 43(a) of the Lanham Act, one of the primary goals of which is to protect *fair* competition.  Finally, Counterdefendant's attempt to strike The Freecycle Network's state unfair competition claim is without merit because enforcement of one's trademark rights cannot possibly be construed as an infringement of one's right to free speech.

It is Counterdefendant who opted to bring this action for, among other things, declaratory judgment of trademark non-infringement.  The Freecycle Network sought to dismiss this action as premature, as the trademarks in question are currently pending before the Trademark Trial and Appeals Board ("TTAB"), due to an opposition instigated by Counterdefendant nonetheless.  However, Counterdefendant is intent on litigating this matter, and chose this forum to do so.  Accordingly, The Freecycle Network has properly counterclaimed that Counterdefendant is indeed infringing, and contributing to infringement of, The Freecycle Network's trademark rights, as well as engaging in unfair competition under federal and state law.

Counterdefendant's somewhat sophomoric arguments, which first appear in its "Statement of Facts" in its Motions to Dismiss Counterclaims under Fed. R. Civ. P. 12(b)(6) and to Strike State-Law Counterclaim under Cal. Code of Civ. Proc. § 425.16 ("Motion to Dismiss"), fail to address the true disputes between the parties, and is nothing more than an opportunity to "take a shot" at The Freecycle Network's counterclaims.  Counterdefendant's insincere and strong-arm approach does little to foster an efficient resolution to this dispute.  To the extent any of

OPP.TO MOTIONS TO DISMISS AND STRIKE COUNTERCLAIMS          CASE NO. C 06-00324 CW

Counterdefendant's arguments have merit, any slight deficiency in the claims is easily ameliorated by amending The Freecycle Network's Answer to Plaintiff's Amended Complaint and Counterclaims ("Answer and Counterclaims"), if required by the Court.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Has the claim for trademark infringement been sufficiently alleged?

2.    Has the claim for contributory infringement been sufficiently alleged?

3.    Has the claim for federal unfair competition been sufficiently alleged?

4.    Has the claim for state law unfair competition been sufficiently alleged?

## III.    STATEMENT OF RELEVANT FACTS

**A.    Counterdefendant's Claims Regarding The Freecycle Network's Trademarks**

After thorough examination, the Patent and Trademark Office ("PTO") opted to publish The Freecycle Network's trademarks FREECYCLE, THE FREECYCLE NETWORK, and The Freecycle Network's graphic logo (collectively the "Marks") in the Official Gazette of the U.S. Patent and Trademark Office.  Answer and Counterclaims at ¶ 68.  On January 18, 2006, however, Counterdefendant filed an opposition to the registration.  *See* The Freecycle Network's Request for Judicial Notice to Dismiss Complaint under Rule 12(b)(6), Exh. 1.

Counterdefendant simultaneously filed the underlying complaint in this action, seeking declaratory relief from a future (but apparently imminent) trademark infringement cause of action it claims it believed The Freecycle Network would file against it.  *See generally* Counterdefendant's Complaint for Declaratory Judgment of Trademark Non-Infringement and Tortious Interference with Business Relations ("Original Complaint").  Counterdefendant further alleged tortious interference with business relations against The Freecycle Network.  *See id*. Counterdefendant filed an amended complaint containing both of these causes of action on April 6, 2006.  *See generally* Counterdefendant's Amended Complaint for Declaratory Judgment of Trademark Non-Infringement and Tortious Interference with Business Relations ("Amended Complaint").

- 2 -

1

**B.      The Freecycle Network's Counterclaims Against Counterdefendant**

2

In response to Counterdefendant's claims, The Freecycle Network filed counterclaims

3

alleging direct and contributory trademark infringement by Counterdefendant, as well as unfair

4

competition under federal and state law.  *See* Answer and Counterclaims at 9-12.  Specifically,

5

The Freecycle Network alleged that Counterdefendant has used and encouraged others to use (and

6

continues to use and encourage others to use) the Marks without permission, even after being

7

asked to cease and desist using the Marks.  *Id.* at ¶¶ 70-73.  The Freecycle Network also alleged

8

that Counterdefendant's misuse of the Marks is "likely to cause confusion, to cause mistake, or to

9

deceive as to the origin, sponsorship, or approval of such products and services as to the

10

affiliation, connection, or association with Counterdefendant and The Freecycle Network."  *Id.* at

11

¶ 74.  The Freecycle Network further alleged that "inducement by Counterdefendant of third

12

parties to use [the Marks] constitutes contributory trademark infringement."  *Id.* at ¶ 75.  Finally,

13

The Freecycle Network alleged that such misconduct by Counterdefendant constituted unfair

14

competition under the Lanham Act and the California Business and Professions Code.  *See id.* at

15

10-11.

16

**C.      The Freecycle Network's Unrelated Arizona Action**

17

Separate and apart from this case, The Freecycle Network has filed an unrelated action

18

against Mr. Tim Oey ("Mr. Oey") as an individual in the District Court of Arizona.  The Arizona

19

action addresses the personal actions taken by Mr. Oey as an individual against The Freecycle

20

Network, and had nothing to do with the instant action.  The Freecycle Network believes Mr. Oey

21

personally engaged in trademark disparagement, defamation, injurious falsehood, interference

22

with business relations, and inducing trademark infringement against The Freecycle Network.  *See*

23

Counterdefendant's Request for Judicial Notice in Support of Motion to Dismiss

24

("Counterdefendant's Request for Judicial Notice") at 2, Exh. B.  Mr. Oey's unlawful conduct

25

largely stems from his intimate involvement with The Freecycle Network, and his subsequent

26

conscious decision to attempt to harm The Freecycle Network in any manner he could find when

27

he personally disagreed with some of the business decisions made by The Freecycle Network.

28

The Freecycle Network concurrently filed an *Ex Parte* Motion for Temporary Restraining Order ("TRO Motion") and a Motion for Preliminary Injunction. *Id.*, Exhs. C-E. Although Counterdefendant is not a named defendant in the Arizona action, counsel for Counterdefendant in this matter, the law firm of Mayer, Brown, Rowe & Maw LLP ("Mayer Brown") made a telephonic appearance on behalf of Mr. Oey at the hearing on the TRO Motion. Declaration of Esha Bandyopadhyay in support of The Freecycle Network, Inc.'s Opposition to FreecycleSunnyvale's Motion to Dismiss ("Bandyopadhyay Decl."), ¶ 2, Exh. 1. The Arizona Court granted the temporary restraining order "TRO" and specifically ordered Mr. Oey to cease from "…inducing infringement of The Freecycle Network's intellectual property, including its trademarks or any variation or imitation thereof, disparaging The Freecycle Network's intellectual property, including its trademarks or any variation or imitation thereof, and from disseminating false and misleading statements regarding The Freecycle Network and its intellectual property, including its trademarks or any variation or imitation thereof…." Counterdefendant's Request for Judicial Notice at 2-3, Exh. F.

However, Mr. Oey refused to abide by the terms of the TRO. Subsequently, on April 28, 2006, counsel for The Freecycle Network contacted Mayer Brown (on the basis of their telephonic appearance at the hearing on the TRO motion) in regard to Mr. Oey's failure to comply with the TRO. Bandyopadhyay Decl., ¶ 3, Exh. 2. In response, counsel for Counterdefendant informed The Freecycle Network by a letter dated May 1, 2006, that Mr. Oey is not represented by Counterdefendant's counsel as an individual, but only by separate counsel in Arizona. *Id.*, ¶ 4, Exh. 3. Accordingly, The Freecycle Network reiterated its concerns regarding Mr. Oey's non-compliance with the TRO to Mr. Oey's Arizona counsel. *Id.*, ¶ 5, Exh. 4.

Subsequently, the Arizona Court held a hearing on The Freecycle Network's Motion for Preliminary Injunction ("PI Motion") (*see* Counterdefendant's Request for Judicial Notice at 2, Exh. D) on May 9, 2006. Bandyopadhyay Decl., ¶ 6. The Court granted the PI Motion on May 12, 2006, stating that Mr. Oey is "prohibited from making any comments that could be construed as to disparage upon [The Freecycle Network's] … trademark and logo." Request for Judicial Notice in Support of The Freecycle Network, Inc.'s Opposition to FreecycleSunnyvale's

1   Motion to Dismiss Counterclaims under Fed. R. Civ. P. 12(b)(6) and to Strike State Law

2   Counterclaim under Cal. Code Civ. Proc. § 425.16 ("Request for Judicial Notice") filed herewith,

3   ¶ 1, Exh. 1; *see also* Bandyopadhyay Decl., ¶ 6.  The Arizona Court further stated that Mr. Oey is

4   "forewarned that if he refuse[s] to comply with the terms of this preliminary injunction and

5   continues to publicly disparage [The Freecycle Network]'s trademark rights and logo, then he

6   could be found to be held in contempt of court." *Id.*

7       Thus contrary to Counterdefendant's erroneous assertions, The Freecycle Network has

8   always treated Counterdefendant and Mr. Oey as separate and distinct parties.

9                          **IV.    ARGUMENT**

10      As this Court is aware, motions to dismiss under Fed.R.Civ.P 12(b)(6) ("Rule 12(b)(6)")

11  are generally disfavored.  *See* <u>Gilligan v. Jamco Develop. Corp.</u>, 108 F.3d 246, 249 (9th Cir.

12  1997).  The Ninth Circuit has held that such motions should only be granted rarely.  *See* <u>United

13  States v. Redwood City</u>, 640 F.2d 963, 966 (9th Cir. 1981) (stating that a 12(b)(6) dismissal

14  should only be granted in extraordinary circumstances.)[1]  In fact, a motion to dismiss under Rule

15  12(b)(6) will be denied unless it appears that The Freecycle Network can prove no set of facts that

16  would entitle it to relief.  *See* <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957); *see also* <u>Fidelity Fin.

17  Corp. v. Fed. Home Loan Bank of S. F.</u>, 792 F.2d 1432, 1435 (9th Cir. 1986), *cert denied* 497 U.S.

18  1064 (1987).  Here, there exists an abundance of provable facts which would entitle The Freecycle

19  Network to the requested relief.  Indeed, all material allegations must be taken as true and

20  construed in the light most favorable to The Freecycle Network.  *See* <u>Big Bear Lodging Ass'n v.

21  Snow Summit, Inc.</u>, 182 F.3d 1096, 1101 (9th Cir. 1999).  As Counterdefendant is well aware, all

22  that is required under the Federal Rules of Civil Procedure is a short and plain statement of the

23  claims, not "to set out in detail the facts upon which [The Freecycle Network] bases [its] claim."

24  <u>Conley</u>, 355 U.S. at 47.  The Freecycle Network has met this requirement.

25

26

27  _____

28  [1] The alleged deficiencies pointed to in the Motion to Dismiss are the proper subject matter of a
    Rule 12(e) motion, and not a motion to dismiss under Rule 12(b)(6).

**A.    Counterdefendant's Request to Dismiss The Freecycle Network's Claims Under §§ 32(1) and 43(2) Must be Denied**

**1.    The Freecycle Network's Substantive Right in its Marks Warrants Protection**

The Federal Rules of Civil Procedure are based upon notice pleading, and tend to focus on substance over form. Despite Counterdefendant's assertions to the contrary, The Freecycle Network's underlying substantive rights in the Marks cannot be defeated merely because it has not yet obtained federal registration.

It is well established that the Lanham Act extends protection to unregistered marks as well as registered marks. Mario Valente Collezioni, Ltd. v. AAK Ltd., 280 F.Supp.2d 244, n.16 (S.D.N.Y 2003), citing Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205 (2000); *see also* Macia v. Microsoft Corp., 327 F.Supp. 2d 278, 283 (D. Vt. 2003) (holding that unregistered marks can be demonstrated to be protection-worthy). Registration of a trademark confers only procedural advantages and does not enlarge the registrant's substantive rights. *See* Brown & Bigelow v. B.B. Pen Co., 191 F. 2d 939, 942 (8th Cir. 1951). More important than registration is whether the mark itself merits protection.

In fact, Counterdefendant's sole reliance on the proposition that § 32(1) claims can be based only on registered trademarks "is an incorrect statement of the law." Prudhomme v. The Procter & Gamble Co., 800 F. Supp. 390, 395 (E.D.La 1992). The *Prudhomme* case involved a trademark infringement claim based on a commercial depicting an actor bearing a striking resemblance to plaintiff. *Id.* at 392. The Court of denied the defendant's motion to dismiss, stating in relevant part that:

> While registration may provide a presumption of protection under the Act, certain marks will be protected by the courts even if they are not registered. The necessary showing is that the mark be either "distinctive," or have acquired a secondary meaning.

*Id.* at 395 (citations omitted).

1
2
3

Accordingly, the Freecycle Network has standing to bring a claim under § 32(1) as long as the Freecycle Network has made the necessary showing that its Marks are "distinctive," or have acquired secondary meaning. *Id.*

4
5
6
7
8

Indeed, The Freecycle Network has fulfilled this requirement. In its counterclaims, The Freecycle Network states clearly that it is the "sole owner of the distinctive and famous [Marks], which it has been using exclusively and continuously since at least May 1, 2003." Answer and Counterclaims at ¶ 67.[2] Accordingly, Counterdefendant's assertion in this regard must be disregarded, and its motion to dismiss should be denied.

9
10

**2.    The Freecycle Network's Claim Under § 43(a) of the Lanham Act Moots any Potential Standing Issues Under § 32(1)**

11
12
13
14
15
16
17
18
19
20
21
22
23

Furthermore, the fact that the Freecycle Network brought its trademark infringement claim under both § 32(1) and § 43(a) of the Lanham Act makes the standing issue under § 32(1) moot. *See* Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Ohio, 849 F. 2d 1012, 1015 (6th Cir. 1988)("Because the District Court found that Elby's use of the Big Boy mark violated both sections [of § 32(1) and § 43(a)], we need not decide that § 32(1) standing issue.")(citations omitted); *see also* Brookfield Communications, Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1046 (9th Cir. 1999). Indeed, there is a very close relationship between § 32(1) and § 43(a). *See* Brookfield, 174 F.3d at 1046-47 n.8. While § 32(1) supports an action for trademark infringement, § 43(a) is the statutory unfair competition section and "creates a federal cause of action for false representation of goods or services in commerce, regardless of whether a registered trademark is involved." Frisch's Restaurants, 849 F.2d at 1015. Thus, "[g]enerally, 'the same facts which would support an action for trademark infringement would also support an action for unfair competition.'" *Id.*

24
25
26
27
28

---

[2] In addition, The Freecycle Network has obtained registration for the Marks in the European Union. Request for Judicial Notice at ¶ 2, Exh. 2. Furthermore, as pointed out by counsel for Mr. Oey in the Arizona action, the first fifty search results returned when using the Internet search engine Google™ BETA Groups to conduct a search for the term FREECYCLE all appear to discuss or are associated with The Freecycle Network. Request for Judicial Notice at ¶ 3, Exh. 3. Thus, this is further proof that The Freecycle Network's Marks are distinctive and famous.

1    Although Counterdefendant's TTAB opposition currently prevents The Freecycle Network

2   from obtaining its registration for its Marks, The Freecycle Network *at a minimum* has standing

3   for its statutory unfair competition claim under § 43(a).  As such, Counterdefendant's motion to

4   dismiss The Freecycle Network's counterclaims must be denied.

5

6    **3.    The Freecycle Network has Sufficiently Alleged Contributory Infringement by Counterdefendant**

7    The Freecycle Network has certainly alleged that Counterdefendant has "intentionally

8   induced another to infringe" its Marks.  Answer and Counterclaims at ¶¶ 72-73 (stating that

9   "Counterdefendant has encouraged others to use The Freecycle Network's Marks without

10  permission, even after being asked to cease and desist using the Marks" and further stating that

11  "Counterdefendant continues to encourage others to use The Freecycle Network's Marks through

12  a new Yahoo! group with the name "SunnyvaleFree" without permission, even after being asked

13  to cease and desist using the Marks"); *see also* <u>Inwood Labs., Inc. v. Ives Labs., Inc.</u>, 456 U.S.

14  842, 854-55 (1982); Motion to Dismiss at 12.

15    Counterdefendant argues that The Freecycle Network's claim for contributory

16  infringement is deficient because the counterclaim "falls unacceptably short of the requisite

17  allegation that Counterdefendant intended, knew, or had reason to know that those 'others' would

18  use TFN's alleged trademarks in an infringing manner."  Motion to Dismiss at 13.  However,

19  Counterdefendant's confused interpretation of Sixth Circuit law does not serve to support a motion

20  to dismiss this claim.  *Id.* at 12.  Similarly, not one of the other cases Counterdefendant cites

21  appears to support its contention that a third party must infringe the Marks before The Freecycle

22  Network can allege contributory trademark infringement.  The case law is clear: The Freecycle

23  Network must merely allege that Counterdefendant intentionally induced another to infringe its

24  Marks.  *See* <u>Inwood Labs.</u>, 456 U.S. at 854-55.[3]

25

26

27  [3] Further, the term "infringe" implies a likelihood of confusion, and it is sophistry to argue that it must be specifically pled.  As long as Counterdefendant has been put on notice pursuant to Fed. R.

28  Civ. P. 8 of the asserted counterclaim, it is disingenuous to waste the Court's time and resources pursuing such inanity.

- 8 -

1    In fact, Courts have held that a party encouraging infringement has sufficiently assumed

2    liability for contributory infringement because a party that has "[put] in the hands of his immediate

3    vendee the means of deceiving the consumer, is chargeable with unfair competition." *See*

4    Mershon Co. v. Pachmayr, 220 F.2d 879 n.3 (9th Cir. 1955); *see also* 4 J. THOMAS MCCARTHY,

5    McCarthy on Trademarks & Unfair Competition § 25:18 (4th Ed. 2003) (section on contributory

6    infringement stating that providing instrument of consumer deception is sufficient in some Courts

7    to ground liability.)  Accordingly, Defendant's assertions regarding a showing of third party

8    infringement at such an early stage of the action must be rejected.[4]  *See* Conley, 355 U.S. at 47.

9    Indeed, there is significant evidence of Counterdefendant's intent to induce others to

10    infringe the Marks.  Counterdefendant's postings were replete with postings encouraging others to

11    use the Marks in such a way which infringed upon The Freecycle Network's Marks.  For example,

12    one posting by a FreecycleSunnyvale member stated that "…I have encouraged people to use the

13    term freecycle as a generic term which would block The Freecycle Network, and all others, from

14    holding a trademark…."  Bandyopadhyay Decl., ¶ 7, Exh. 5.  Similarly another posting

15    encouraged others to "do your part" by misusing the mark FREECYCLE, in violation of The

16    Freecycle Network's trademark policy.[5]  *Id.*, ¶ 7, Exh. 6.  There can be no question that

17    Counterdefendant and its members intended, knew, or should have known that third parties would

18    misuse the Marks[6].  Accordingly, there is no doubt that Counterdefendant was ***intentionally***

19    ***inducing*** third parties to infringe the Marks, and Counterdefendant's motion to dismiss this claim

20    must therefore be denied.

21

22

23    [4] *See* Lockheed Martin Corp. v. Network Solutions, Inc., 194 F.3d 980, 983-84 (9th Cir. 1999)

24    (stating that one branch of contributory infringement encompasses instances when a Defendant
      "intentionally induces a third party to infringe the plaintiff's mark…." ) (emphasis added).

25    [5] In fact these instructions on how to misuse the Marks were created intentionally and in bad faith,

26    and were designed to destroy the acquired distinctiveness that the Marks have already achieved.
      The stated purpose is to ensure "that it can never be trademarked by any corporation ever" and that

27    everyone "will do your part to make it so."  *Id.*, ¶ 7, Exh. 7.

28    [6] *Id.*, ¶ 7, Exh. 5 ("have fun with it!"), Exh. 7 ("…please contact all the freecycle groups in your
      state and surrounding states to let them know that freecycle is a generic term…." ).

**B.    Counterdefendant's Request to Dismiss The Freecycle Network's Claim for Unfair Competition Must be Denied**

   **1.    The Freecycle Network Alleges a Recognized Unfair Competition Claim**

Contrary to Counterdefendant's assertions, the cause of action for unfair competition is clearly established under § 43(a) of the Lanham Act, and is also a widely recognized cause of action.  Counterdefendant's feigned ignorance of what cause of action has been pled cannot be taken seriously.  The Supreme Court has noted that § 43(a) of the Lanham Act "has been widely interpreted as creating, in essence, a federal law of unfair competition." Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763 n.18 (1992)[7].  The underlying rationale of § 43(a) is to promote fair competition, which is one of the primary goals of trademark law.  See Qualitex Co. v. Jacobson Prods. Co., 514 U.S. 159, 163-64 (1995) ("Trademark law promotes fair competition in the market place by …."); Intel Corp. v. Terabyte Intern., Inc., 6 F. 3d 614, 618 (9th Cir. 1993) (stating that Trademark policies are "…consistent with the objectives of free competition.'")

As such, the various distinct claims recognized by courts under § 43(a) are simply species of unfair competition, and are not causes of action separate from unfair competition.  See Champions Golf Club, Inc. v. The Champions Golf Club, Inc., 78 F. 3d 1111, 1123 (6th Cir. 1996)(stating that under the Lanham Act "false designation is simply species of unfair competition" and not a cause of action separate from unfair competition because "[t]hey are one in the same…."); Forschner Group, Inc. v. Arrow Trading Co., 904 F. Supp. 1409 n.4 (S.D.N.Y 1995)(stating that a claim of misrepresentation of source under Lanham Act is a claim of unfair competition.).  Thus, it is absolutely appropriate for The Freecycle Network to bring its claim for unfair competition under § 43(a), and Counterdefendant's allegation that the Freecycle Network failed to allege a recognized cause of action for unfair competition under § 43(a) is both incorrect

---

[7] Of course this has in fact been widely recognized for some time, as Counterdefendant's own cited case law demonstrates.  See Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Ohio, 849 F. 2d 1012, 1015 (6th Cir. 1988) (§ 43(a) is the statutory unfair competition section). See also Donchez v. Coors Brewing Co., 392 F. 3d 1211, 1215 (10th Cir. 2004) (recognizing unfair competition under § 43(a)).

1   as a matter of law and disingenuous.  As such, Counterdefendant's request to dismiss this claim

2   must be denied.

3           **2.        The Freecycle Network Has Sufficiently Pled Unfair Competition**

4           The Freecycle Network has sufficiently pled its counterclaims in accordance with the

5   requirement of Rule 8 of the Federal Rule of Civil Procedure ("FRCP 8").  FRCP 8 requires that a

6   pleading shall contain "a ***short and plain*** statement of the claim showing that the pleader is

7   entitled to relief."  Fed.R.Civ.P 8(a) (emphasis added).  In addition, each averment of a pleading

8   shall be "simple, concise, and direct."  Fed. R. Civ. P. 8(e).  The U.S. Supreme Court has further

9   interpreted that the rules "do not require a claimant to set out in detail the facts upon which he

10  bases his claim.  To the contrary, all the Rules require is 'a short and plain statement of the claim'

11  that will give the [Counterdefendant] fair notice of what [The Freecycle Network's] claim is and

12  the ground on which it rests."  Conley v. Gibson, 355 U.S. 41, 47 (1957).

13          The Freecycle Network has clearly put Counterdefendant on notice of the statutory unfair

14  competition claim, as well as the ground on which it rests.  *See id.*  The facts in this case are more

15  than adequate to support this conclusion.  First, as discussed above, The Freecycle Network is the

16  sole owner of the inherently distinctive and protectable Marks.  Answer and Counterclaims at

17  ¶ 67.  Counterdefendant may disagree on whether the Marks are inherently distinctive, but this

18  disagreement simply presents a substantial controversy on material facts which warrants further

19  litigation and demands the denial of the motion to dismiss under Rule 12(b)(6).  *See* Fed. R. Civ.

20  P. 12(b) & 56.  Second, The Freecycle Network has built up and now owns valuable goodwill that

21  is symbolized by these Marks, and that Counterdefendant has infringed these Marks by using them

22  without permission.  Answer and Counterclaims at ¶¶ 69 and 70.  Using The Freecycle Network's

23  Marks without permission will inevitably cause confusion among consumers as to the origin of the

24  services and the affiliation of Counterdefendant to The Freecycle Network.  As such, The

25  Freecycle Network has sufficiently pled facts to establish a likelihood of confusion.  Accordingly,

26  Counterdefendant's motion to dismiss this claim should be denied.

27

28

**C.    Protection of One's Trademark Right Does Not Fall within California's Anti-SLAPP Statute**

The Ninth Circuit Court of Appeals explained in <u>U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.</u>, 190 F.3d 963, 970-71 (9th Cir. 1999) that:

> [t]he hallmark of a SLAPP suit is that it lacks merit, and is brought with the goals of obtaining an economic advantage over a citizen party by increasing the cost of litigation to the point that the citizen party's case will be weakened or abandoned, and of deterring future litigation. . . . [W]inning is not a SLAPP plaintiff's primary motivation.

This description does not coincide with The Freecycle Network's California unfair competition counterclaim. The Freecycle Network could not hope for a better result than to win on all of its counterclaims and obtain relief from the injurious conduct Counterdefendant has taken against it. Furthermore, that The Freecycle Network had no intention of chilling public participation in any matters of public significance is evidenced by the fact that it did not instigate the present litigation. The Freecycle Network's claims appear in the form of ***counter***claims asserted in response to Counterdefendant's own declaratory judgment action.

Nevertheless, in analyzing a motion to strike under California's anti-SLAPP statute, a two-step analysis governs. Cal. Code Civ. P. § 425.16. First, the defendant bears the initial "burden of making a prima facie showing that the plaintiff's allegations are subject to that section," in other words, that the plaintiff's claim "arose from some act of the defendant that was taken [(1)] ***in furtherance of*** the defendant's constitutional rights of petition or free speech" and (2) in connection with a "public issue or an issue of public concern." <u>Gallimore v. State Farm Fire & Cas. Ins. Co.</u>, 102 Cal. App. 4th 1388, 1397 (2002) (citations omitted); Cal. Code Civ. P. § 425.16(b)(1). "***Only if*** the defendant satisfies that burden, will it then fall to plaintiff to establish . . . probability of success." <u>Gallimore</u>, 102 Cal. App. 4th at 1397 (emphasis added) (internal quotations omitted).

1    **1.    Counterdefendant Has Not Satisfied Its Burden Of Proof**

2    Counterdefendant's actions do not constitute acts "in furtherance of a person's right of

3    petition or free speech" under § 425.16(e)(3) or (4).[8] Like its Lanham Act counterclaim for unfair

4    competition, The Freecycle Network's counterclaim of unfair competition under California's

5    unfair competition law is based on Counterdefendant's "use of The Freecycle Network's Marks in

6    connection with their own [competing] re-using, recycling, and gifting services," which

7    "misrepresents the nature, characteristics, and qualities of [Counterdefendant's] services and

8    products." Answer and Counterclaims at ¶¶ 79, 80, and 82. The predominant injury in these

9    circumstances is that suffered by The Freecycle Network. Counterdefendant's conduct severely

10   impacts The Freecycle Network's reputation and therefore its ability to attract participation in The

11   Freecycle Network. Thus, because Counterdefendant's actions do not "impact[] a broad segment

12   of society or affect[] a community in a manner similar to that of a governmental entity," an issue

13   of public concern is not implicated. Troy Group, Inc. v. Tilson, 364 F. Supp. 2d 1149, 1153 (C.D.

14   Cal. 2005) (citation omitted).[9] The present action essentially involves a private commercial

15   dispute over trademark ownership, rights, and usage.

16   Additionally, the acts upon which The Freecycle Network's California unfair competition

17   counterclaim are based were not taken by Counterdefendant "in furtherance of" its right of petition

18   or free speech.[10] Cal. Code Civ. P. § 425.16. Rather, Counterdefendant's misuse of The

19   Freecycle Network's Marks was undertaken to reap a commercial advantage for itself—that is, to

20   promote its own services by freeloading off the goodwill and reputation established by The

---

22   [8] Notably, Counterdefendant does not attempt to argue that its actions fall under § 425.16(e)(1) or
23   (2).

24   [9] Much as "statements of one company regarding the conduct of a competitor" do not satisfy the
     "issue of public interest" test for purposes of a § 425.16 motion to strike, so also insufficient is the
25   misuse of one company's trademarks by a competitor. Globetrotter Software, Inc. v. Elan
     Computer Group, Inc., 63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999). Otherwise, "any lawsuit
26   alleging trade libel, false advertising or the like in the context of commercial competition would be
     subject to attack as a SLAPP suit. This clearly is not the result intended by the Legislature when
27   enacting the anti-SLAPP statute." Id.

28   [10] The "right of petition refers to the right to petition the government for the redress of grievances
     and is not . . . implicated here." Weinberg v. Feisel, 110 Cal. App. 4th 1122, 1131 (2003).

1  Freecycle Network and represented by the Marks.  Because The Freecycle Network's California

2  unfair competition counterclaim neither involves an issue of public interest, nor alleges conduct by

3  Counterdefendant taken in furtherance of its right of free speech, it is not subject to a § 425.16

4  motion to strike.  As such, Counterdefendant has failed to meet its initial burden.

5       Moreover, Counterdefendant does not even attempt to discuss these issues with respect to

6  The Freecycle Network's California unfair competition counterclaim.  Instead, Counterdefendant

7  would mislead the Court into believing that "[t]he acts that [The Freecycle Network] alleges as

8  examples of unfair competition in its *Arizona action* [*against Tim Oey*] disclose the acts on which

9  [The Freecycle Network] bases its state-law counterclaim in the [California] action [*against

10  Counterdefendant*]."  Motion to Dismiss at 18 (emphasis added).  Nonsensically, "[t]hose acts"

11  by Mr. Oey evidently "are Counterdefendant's protected free speech activities."

12       This argument misses the mark completely.[11]  First and foremost, speech activities by Mr.

13  Oey in a distinct and unrelated action do not form the basis of The Freecycle Network's California

14  unfair competition counterclaim against Counterdefendant.  The Arizona action does not even

15  name Counterdefendant as a defendant, but rather pleads wrongful conduct by the individual, Tim

16  Oey, and is based on a distinct set of facts.  Similarly, The Freecycle Network's counterclaims in

17  the California action involve only the actions of Counterdefendant, and nowhere incorporate by

18  reference any of the actions taken by Mr. Oey in the Arizona action.  Therefore, Counterdefendant

19  is utterly disingenuous in stating that "[The Freecycle Network] treats the acts of Tim Oey as the

20  acts of Counterdefendant."  Motion to Dismiss at 18.[12]  Indeed, it is Counterdefendant who is

21  attempting to treat the acts of Mr. Oey and the acts of Counterdefendant as one and the same.

22

23  _____

24  [11] As an underlying matter, The Freecycle Network has not made any allegation of unfair
25  competition in the Arizona action, and Counterdefendant's reference to such a nonexistent claim is
   merely an attempt to confuse and mislead the Court.
26
   [12] As stated above, counsel for Counterdefendant appeared on behalf of Mr. Oey in the hearing on
27  the TRO Motion in the Arizona case (a case where Counterdefendant is not a party and therefore
   has no standing), only to subsequently indicate that it does not represent the interests of Mr. Oey.
28  Bandyopadhyay Decl., ¶¶ 2-4, Exhs. 1-3.

1    Additionally, the claims here do not involve protected free speech activities, but rather

2    unlawful acts of unfair competition accomplished through trademark misappropriation and misuse.

3    Answer and Counterclaims at ¶¶ 70-77, 79-81, and 83-84.  Finally, Counterdefendant has not

4    offered the Court any support for the continual bald assertions in its Motion that its conduct

5    constitutes protected speech in the first place.  Motion to Dismiss at 17-19.

6    Recognizing that the alleged conduct of Counterdefendant in the California action fails to

7    satisfy the requirements of a § 425.16 motion to strike, Counterdefendant thus deceptively

8    incorporates The Freecycle Network's nonexistent Arizona unfair competition claim to muddle the

9    two actions and manufacture an "issue of public interest" in the California action by drawing on

10   Mr. Oey's speech activities in the Arizona action.[13]  Standing alone, however, the California

11   action and The Freecycle Network's counterclaims contained therein involve neither acts taken in

12   furtherance of the right to free speech nor acts in connection with an issue of public interest.

13   Accordingly, Counterdefendant's motion to strike must be dismissed.

14       **2.    Even if Counterdefendant Satisfies its Burden of Proof, The Freecycle
              Network is Likely to Prevail on its California Unfair Competition**

15       **Counterclaim**

16   Furthermore, The Freecycle Network can demonstrate that it is likely to prevail on its

17   California unfair competition counterclaim.  *See* Gallimore, 102 Cal. App. 4th at 1397.

18   To state a claim for unfair competition, a plaintiff must establish that the defendant's

19   practice is "either unlawful (*i.e.*, is forbidden by law), unfair (*i.e.*, harm to victim outweighs any

20   benefit) or fraudulent (*i.e.*, is likely to deceive members of the public)."  Albillo v. Intermodal

21   Container Servs., Inc., 114 Cal. App. 4th 190, 206 (2003) (citations omitted).  "Actual injury to

22   competition is not a required element of proof of a violation of [§ 17200]."  Herr v. Nestle U.S.A.,

23   Inc., 109 Cal. App. 4th 779, 790 (2003) (citations omitted).  Furthermore, "proof of intent to injure

24

25

26   _____

27   [13] The Freecycle Network in no way concedes that Mr. Oey's speech activities in the Arizona
     action occurred in connection with a public issue or that such speech is protected free speech in

28   the first instance.

1   is not necessary to prove a violation." <u>Irwin v. Mascott</u>, 93 F. Supp. 2d 1052, 1057 (N.D. Cal.

2   2000).

3         Counterdefendant has used the Marks intentionally in direct contravention of The

4   Freecycle Network's usage guidelines, and refused to cease misusing them.  Answer and

5   Counterclaims at ¶¶ 70-73.  Indeed, Counterdefendant's underlying complaint in this action

6   references two cease and desist letters sent by The Freecycle Network to Counterdefendant in an

7   attempt to stop Counterdefendant from engaging in such unauthorized and improper activities.

8   Amended Complaint, Exhs. 7 and 9.  Such misuse and distortion of the Marks is unlawful,

9   regardless of whether or not the Marks are federally registered, because they infringe upon The

10   Freecycle Network ownership of and rights in the Marks, acquired through exclusive and

11   continuous use since at least May of 2003.  <u>Albillo</u>, 114 Cal. App. 4th at 206; <u>Grupo Gigante SA

12   De CV v. Dallo & Co.</u>, 391 F.3d 1088, 1093 (9th Cir. 2004) ("Under the principle of first in time

13   equals first in right, priority ordinarily comes with earlier ***use*** of a mark in commerce. It is not

14   enough to have invented the mark first or even to have registered it first." (citation and internal

15   quotations omitted)).

16         Furthermore, Counterdefendant's acts are unfair based on a balancing of the hardships.

17   <u>Albillo</u>, 114 Cal. App. 4th at 206.  Due to Counterdefendant's conduct, The Freecycle Network

18   has suffered harm in terms of diminished distinctiveness of its Marks and loss of reputation and

19   goodwill from being associated with an organization that does not abide by The Freecycle

20   Network's guidelines.  Counterdefendant, on the other hand, has not and will not suffer any harm

21   from being prohibited from misusing the Marks and derivations of the Mark.  It is mere

22   showmanship on the part of the Counterdefendant to claim that it cannot conduct recycling efforts

23   without the use of The Freecycle Network's intellectual property.

24         Lastly, Counterdefendant's actions are fraudulent, *i.e.*, "likely to deceive members of the

25   public." <u>Albillo</u>, 114 Cal. App. 4th at 206.  The public has come to rely upon the Marks as an

26   indicator that they are dealing with a local organization connected to The Freecycle Network and

27   its associated reputation and goodwill.  Answer and Counterclaims at ¶¶ 67-69.

28   Counterdefendant's use of the Marks and variations of the mark (*e.g.*, "freecycling," "freecyclin',"

"freecycler") is so similar to the Marks themselves that there is a substantial likelihood that the public is deceived into believing that Counterdefendant affiliated with, endorsed by, or approved of by The Freecycle Network and its reputation and goodwill.

Therefore, Counterdefendant's § 425.16 motion to strike is improper. The elements of The Freecycle Network's California unfair competition counterclaim are satisfied, and thus The Freecycle Network has shown that it is highly likely to prevail on its counterclaim. As such, Counterdefendant's motion to strike must be denied.

## V.     CONCLUSION

Based upon the foregoing arguments, The Freecycle Network respectfully requests that the Court deny Counterdefendant's motion to dismiss. In the alternative, should the Court find any merit in Counterdefendant's arguments, The Freecycle Network respectfully requests leave to amend its Answer and Counterclaims.


DATED:  May 19, 2006                    **PERKINS COIE** LLP


                                        By ____/s/ Esha Bandyopadhyay_____
                                        Paul J. Andre
                                        Lisa Kobialka
                                        Esha Bandyopadhyay
                                        Sean Boyle

                                        Attorneys for Defendant
                                        The Freecycle Network, Inc.