1    PAUL J. ANDRE, Bar No. 196585
     (pandre@perkinscoie.com)
2    LISA KOBIALKA, Bar No. 191404
     (lkobialka@perkinscoie.com)
3    ESHA BANDYOPADHYAY, Bar No. 212249
     (ebandyopadhyay@perkinscoie.com)
4    SEAN M. BOYLE, Bar No. 238128
     (sboyle@perkinscoie.com)
5    PERKINS COIE LLP
     101 Jefferson Drive
6    Menlo Park, CA 94025
     Telephone:     (650) 838-4300
7    Facsimile:     (650) 838-4350

8    Attorneys for Defendant
     The Freecycle Network, Inc.
9

10                     UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12                           OAKLAND DIVISION

13

14   FREECYCLESUNNYVALE, a California        CASE NO. C 06-00324 CW
     unincorporated association.,
15                                            THE FREECYCLE NETWORK, INC.'S
                                              OPPOSITION TO FREECYCLESUNNYVALE'S
16            Plaintiff/Counterdefendant,     MOTIONS TO DISMISS AMENDED
                                              COUNTERCLAIMS UNDER FED.R.CIV.P.
17   v.                                       12(b)(6) AND TO STRIKE STATE-LAW
                                              COUNTERCLAIM UNDER CAL. CODE CIV.
18   THE FREECYCLE NETWORK, INC., an          PROC. § 425.16
     Arizona corporation,
19

20            Defendant/Counterclaimant.

21   _____

22
     AND RELATED COUNTERCLAIMS
23

24

25

26

27

28

     OPPOSITION TO MOTIONS TO DISMISS AND STRIKE          CASE NO. C 06-00324 CW
     COUNTERCLAIMS

1

**TABLE OF CONTENTS**

2    I.    INTRODUCTION ................................................................................................ 1

3    II.   STATEMENT OF ISSUES TO BE DECIDED ............................................... 1

4    III.  STATEMENT OF RELEVANT FACTS............................................................ 2

5          A.    The Freecycle Network's Factual Allegations ................................. 2

6          B.    This Court's Order Granting Leave to Amend .............................. 2

7    IV.   ARGUMENT........................................................................................................ 4

8          A.    THE FREECYCLE NETWORK HAS COMPLIED WITH THIS COURT'S
9                ORDER.......................................................................................................... 5

10         B.    THE FREECYCLE NETWORK HAS SUFFICIENTLY ALLEGED THE
11               ESSENTIAL ELEMENT OF PROTECTABILITY ....................................... 5

12               1.    The Freecycle Network's Allegation of "Inherent Distinctiveness"
                       Pleads the Essential Element ............................................... 7

13
                 2.    Simplified "Notice Pleading" is the Policy and Especially Pertinent
14                     to Trademark Infringement Cases.......................................... 7

15               3.    The Freecycle Network's Marks Are Inherently Distinctive .............. 8

16         C.    "GENERICIZING" BY A COMPETITOR CONSTITUTES
17               INFRINGEMENT UNDER THE LANHAM ACT ...................................... 10

18               1.    As a Competitor, Counterdefendant May Not Make The Freecycle
                       Network's Marks Generic Under The Lanham Act .......................... 11
19
                 2.    The Freecycle Network's Marks Are Not Generic.......................... 11
20
                 3.    The Materiality of The Freecycle Network's Application for
21                     Trademark Registration of the Marks Shows the that the Marks are
22                     Not Generic ........................................................................ 14

23               4.    The Defenses Raised By Counterdefendant Provide No Shield To
                       Making a Competitor's Mark Generic................................... 16
24
           D.    THE FREECYCLE NETWORK HAS SUFFICIENTLY ALLEGED THE
25               STANDING ELEMENT OF FALSE ADVERTISING ................................ 20

26         E.    LANHAM ACT VIOLATIONS DO NOT IMPAIR FREE SPEECH
27               RIGHTS AND ARE NOT SUBJECT TO ANTI-SLAPP MOTIONS........... 21

28               1.    Lanham Act Violations Do Not Impair Free Speech Rights.............. 21

- i -

2.    Lanham Act Violations Are Not Subject Anti-SLAPP Motions........ 21

3.    Statements of "Opinion" are Judged by Reasonableness and Context
– Not on Their Face ........................................................................... 21

F.    LEAVE TO AMEND IS FREELY GRANTED ............................................. 23

V.    CONCLUSION......................................................................................................... 25

OPPOSITION TO MOTIONS TO DISMISS AND STRIKE
COUNTERCLAIMS

CASE NO. C 06-00324 CW

1

## TABLE OF AUTHORITIES

2

3    **Cases**

4

Abercrombie & Fitch Co. v. Hunting World, Inc.,
  537 F.2d 4 (2d. Cir. 1976)......................................................................... 9

Albillo v. Intermodal Container Servs., Inc., 114 Cal. App. 4th 190 (2003)...................... 23

Alpha Indus., Inc. v. Alpha Steel Tube & Shapes, Inc., 616 F.2d 440, 445-46 (9th
  Cir. 1980) ........................................................................................ 10

American Steel Foundries v. Robertson,
  269 U.S. 372 (1926)............................................................................. 14

Armstrong Paint & Varnish Works v. Nu-Enamel Corp.,
  305 U.S. 315 (1938)............................................................................. 14

Banff, Ltd. v. Federated Dept. Stores, Inc.,
  841 F.2d 486 (2d. Cir. 1988) ................................................................... 10

Big Bear Lodging Ass'n v. Snow Summit, Inc., 182 F.3d 1096 (9th Cir. 1999)...............5, 17

Bosley Medical Institute Inc., v. Kremer,
  403 F.3d 672 (9th Cir. 2005)................................................................... 21

Conley v. Gibson, 355 U.S. 41 (1957) ...........................................................5, 8

Dallas Cowboy Cheerleaders, Inc. v. Scoreboard Posters, Inc., 600 F.2d 1184, 1188
  (5th Cir. 1979) ..............................................................................17, 20

Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 604 F.2d 200, 206
  (2d Cir. 1979) ...............................................................................17, 20

Dr. Seuss Enters., L.P. v Penguin Books USA, Inc., 109 F.3d 1394, 1403 n.11 (9th
  Cir. 1997) .................................................................................17, 20, 21

Dreamwerks Prod. Group, Inc v. SKG Studio, 142 F.3d 1127, 1130-31 (9th Cir.
  1998) ........................................................................................... 10

Echo Drain v. Newsted,
  307 F.Supp.2d 1116 (C.D. Cal. 2003) ..........................................................7, 8

Fidelity Fin. Corp. v. Fed. Home Loan Bank of S. F., 792 F.2d 1432 (9th Cir.
  1986), *cert denied* 497 U.S. 1064 (1987)...................................................... 5

Gilligan v. Jamco Develop. Corp., 108 F.3d 246 (9th Cir. 1997)................................ 5

- iii -

Hanover Star Milling Co. v. Metcalf,
    240 U.S. 403 (1916)......................................................................................... 14

In re Nett Designs, Inc.,
    236 F.3d 1339 (Fed. Cir. 2001) ......................................................................... 9

Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery,
    150 F.3d 1042 (9th Cir. 1998)........................................................................... 7

Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery, 150 F.3d 1042, 1047 n.8
    (9th Cir. 1998) ................................................................................................. 11

L.L. Bean, Inc. v. Drake Pub., Inc.,
    625 F.Supp. 1531 (D.Me. 1986) ....................................................................... 18

L.L. Bean, Inc. v. Drake Publishers, Inc.,
    811 F.2d 26 (1st Cir. 1987) ............................................................................... 18

Mattel, Inc. v. MCA Records,
    296 F.3d 894 (9th Cir. 2002) ............................................................................ 18

Milkovich v Lorain Journal Co., 497 U.S. 1 (1990)........................................17, 22

National Assoc. of Letter Carriers v Austin, 418 U.S. 264 (1974) ................17, 22

Navallier v. Sletten,
    29 Cal. 4th 82 (2002) ........................................................................................ 23

Nissan Motor Co. v. Nissan Computer Corp., 378 F.3d 1002 (9th Cir. 2004) ..................... 18

Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189 (1985) ....................... 3

Soweco, Inc. v. Shell Oil Co.,
    617 F.2d 1178 (5th Cir. 1980)............................................................................ 9

Stix Products, Inc. v. United Merchants & Mfrs., Inc.,
    295 F.Supp 479 (S.D.N.Y. 1968) ...................................................................... 12

Surgicenters of America, Inc. v. Medical Dental Surgeries, Co.,
    601 F.2d 1011 (9th Cir. 1979) .......................................................................... 12

Two Pesos, Inc. v. Taco Cabana, Inc.,
    505 U.S. 763 (1992)........................................................................................... 7

Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769 (1992)........................... 10

United States v. Redwood City, 640 F.2d 963 (9th Cir. 1981) ............................... 5

OPPOSITION TO MOTIONS TO DISMISS AND STRIKE          CASE NO. C 06-00324 CW
COUNTERCLAIMS

WSM, Inc. v. Hilton,
    724 F.2d 1320 (8th Cir. 1984) ............................................................... 9

Zacchini v. Scripps-Howard Broad. Co., 443 U.S. 562, 576-77 and n.13 (1977) ............18, 20

Zatarains, Inc. v. Oak Grove Smokehouse, Inc.,
    698 F.2d 786 (5th Cir. 1983) ................................................................. 9

**Statutes**

§ 17200 claim .............................................................................. passim

§ 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) ..........................................passim

Cal. Bus. & Prof. Code § 17200 ................................................................ 24

Cal. Code Civ. P. § 425.16(e) ................................................................... 23

Fed.R.Civ.P. 8(a)(2) .......................................................................7, 8, 24


**Other Authorities**

2 McCarthy on Trademarks and Unfair Competition § 12:28, at 12-91 (4th
    Ed. 2006) ................................................................................ 17

Black's Law Dictionary 694 (7th ed. 1999) ................................................... 12

OPPOSITION TO MOTIONS TO DISMISS AND STRIKE                    CASE NO. C 06-00324 CW
COUNTERCLAIMS

1

## I.  INTRODUCTION

2      FreecycleSunnyvale ("Counterdefendant") is making of mockery of this Court's Order of

3 July 25, 2006 ("Order") granting The Freecycle Network, Inc. ("The Freecycle Network") leave to

4 amend its counterclaims.  In the Order, this Court provided the guidelines necessary to give

5 Counterdefendant "fair notice" of The Freecycle Network's *claims* and the grounds on which each

6 rests pursuant to Conley v. Gibson, 355 U.S. 41 (1957) (emphasis added).  Not satisfied with the

7 Supreme Court's instruction of Conley, Counterdefendant now argues that this Court's instructions

8 were insufficient.  Counterdefendant seeks to re-write Conley and the Order so that the "fair

9 notice" standard requires you to prove one's claims in its initial pleadings.  Not realizing the policy

10 of "notice pleading" underlying the Federal Rules of Civil Procedure ("Rules"), Counterdefendant

11 wishes to extend the policy to "fact pleading" by wildly insisting on a standard of "category

12 pleading" for trademark infringement cases.

13      The Freecycle Network has pled inherently distinctive marks because it has inherently

14 distinctive marks that have been used extensively to identify a single source, The Freecycle

15 Network.  The marks are not generic, for numerous reasons, including the fact that after the United

16 States Patent and Trademark Office ("PTO") performed a complete examination of the marks (an

17 examination in which included The Freecycle Network successfully defended its marks against

18 another entity) and approved them for publication for opposition.  The PTO examining attorney's

19 approval for publication provides strong factual support that marks are not generic in spite of the

20 protestations of the Counterdefendant to the contrary.

21      Counterdefendant is asking this Court to sanction its acts of "genericizing" under the guise

22 of protectable speech under the First Amendment; however, enforcement of the Lanham Act does

23 not arouse fears that trigger the First Amendment.  Courts have recognized that the First

24 Amendment is not a license to trammel on legally recognized rights in intellectual property.

25 Moreover, allegations of infringing conduct are not susceptible to Counterdefendant's anti-SLAPP

26 motion to strike at this early stage of the litigation.  The First Amendment simply does not provide

27 a shield to infringe.

28

OPPOSITION TO MOTIONS TO DISMISS AND STRIKE            CASE NO. C 06-00324 CW

1    Additionally, Counterdefendant is also attempting to conflate the Arizona action in an

2    attempt to mislead the Court.  The Arizona action is against an individual, Mr. Tim Oey, and

3    involves his liability for his individual actions, which is separate and apart from

4    Counterdefendant's actions, or approval or support for such improper actions.  In fact,

5    Counterdefendant even claims in Footnote 6 of its brief that "FreecycleSunnyvale" moved the

6    Ninth Circuit to stay the preliminary injunction, but this is simply part of its continued deception.

7    It was Mr. Oey that moved to stay the injunction, for Counterdefendant is not a party of the

8    Arizona action.  Moreover, nothing that has occurred before the Ninth Circuit bestows

9    Counterdefendant with any presumption favorable to it from the stay pending the appeal.

10   Although Counterdefendant is attempting to extract a favorable presumption based on the merits

11   of the Arizona case and the Ninth Circuit appeal, these separate matter should  not have any

12   impact on whether legally-supported, well-pleaded claims asserted by The Freecycle Network

13   have been made against Counterdefendant, the issues presently before this Court.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Has the claim for direct trademark infringement been sufficiently alleged?

2.    Has the claim for contributory trademark infringement been sufficiently alleged?

3.    Has the claim for federal unfair competition been sufficiently alleged?

4.    Has the claim for state law unfair competition been sufficiently alleged?

## III.    STATEMENT OF RELEVANT FACTS

### A.    THE FREECYCLE NETWORK'S FACTUAL ALLEGATIONS

The Freecycle Network is an incorporated Arizona non-profit organization which promotes

recycling by providing support to and acting as a central organizing point for local community-

based recycling efforts throughout the United States and several countries abroad. (Docket N0. 46,

Amended Answer and Counterclaims at ¶ 61) ("Answer").  It is "the sole owner of the inherently

distinctive and famous trademarks "FREECYCLE" and "THE FREECYCLE NETWORK", and

the "THE FREECYCLE NETWORK" logo (collectively referred to as the "Marks"), which it has

been using exclusively and continuously since at least May 1, 2003." *Id.* at ¶ 67.  As a result of its

exclusive and continuous use and promotion of the Marks, The Freecycle Network has "built up

OPP.TO MOTIONS TO DISMISS AND STRIKE COUNTERCLAIMS          CASE NO. C 06-00324 CW

1    and now owns valuable goodwill that is symbolized by these Marks." *Id.* at ¶ 69.  Because the

2    Marks are inherently distinctive, they cannot be generic or part of the public domain.  *Id.* at ¶¶ 13,

3    44, 67.  To protect its Marks, The Freecycle Network has applied for registration on the Principal

4    Register of the marks FREECYCLE and its distinctive logo.  *Id.* at ¶ 68.  After a complete

5    examination was performed by the United States Patent and Trademark Office ("PTO"), the PTO

6    approved them for publication for opposition on November 22, 2005 and issued a notice for

7    publication for opposition on December 28, 2005.  *Id.* at ¶ 68; Trademark Manual of Examining

8    Procedure ("TMEP") § 704.01.[1]

9         The Freecycle Network competes with Counterdefendant in re-using, recycling, and gifting

10   services.  *Id.* at ¶¶ 73, 87.  As a competitor, Counterdefendant misuses of The Freecycle Network's

11   inherently distinctive Marks in connection with these services by misrepresenting the nature,

12   characteristics, and qualities of the Counterdefendant's services.  *Id.* at ¶¶ 74, 86.

13   Counterdefendant has used The Freecycle Network's Marks without permission and misuses them

14   through a new Yahoo! Group with the name "SunnyvaleFree" without permission, even after

15   being asked by The Freecycle Network to cease and desist.  *Id.* at ¶¶ 70-71.  Such uses of The

16   Freecycle Network's inherently distinctive Marks are likely to cause confusion, to cause mistake,

17   or to deceive as to the origin, sponsorship, or approval of such products and services offered by

18   Counterdefendant.  *Id.* at ¶¶ 74, 88.  Such uses are also likely to cause confusion, to cause mistake,

19   or to deceive as to the affiliation, connection, or association with Counterdefendant.  *Id.* at ¶¶ 74,

20   88.

21        Counterdefendant freely admits that it encourages others to use The Freecycle Network's

22   Marks without permission on a Website which Counterdefendant directly controls, monitors and

23   holds a position of power as a moderator.  *Id.* at ¶ 78.  Counterdefendant willfully and

24   intentionally induces third parties to infringe the Marks by encouraging others to misuse the

25

26   _____

27   [1] The PTO's approval evidences a finding by the PTO examining attorney that the approved marks
     are <u>not</u> generic.  <u>Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.</u>, 469 U.S. 189, 194 (1985) (holding that

28   "[g]eneric terms are not registrable"); TMEP 1209.01(c) (stating that generic terms "are incapable of
     functioning as registrable trademarks denoting source, and are not registrable on the Principal Register").

OPP. TO MOTIONS TO DISMISS AND STRIKE COUNTERCLAIMS          CASE NO. C 06-00324 CW

1   Marks in the form or verbs, adjectives, gerunds, and participles with the primary intent to make

2   the now inherently distinctive Marks generic. *Id.* at ¶¶ 75-77.

3       Counterdefendant's willful and intentional conduct is calculated to harm the goodwill of

4   The Freecycle Network's Marks, The Freecycle Network's reputation and goodwill, and The

5   Freecycle Network's ability to attract and maintain corporate sponsorship. *Id.* at ¶¶ 79-81, 90-91.

6   As a result, The Freecycle Network has filed counterclaims alleging direct trademark

7   infringement, contributory trademark infringement, unfair competition under federal law, and

8   unfair competition under state law.  The Freecycle Network seeks relief from its competitor's

9   harmful attempts to "genericize" its protectable Marks, i.e., make the Marks generic.

10  **B.     THIS COURT'S ORDER GRANTING LEAVE TO AMEND**

11      On July 25, 2006, this Court issued an Order granting The Freecycle Network leave to

12  amend its counterclaims in accordance with instructions provided by the Court.  (Docket No. 37)

13  ("Order").  The Court addressed The Freecycle Network's four claims of direct trademark

14  infringement, contributory trademark infringement, unfair competition under federal law, and

15  unfair competition under state law.

16      First, the Court determined that The Freecycle Network may state a claim of direct

17  trademark infringement under § 43(a)(1)."  Order at 7:27-8:2.  Second, the Court determined that

18  The Freecycle Network's claim of contributory trademark infringement must contain allegations

19  "either that Plaintiff has intentionally induced a third party or parties to infringe the Marks or that

20  Plaintiff directly controls and monitors the instrumentality used by others to infringe the Marks" in

21  its amended Answer and Counterclaims. *Id.* at 8:27-9:4.  Third, the Court determined that The

22  Freecycle Network needed to "identify the particular prong or prongs of § 43(a)(1) which Plaintiff

23  is alleged to have violated." *Id.* at 11:15-16.  The Court also pointed out that The Freecycle

24  Network must identify whether the Marks had inherent or acquired distinctiveness. *Id.* at 12:13-

25  16.  Fourth, the determined that The Freecycle Network needed specify the legal bases for its §

26  17200 claim under state law and substantiate the underlying claim of an illegal, unfair or

27  fraudulent practice." *Id.* at 13-17.

28

1    As shown below, The Freecycle Network has complied with the Order by amending its

2    claims in accordance with this Court's Order.

3                                IV.  ARGUMENT

4        As this Court is aware, motions to dismiss under FED.R.CIV.P 12(b)(6) ("Rule 12(b)(6)")

5    are generally disfavored.  *See* Gilligan v. Jamco Develop. Corp., 108 F.3d 246, 249 (9th Cir.

6    1997).  The Ninth Circuit has held that such motions should only be granted rarely.  *See* United

7    States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981) (stating that a 12(b)(6) dismissal

8    should only be granted in extraordinary circumstances.)  In fact, a motion to dismiss under Rule

9    12(b)(6) will be denied unless it appears that The Freecycle Network can prove no set of facts that

10   would entitle it to relief.  *See* Conley, 355 U.S. 41, 45-46 (1957); *see also* Fidelity Fin. Corp. v.

11   Fed. Home Loan Bank of S. F., 792 F.2d 1432, 1435 (9th Cir. 1986), *cert denied* 497 U.S. 1064

12   (1987).  Here, there exists an abundance of provable facts which would entitle The Freecycle

13   Network to the requested relief.  Indeed, all material allegations must be taken as true and

14   construed in the light most favorable to The Freecycle Network.  *See* Big Bear Lodging Ass'n v.

15   Snow Summit, Inc., 182 F.3d 1096, 1101 (9th Cir. 1999).  As Counterdefendant is well aware, all

16   that is required under the Federal Rules of Civil Procedure ("Rules") is a short and plain statement

17   of the claims, not "to set out in detail the facts upon which [The Freecycle Network] bases [its]

18   claim." Conley, 355 U.S. at 47.  The Freecycle Network has met this requirement.

19   **A.    THE FREECYCLE NETWORK HAS COMPLIED WITH THIS COURT'S**
20   **        ORDER**

21       The Freecycle Network has complied with the Order.  First, the Court stated "Defendant

22   may, if it wishes, amend its first counterclaim to state a claim for direct infringement under §

23   43(a)(1)."  Order at 7:27-8:2.  The Freecycle Network complied by making several factual

24   allegations and stating that such allegations "constitute[d] direct trademark infringement in

25   violation of § 43(a)(1) of the Lanham Act, 15 U.S.C. § 1125(a)."  Answer at ¶¶ 66-74.

26       Second, the Court stated that "Defendant must, if it can do so truthfully and without

27   contradicting its original pleading, allege either that Plaintiff has intentionally induced a third

28   party or parties to infringe the Marks or that Plaintiff directly controls and monitors the

OPP. TO MOTIONS TO DISMISS AND STRIKE COUNTERCLAIMS        CASE NO. C 06-00324 CW

1    instrumentality used by others to infringe the Marks" in its amended Answer and Counterclaims.

2    Order at 8:27-9:4. The Freecycle Network complied by alleging that Counterdefendant "willfully

3    and intentionally induced third parties to infringe the Marks. . . ." Answer at ¶¶ 75-77. Also, The

4    Freecycle Network alleges Counterdefendant "directly controls, monitors and holds a position of

5    power as moderator of a Website which encourages others to use The Freecycle Network's Marks

6    without permission" and that such "inducement and control of an instrumentality by

7    Counterdefendant which encourages third parties to infringe upon The Freecycle Network's Marks

8    constitutes contributory infringement in violation of § 43(a) of the Lanham Act, 15 U.S.C. §

9    1125(a)." Answer at ¶¶ 78-79.

10       Third, the Court stated that The Freecycle Network needs to "identify the particular prong

11   or prongs of § 43(a)(1) which Plaintiff is alleged to have violated." Order at 11:15-16. The

12   Freecycle Network complied by making several factual allegations regarding misuse of its

13   inherently distinctive Marks and stating that such misuse "constitute[d] unfair competition in

14   violation of § 43(a)(1)(A) and § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)." Answer at

15   ¶ 89.

16       Fourth, the Court stated that "Defendant must, if it can do so without contradicting its

17   original Answer and Counterclaims, specifically allege whether the Marks have inherent or

18   acquired distinctiveness." Order 12:13-16. The Freecycle Network complied by alleging the

19   Marks to be inherently distinctive. Answer at ¶¶ 67, 84-86, 88, 90-91.

20       Finally, the Court ordered "Defendant to file amended pleadings which, in addition to

21   specifying the specific legal basis or bases for the § 17200 claim, allege facts sufficient, if proved,

22   to substantiate the underlying claim of an illegal, unfair or fraudulent practice." Order at 13-17.

23   The Freecycle Network complied by specifying the legal bases of "illegal practice", "unfair

24   business practices", and "fraudulent" and alleging sufficient facts to support each basis of the

25   underlying claim. Answer at ¶¶ 95-97.

26

27

28

1    **B.    THE FREECYCLE NETWORK HAS SUFFICIENTLY ALLEGED THE**
2    **ESSENTIAL ELEMENT OF PROTECTABILITY**

3          **1.    The Freecycle Network's Allegation of "Inherent Distinctiveness"**
              **Pleads the Essential Element**

4          Protectability is an essential element where trademarks are unregistered but are nonetheless

5    protectable under the Lanham Act.  To determine whether or not an unregistered mark is

6    protectable under § 43(a) of the Lanham Act, "courts look to the general principles qualifying a

7    mark for registration under § 2."  Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery, 150 F.3d

8    1042, 1047 n.7 (9th Cir. 1998) (*quoting* Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768

9    (1992)).  "To be protected under § 2, a mark must be capable of distinguishing the applicant's

10   goods from the goods of others. . . . In other words, the mark must be distinctive."  Kendall-

11   Jackson, 150 F.3d at 1047.  As the Supreme Court instructed, "[a]n identifying mark is distinctive

12   and is capable of being protected if it either (1) is inherently distinctive or (2) has acquired

13   distinctiveness through secondary meaning." Two Pesos, 505 U.S. at 769.

14         In a previous motion, Counterdefendant raised the protectable trademark issue by citing

15   Echo Drain v. Newsted, 307 F.Supp.2d 1116, 1121 (C.D. Cal. 2003) and stating that The

16   Freecycle Network "failed to allege a protectable trademark interest[.]"  (Docket No. 24 at 15:1-4,

17   16:9).  In its Order, this Court instructed The Freecycle Network to "specifically allege whether

18   the Marks have inherent or acquired distinctiveness."  The Freecycle Network complied with this

19   instruction and alleged that its Marks are inherently distinctive.  Hence, The Freecycle Network

20   has met its pleading requirement by providing "'a short and plain statement of the claim showing

21   that the pleader is entitled to relief[.]"  FED.R.CIV.P. 8(a)(2)).

22         Now, Counterdefendant now asserts that this Court's instructions are insufficient.

23   Counterdefendant argues that it "does not have fair notice of the basis of the 'inherently distinctive'

24   allegation."  (Docket No. 48 at 12:23-24) ("Motion").  In other words, Counterdefendant argues

25   that the "fair notice" requires that one demonstrate in its initial pleadings evidence to support its

26   claims.  This, however, is not the correct standard of fair notice.  "[A]ll the Rules require is 'a short

27   and plain statement of the claim' that will give the defendant [here, Counterdefendant] fair notice

28   of what the plaintiff's [here, Counterclaimant's] *claim* is and the grounds on which it rests."

- 7 -

1   Conley, 355 U.S. 41, 47 (1957) (emphasis added) (*quoting* FED.R.CIV.P. 8(a)).  Here, The

2   Freecycle Network's does not state a claim of inherent distinctiveness; rather, it states claims of

3   direct and contributory trademark infringement, as well as unfair competition under federal and

4   state law.  The grounds on which the stated claims rest include the existence of a protectable mark.

5   By alleging the Marks to be protectable and inherently distinctive, The Freecycle Network has

6   provided Counterdefendant fair notice of the grounds on which the actual claims rest.

7          Moreover, Counterdefendant has stumbled over the very case law quoted in its previous

8   motion.  In the instant motion, Counterdefendant states that "[a]n allegation that a term is

9   inherently distinctive *is not* a unique ground to show a protectable trademark interest. . . ."  Motion

10  at 14:20-21 (emphasis added).  In its previous motion, Counterdefendant argued that an allegation

11  of inherent distinctiveness *is* a unique ground to establish a protectable trademark interest:

12         Because Echo Drain has not obtained a federal trademark registration, it must
           prove that the Echo Drain mark is protectable.  In order to *establish* that it has a
13         *protectable trademark*, Echo Drain must prove (1) that its mark is *inherently*
           *distinctive* or (2) that the mark has acquired distinctiveness through secondary
14         meaning.

15  (*Id.* at 15:1-4) (*quoting* Echo Drain, 307 F.Supp.2d at 1121) (emphasis added).[2]

16         Obviously, Counterdefendant 's previous argument undermines its current argument.  Thus,

17  The Freecycle Network has pled the essential element of protectability, and The Freecycle

18  Network respectfully requests the Court to deny Counterdefendant 's motion to dismiss all of The

19  Freecycle Network's counterclaims.

20         **2.     Simplified "Notice Pleading" is the Policy and Especially Pertinent to**
                   **Trademark Infringement Cases**
21
22         Counterdefendant would have this Court believe that more facts are needed, namely a

23  specific account of facts underlying the inherent distinctiveness of its Marks, but "fact pleading" is

24  not policy; "notice pleading" is.  "Such simplified 'notice pleading' is made possible by the liberal

25  opportunity for discovery and the other pretrial procedures established by the Rules to disclose

26

27  _____

28         [2] Echo Drain involves a decision at the summary judgment stage.  At the appropriate time, The
    Freecycle Network will prove it has inherently distinctive Marks, by is not required to do so now.

more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues." Conley, 355 U.S. at 47-48.

These liberal and simplified policies are especially apt in trademark infringement cases involving inherently distinctive marks because the categories of the trademark spectrum – descriptive, suggestive, arbitrary, and fanciful – are factual. WSM, Inc. v. Hilton, 724 F.2d 1320, 1326 (8th Cir. 1984) ("[t]he correct categorization of a given term is also a factual issue"). Moreover, the categories of the spectrum are difficult to distinguish at the boundaries as Judge Friendly noted:

> The lines of demarcation, however, are not always bright. Moreover, the difficulties are compounded because a term that is in one category for a particular product may be in quite a different one for another, because a term may shift from one category to another in light of differences in usage through time, because a term may have one meaning to one group of users and a different one to others, and because the same term may be put to different uses with respect to a single product.

Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d. Cir. 1976) (internal notes omitted).

The Federal Circuit shares similar thoughts:

> In the complex world of etymology, connotation, syntax, and meaning, a term may possess elements of suggestiveness and descriptiveness at the same time. No clean boundaries separate these legal categories. Rather, a term may slide along the continuum between suggestiveness and descriptiveness depending on usage, context, and other factors that affect the relevant public's perception of the term.

In re Nett Designs, Inc., 236 F.3d 1339, 1341 (Fed. Cir. 2001).

Other courts have also lamented that correctly categorizing a mark is slippery. The Fifth and Eighth Circuits noted that "[a]lthough meant as pigeon-holes, these useful labels are instead central tones in a spectrum; they tend to merge at their edges and are frequently difficult to apply." Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178, 1183 (5th Cir. 1980), cert. denied, 450 U.S. 981 (1981); Zatarains, Inc. v. Oak Grove Smokehouse, Inc., 698 F.2d 786, 790 (5th Cir. 1983) ("These categories, like the tones in a spectrum, tend to blur at the edges and merge together."); WSM, 724 F.2d at 1325 ("These categories, like colors in a spectrum, tend to blur at the edges and merge together, making it difficult to apply the appropriate label."). The Second Circuit acknowledged that placing a mark in one of these categories "is far from an exact science, and that the differences

1    between the classes, which is not always readily apparent, makes placing a mark in its proper

2    context and attaching to it one of the four labels a *tricky business at bes*t." Banff, Ltd. v.

3    Federated Dept. Stores, Inc., 841 F.2d 486, 489 (2d. Cir. 1988) (emphasis added).

4        Thus, in light of "the liberal opportunity for discovery . . . to disclose more precisely the

5    basis of both claim[s] and defense[s] and to define more narrowly the disputed facts and issues[,]"

6    The Freecycle Network has adequately pled its counterclaims of direct and contributory trademark

7    infringement, as well as unfair competition under federal and state law, at this early stage of the

8    litigation. Conley, 355 U.S. at 47-48. "Notice pleading" is the policy and not "fact pleading" (or

9    "category pleading"). As such, The Freecycle Network has provided fair notice to

10   Counterdefendant of its counterclaims and the grounds on which they rests in compliance with this

11   Court's order and the holding of Conley. Accordingly, The Freecycle Network respectfully

12   requests the Court to deny Counterdefendant's motion to dismiss all of The Freecycle Network's

13   counterclaims.

14       **3.    The Freecycle Network's Marks Are Inherently Distinctive**

15       A trademark is inherently distinctive if it is suggestive or arbitrary. *See* Two Pesos, 505 at

16   769 (1992). The best example of an arbitrary mark is a name made up by the user. Alpha Indus.,

17   Inc. v. Alpha Steel Tube & Shapes, Inc., 616 F.2d 440, 445-46 (9th Cir. 1980). FREECYCLE is

18   an inherently distinctive trademark that identifies The Freecycle Network's service. In this case,

19   there is no dictionary definition for the term FREECYCLE. Rather, the term FREECYCLE is

20   comprised of an arbitrary arrangement of two words that serves no purpose other than to identify

21   The Freecycle Network and the source of its services. *See* Dreamwerks Prod. Group, Inc v. SKG

22   Studio, 142 F.3d 1127, 1130-31 (9th Cir. 1998) (holding that common words used in a fictitious

23   and arbitrary manner identifying the source of a product deserves broad protection as an arbitrary

24   mark).

25       The terms "free" or "cycle" by themselves are not descriptive of an Internet service

26   dedicated to waste reduction through reusing, recycling and gifting of goods that one no longer

27   wants or needs and facilitated through thousands of local member groups. Nor does the

28   combination of "free" and "cycle" conjure thoughts of such an Internet-based waste reduction

1  service.  There is no association between the mark FREECYCLE and the quality or nature of The

2  Freecycle Network's service of re-gifting, reusing and exchange.  <u>Kendall-Jackson</u>, 150 F.3d at

3  1047 n.8 (9th Cir. 1998) (holding that an arbitrary mark is a common word used in a manner that

4  is not suggestive or descriptive of the business).  Rather, on hearing FREECYCLE, a consumer

5  might just as easily believe this is a service offering free bicycles, or is perhaps a free "spinning"

6  aerobic class using stationary bikes.  Considering the term in its entirety, the relationship between

7  FREECYCLE and The Freecycle Network's service is appropriately viewed as arbitrary.  *See*

8  <u>GoTo.com, Inc. v. Walt Disney Co.</u>, 202 F.3d 1199, 1207 (holding that a mark must be considered

9  in its entirety when determining the strength of a mark).

10  　　　　The Freecycle Network's Marks can rightfully be found in more than one category.  The

11  correct categorization of a trademark is a slippery issue of fact.  For its initial pleading, there is no

12  requirement for a party to plead with all facts underlying a specific category of inherent

13  distinctiveness.  Moreover, there is simply no requirement in the Rules for "fact pleading" or

14  "category pleading" as argued by Counterdefendant; simplified "notice pleading" of the essential

15  elements is the policy underlying the Rules, and The Freecycle Network has met this requirement.

16  <u>Conley</u>, 355 U.S. at 47-48.  Disclosing all the evidence supporting the notice allegations in The

17  Freecycle Network's counterclaims and narrowing the disputed facts and issues will occur during

18  the case; however, it is not required at the initial pleading stage.  *See id.*  Thus, The Freecycle

19  Network respectfully requests the Court to deny Counterdefendant 's motion to dismiss all of The

20  Freecycle Network's counterclaims.

21

22  **C.　　"GENERICIZING" BY A <u>COMPETITOR</u> CONSTITUTES**

23  **　　　INFRINGEMENT UNDER THE LANHAM ACT**

24  　　　　**1.　　As a Competitor, Counterdefendant May Not Make The Freecycle**
    **　　　　　　Network's Marks Generic Under The Lanham Act**

25  　　　　The Freecycle Network's allegations for trademark infringement and contributory

26  infringement constitute standard allegations of infringement.  A competitor, Counterdefendant, has

27  improperly used and induced others to use The Freecycle Network's inherently distinctive Marks

28

1    without permission and such use is likely to cause confusion, to cause mistake or deception.

2    Answer ¶¶ 66-82.  Taking these allegations to be true and construed in the light most favorable to

3    The Freecycle Network, The Freecycle Network has sufficiently pled its claim for trademark

4    infringement under 15 U.S.C. § 1125; Big Bear Lodging, 182 F.3d at 1101.  Thus, The Freecycle

5    Network has pled a cognizable claim under the Lanham Act.  Contrary to Counterdefendant'

6    assumption, these allegations are by no means limited to what Counterdefendant claims is "generic

7    use."  The use by Counterdefendant, a competitor, of The Freecycle Network's Marks offering the

8    same or similar service is in fact likely to cause confusion.  Ultimately, the manner of use and

9    whether Counterdefendant's use is permissible is not a question appropriately brought at this stage

10    of the case.

11        Moreover, contrary to Counterdefendant's claim, *competitors* such as The Freecycle

12    Network and Counterdefendant may not "genericize" each other's mark, i.e., one may not make a

13    competitor's trademark generic.[3]  Stix Products, Inc. v. United Merchants & Mfrs., Inc., 295

14    F.Supp 479 (S.D.N.Y. 1968); see generally Surgicenters of America, Inc. v. Medical Dental

15    Surgeries, Co., 601 F.2d 1011, 1019 (9th Cir. 1979) (quoting Stix to provide the test to distinguish

16    between "suggestive" and "descriptive" terms).  In Stix, the court rejected a declaratory judgment

17    plaintiff's assertion that the trademark CON-TACT had become generic for self-adhesive paper

18    and found that one is not allowed to make a competitor's trademark generic.  Defendant United

19    was the owner of the trademark CON-TACT, and the court found that the plaintiff Stix had been

20    using the term "contact paper" in connection with its self-adhesive paper product in order to render

21    its competitor's trademark generic in violation of the Lanham Act.  Stix, 295 F.Supp. at 492.  The

22    Court therein stated:

23            Based upon the record, my trial notes and a study of the entire transcript, I
              find Shulman's [plaintiff's president] testimony unacceptable.  His testimony, at
24            times glib and facile, was marked by palpably evasive and irrelevant replies to
              critical inquiry.  Its substance reveals a deliberate effort to conceal, behind a maze
25

26
_____

27        [3] "Genericide occurs when a trademark becomes a household name that the consuming public
     begins to think of the mark not as a brand name but as a synonym for the product itself.  Examples of
28    trademarks that have been "killed" include aspirin and escalator."  BLACK'S LAW DICTIONARY 694 (7th ed.
     1999).

of conflicting and equivocal explanations, Stix's true purpose in its use of
'contact' in its advertising and promotional material.  Shulman's purposeful
conduct emerges from the entire record and is emphasized by demeanor evidence.
His claim that by 1959 the word 'contact' and related phrases had become generic
for the goods was the *product of his own creation*.  The conclusion is compelled
that it was part of a planned and aggressive campaign to devitalize or destroy the
value of United's mark in an effort to force it into the public domain.

. . .

The Court concludes that Stix's use of 'contact' in its captions, whether in
lower case, with a capital 'C', in block letters or without a hyphen, is a trademark
use; it is not a primary or descriptive or generic use, but is an infringement of
United's registered mark CON-TACT.

*Id.* (emphasis added).

Stix in directly on point, and the findings in Stix share striking similarities with

the facts pled herein and those presented by this Court.  The Freecycle Network and

Counterdefendant are competitors, and The Freecycle Network owns protectable Marks

that are inherently distinctive.  Answer at ¶¶ 13, 44, 67, 73, 87.  In Stix, the competitor's

assertion "the word 'contact' and related phrases had become generic for the goods was

the *product of his own* creation."  *Id.*  Here, the idea that The Freecycle's Marks are

generic is a product of Counterdefendant's own creation in contrast to the finding by the

PTO examining attorney that the approved marks are not generic; in fact, when another

entity applied for a trademark of FREECYCLE, The Freecycle Network applied a

vigorous and successful defense to the examining attorney.  *See infra.*  In Stix, there was

"a planned and aggressive campaign [by the competitor] to devitalize or destroy the value

of United's mark in an effort to force it into the public domain."  Stix, 295 F.Supp. at 492.

Here, The Freecycle Network's competitor's campaign to devitalize or destroy the value

of The Freecycle Network's mark in an effort to force it into the public domain is aptly

demonstrated with the competitor's willful and intentional encouragement to "use of the

Marks in the form or verbs, adjectives, gerunds, and participles so that this misuse will

result in the Marks being rendered generic for the specific purpose of rendering them

unregistrable" on the Principal Register.  Answer at ¶¶ 75-77.

Moreover, the additional findings in Stix are also directly on point:

Stix's infringement of United's trade-mark CONTACT was intentional and
purposeful.  That Shulman persuaded himself he had a legal right to pursue the

- 13 -

1        course he did diminishes neither the fact of Stix's violation of United's rights, nor
the force of its impact upon the customer.  That a course is stubbornly pursued

2        does not render it innocent.  The very persistence in the infringing conduct over
the prompt protest of United not only emphasizes its willfulness, but continues the

3        wrong. . . ."

4    Stix, 295 F.Supp. at 499.

5        Applying this finding to the alleged facts of the instant matter, Counterdefendant's

6    infringement was intentional and purposeful.  That Counterdefendant or any official of

7    Counterdefendant was persuaded of a legal right to pursue the course of making The

8    Freecycle Network's Marks generic does not diminish neither the fact of

9    Counterdefendant's violation nor the force of its impact upon the customer.  That the

10    course is stubbornly pursued by Counterdefendant does not render it innocent.  The very

11    persistence in the infringing conduct over the prompt protest of The Freecycle Network

12    not only emphasizes its willfulness, but continues the wrong.

13        A competitor's act of genericizing is "'but a part of the broader law of unfair

14    competition,' and the law applicable to both is substantially the same."  Stix, 295 F.Supp.

15    492-93 (quoting Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 413 (1916)).  "The

16    essence of both claims is that the use of the infringing term creates the likelihood of

17    consumer confusion; the facts supporting both are also substantially the same."  Stix, 295

18    F.Supp. at 493 (quoting, e.g., Armstrong Paint & Varnish Works v. Nu-Enamel Corp.,

19    305 U.S. 315, 325 (1938); American Steel Foundries v. Robertson, 269 U.S. 372, 380

20    (1926)).

21        Thus, even under Counterdefendant's inaccurate version of what The Freecycle

22    Network has actually pled, the allegations, The Freecycle Network has a claim.  The

23    Freecycle Network respectfully requests the Court to deny Counterdefendant's motion to

24    dismiss all of The Freecycle Network's counterclaims.

25    **2.      The Freecycle Network's Marks Are Not Generic**

26        Counterdefendant wastes the valuable time and resources of this Court on a baseless and

27    ubiquitous argument that the Marks are generic.  Appellant's Brief passim.  Taking the allegations

28    of the counterclaims to be true and construed in the light most favorable to The Freecycle

OPP. TO MOTIONS TO DISMISS AND STRIKE COUNTERCLAIMS        CASE NO. C 06-00324 CW

1    Network, there are sufficient allegations in the counterclaims to support that the Marks are

2    inherently distinctive and therefore not generic. For example, in addition to alleging that The

3    Freecycle Network has been using its inherently distinctive marks continuously since May 1,

4    2003, The Freecycle Network has applied for registration on the Principal Register of the marks

5    FREECYCLE and its distinctive logo. After a complete examination was performed by the PTO,

6    the PTO approved them for publication for opposition on November 22, 2005 and issued a notice

7    for publication for opposition on December 28, 2005. Answer at ¶ 68; TMEP § 704.01. As

8    evidenced by Supreme Court precedent and the PTO's examination procedures, the PTO's

9    examining attorney's approval supports a finding that the approved marks are <u>not</u> generic. <u>Park 'N</u>

10   <u>Fly, Inc.</u>, 469 U.S. at 194 (holding that "[g]eneric terms are not registrable"); TMEP 1209.01(c)

11   (stating that generic terms "are incapable of functioning as registrable trademarks denoting source,

12   and are not registrable on the Principal Register"). But this is only half the story.

13        Absent from Counterdefendant's cherry-picked record of the PTO's examination are key

14   documents demonstrating The Freecycle Network's vigorous and significant efforts to defend its

15   Marks during the prosecution of its application. Evidence in the prosecution includes the fact that

16   after learning of prior pending application of another entity to register FREECYCLE, The

17   Freecycle Network notified the other entity on August 9, 2004 of The Freecycle Network's

18   exclusive right to use the name FREECYCLE and requested it to withdraw its application and

19   discontinue using the name. (The Freecycle Network's Request for Judicial Notice ("RJN"),

20   which accompanies this Memorandum of Points and Authorities, Exh. 1 at 31-32). On January 21,

21   2005, The Freecycle Network mailed a letter to the PTO protesting the other entity's application.

22   <u>Id</u>. at 29-30. Subsequent to these actions, the prior pending application became abandoned, and

23   the PTO approved the approved marks for publication of the Principal Register. <u>Id</u>. at 1. Thus,

24   when the full record of the PTO's examination is examined, The Freecycle Network has taken

25   extensive measures to protect the Marks from becoming generic – and has been successful.

26        Thus, when considering the examination history in whole, and the <u>actual</u> allegations of the

27   Answer, the Marks are inherently distinctive and <u>not</u> generic.

28

3.     **The Materiality of The Freecycle Network's Application for Trademark Registration of the Marks Shows the that the Marks are Not Generic**

Counterdefendant has requested this Court to strike The Freecycle Network's allegations regarding its application for trademark registration in the PTO as being "immaterial."  Motion at 23:18-25:8.  According to Counterdefendant, the allegations have "no" relationship to "any" conceivable counterclaim.  Motion at 23:18-20.  Nothing could be further from the truth.

The actions in the PTO go directly to defeat Counterdefendant's ubiquitous and conclusory assertions that the Marks are generic.  Each and every argument of Counterdefendant is couched in the false assumption that The Freecycle Network's Marks are generic.  Counterdefendant's arguments are chocked full statements describing the Marks as generic.  The Marks are not generic, as explained above, and this is clearly supported by the activities that have transpired with the PTO, and the allegations in the counterclaims that are to be taken as true and construed in the light most favorable to The Freecycle Network.  The PTO examining attorney's approval for publication for opposition provides evidence of finding that the Marks are <u>not</u> generic, and thereby material.  Taking The Freecycle Networks' allegations to be true, i.e., that the Marks are inherently distinctive, makes such allegations regarding the PTO's approval for publication material and appropriate.  For Counterdefendant to argue that there is "no" relationship to "any" conceivable counterclaim is senseless.  Accordingly, Counterdefendant's motion to strike dismiss The Freecycle Network's counterclaims must be denied.

4.     **The Defenses Raised By Counterdefendant Provide No Shield To Making a Competitor's Mark Generic**

A competitor may not use another's trademark without permission in a manner that is likely to cause confusion, mistake or deception.  Additionally, a competitor may not make another's trademark generic.  As described above, Counterdefendant is infatuated with the notion that the counterclaims are based on "generic use," and its tortured argument is an attempt to justify or nullify its willful and intentional efforts to make the Marks.  *See* Motion *passim*.  Such an attempt to pigeon hole The Freecycle Network's allegations are neither proper and are undermined by the actual allegations set

forth in the counterclaims. Moreover, Counterdefendant as not set forth any defenses that shield it from its conduct.

### a.    Counterdefendant's Acts of Genericizing Do Not Constitute Generic Use in Periodicals or Statements of Opinion

Counterdefendant advances Professor's McCarthy's treatise to assert that there is no legal remedy to stop those "who use a word in a generic sense in magazines, newspapers, books, dictionaries, etc." *Id.* at 16:1. Professor McCarthy takes the view that "the author of an entry in a dictionary or a story in a media or trade press article which uses an alleged trademark in a generic sense is expressing her opinion to the meaning of that designation." 2 McCarthy on Trademarks and Unfair Competition § 12:28, at 12-91 (4th Ed. 2006). However, Counterdefendant's comments are not used in the generic sense; rather, they are deliberate attempts to make The Freecycle Network's Marks generic and cannot be legitimately classified as statements of opinion. Furthermore, there is use of the Marks by a competitor that is likely to cause confusion, mistake or deception. Answer ¶¶ 66-82. As such, Counterdefendant's use is not entitled to First Amendment protection.

Cloaking statements as "opinion" does not automatically make the statement an opinion: "[s]imply couching a statement ... in terms of opinion ... does not dispel the factual implication contained in the statement." Milkovich v Lorain Journal Co., 497 U.S. 1, 19 (1990). In Milkovich, the Court held that the statement "'[i]n my opinion Jones is a liar,' can cause as much damage to reputation as the statement, "'Jones is a liar.'" *Id.* The Court was not persuaded that "an additional separate constitutional privilege for 'opinion' is required to ensure the freedom of expression guaranteed by the First Amendment." *Id.* at 21. Rather, it is a question of reasonableness. *Id.* Moreover, it is a question of the context in which Counterdefendant made the statements. *See* National Assoc. of Letter Carriers v. Austin, 418 U.S. 264, 284 (1974). At this early stage of the litigation, all material allegations must be taken as true and construed in the light most favorable to The Freecycle Network. *See* Big Bear Lodging, 182 F.3d at 1101.

- 17 -

Counterdefendant's use of FREECYCLE, for example, on a competing business does not constitute First Amendment use.  Inducing others to similarly misuse the Marks also does not constitute First Amendment use or opinion.  It is a willful infringement of the Marks.  This is what has been pled.  Counterdefendant is willfully and intentionally using and inducing others to misuse and infringe the Marks without permission.  Answer ¶¶ 70-82.  Counterdefendant is also encouraging the misuse of the Marks in an attempt to harm the goodwill associated with those Marks and in an manner that is likely to cause confusion, mistake or deception.  *Id.*  As such, the factual implications contained in Counterdefendant's statements are unreasonable and, shown in context, are deliberate acts of genericizing a competitor's marks.

**b.     Counterdefendant's Acts of Infringement under the Lanham Act are not Protected by the First Amendment**

Enforcement of the Lanham Act "does not arouse fears that trigger" the First Amendment. Dr. Seuss Enters., L.P. v Penguin Books USA, Inc., 109 F.3d 1394, 1403 n.11 (9th Cir. 1997) (*quoting* Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd., 604 F.2d 200, 206 (2d Cir. 1979)).  As courts have recognized, "[t]he First Amendment is not a license to trammel on legally recognized rights in intellectual property." Dallas Cowboy Cheerleaders, Inc. v. Scoreboard Posters, Inc., 600 F.2d 1184, 1188 (5th Cir. 1979) (*citing* Zacchini v. Scripps-Howard Broad. Co., 443 U.S. 562, 576-77 and n.13 (1977)) (citations omitted).  As such, Counterdefendant's infringing conduct does not arouse fears that trigger the First Amendment.

Counterdefendant places great emphasis on Mattel, Inc. v. MCA Records, 296 F.3d 894, 900 (9th Cir. 2002), L.L. Bean, Inc. v. Drake Publishers, Inc., 811 F.2d 26, 29 (1st Cir. 1987), and Nissan Motor Co. v. Nissan Computer Corp., 378 F.3d 1002, 1017 (9th Cir. 2004) as supporting its position that the First Amendment protects it from making a competitor's mark generic. Counterdefendant's reliance on these cases, however, fails because the cases do not involve a competitor's efforts to genericize a mark.  The opposing parties in each case are not competitors with each other: toy manufacturer Mattel is not in competition with the music companies who

produced, marketed and sold the song "Barbie Girl";[4] L.L. Bean (a mail order catalog company for marketing sporting goods and wearing apparel) is not in competition with High Society (a monthly periodical featuring adult erotic entertainment);[5] and the automobile manufacturer is not in competition with the computer store operator of Nissan Computer.[6]  Second, these cases did not involve claims related to genericide: in Mattel, the issues involved a parody of Barbie and a nominative fair use;[7] in L.L. Bean, the issues involved the opportunity of parodists "to poke fun at symbols and names which have become woven into the fabric of our daily life"; and in Nissan, the issues involved alleged trademark violations of a trademark holder and websites using the trademark name.  As such, The Freecycle Network is not attempting "to quash an unauthorized use of the mark by another who is communicating ideas or expressions points of view" Mattel, 296 F.3d at 900 (quoting L.L. Bean, 811 F.2d at 29) or generally "control language."  Motion at 18:6-7, 11 (quoting Nissan, 378 F.3d at 1017).  Counterdefendant's willful and intentional comments fall far outside the bounds of the mere "communications of an idea" or "expressions of a point of view."  Instead, Counterdefendant's comments entail a "planned and aggressive campaign to devitalize or destroy the value of [a competitor's] mark in an effort to force it into the public domain" which constitutes infringement under the Lanham Act as well as using the Marks without permission, thereby constituting infringement .  Stix, 295 F.Supp. at 492.  Thus, Counterdefendant's reliance on the protections of the First Amendment fails.

> **c.    Counterdefendant's Arguments Based on "Consumers" and "Generic Use" Are Inapplicable**

Counterdefendant states that a trademark registration "may be cancelled if *consumers* use the trademark as a generic term."  Motion at 16:9-14 (emphasis added).  This statement, even if assumed to be true, is not on point.  Counterdefendant is not a consumer but a competitor of The

---

[4] Mattel, 296 F.3d at 899.

[5] L.L. Bean, Inc. v. Drake Pub., Inc., 625 F.Supp. 1531, 1533 (D.Me. 1986).

[6] Nissan, 378 F.3d at 1006.

[7] Mattel, 296 F.3d at 899.

OPP. TO MOTIONS TO DISMISS AND STRIKE COUNTERCLAIMS        CASE NO. C 06-00324 CW

1  Freecycle Network in re-using, recycling, and gifting services.  Answer ¶¶ 73, 87.  Thus,

2  Counterdefendant's argument is fundamentally flawed because the basis is wrong.

3       Counterdefendant's other arguments suffer from the same false assumption of "generic

4  use."  Counterdefendant's arguments that "generic use" is not actionable, that a proscription on

5  "generic use" would extend to non-commercial use, and that statutory defenses and the dual usage

6  doctrine permit Counterdefendant "generic use" are simply inapplicable to the competitor's acts of

7  genericide.  (Motion at 16:15-17:16).  Moreover, the assumption that The Freecycle Network's

8  allegations are only based on the alleged "generic use" is simply wrong.  Accordingly, The

9  Freecycle Network respectfully requests the Court to deny Counterdefendant's motion to dismiss

10  all of The Freecycle Network's counterclaims.

### d.    Notice Pleading Is Sufficient.

12       Contrary to Counterdefendant, the allegations of improper use of The Freecycle Network's

13  Marks which are inherently distinctive are sufficient to satisfy the pleading requirements for a

14  claim under the Lanham Act.  Taking the allegations to be true and granting all inferences in favor

15  of The Freecycle Network, Counterdefendant's attempts to require more should be disregarded.

## D.    THE FREECYCLE NETWORK HAS SUFFICIENTLY ALLEGED THE STANDING ELEMENT OF FALSE ADVERTISING

18       This Court stated that a "false advertising" action under Section 43(a)(1)(B) of the Lanham

19  Act has "standing requirement" element in which the party "must show that the injury is

20  'competitive.'"  Order at 10:4-16.  In compliance with this Court's instruction, The Freecycle

21  Network has alleged that it competes with Counterdefendant in re-using, recycling, and gifting

22  services, and that Counterdefendant misuses The Freecycle Network's inherently distinctive Marks

23  in connection with these services by misrepresenting the nature, characteristics, and qualities of

24  the Counterdefendant's services.    Answer at ¶¶ 86-87.  Thus, The Freecycle Network has

25  sufficiently alleged the standing element and the competitive relationship between the parties.

26       Counterdefendant wastes the valuable time and resources of this Court on a mindless

27  argument that "ambiguity" remains about any competitive relationship between the parties.  Such

28  argument is nothing but a poor attempt of creating an ambiguity where no ambiguity exists.

1    Counterdefendant's so-called "ambiguity" rests on The Freecycle Network's allegation that it

2    "promotes recycling by providing support to and acting as a central organizing point for local

3    community-based recycling efforts." *Id.* at ¶ 61.  While this allegation provides a general

4    overview of The Freecycle Network's activities, the existence of it does not negate the notice

5    given to Counterdefendant that it is a competitor of The Freecycle Network with respect to the

6    specific services of "re-using, recycling, and gifting[.]" *Id.* at ¶ 87.  This short and plain statement

7    provides Counterdefendant fair notice the essential element of standing.  As such, The Freecycle

8    Network has met its pleading requirements of <u>Conley</u>.  Any ambiguity is solely a product of

9    Counterdefendant's creation.

10   **E.     LANHAM ACT VIOLATIONS DO NOT IMPAIR FREE SPEECH RIGHTS**

11   **       AND ARE NOT SUBJECT TO ANTI-SLAPP MOTIONS**

12   **     1.     Lanham Act Violations Do Not Impair Free Speech Rights**

13          As discussed above, enforcement of the Lanham Act "does not arouse fears that trigger"

14   the First Amendment in the Ninth Circuit.  <u>Dr. Seuss</u>, 109 F.3d at 1403 n.11 (*quoting* <u>Pussycat</u>

15   <u>Cinema</u>, 604 F.2d at 206).  "The First Amendment is not a license to trammel on legally

16   recognized rights in intellectual property."  <u>Scoreboard Posters, Inc.</u>, 600 F.2d 1184 at 1188 (*citing*

17   <u>Zacchini</u>, 443 U.S. at  576-77 and n.13 (1977)) (citations omitted).  As a preliminary matter, this

18   case is about a lawful business' attempt to protect its property rights, namely its Marks.  *See*

19   <u>Pussycat Cinema</u>, 604 F.2d at 206 (finding that a trademark infringement action is "not a case of

20   government censorship, but a private plaintiff's attempt to protect its property rights").  As a result,

21   enforcement of The Freecycle Network's property rights does not violate any rights protected in

22   the First Amendment.  Protecting one's property rights, including intellectual property, is a time

23   honored tradition that does not implicate First Amendment concerns.

24   **     2.     Lanham Act Violations Are Not Subject Anti-SLAPP Motions**

25          As described above, The Freecycle Network has set forth a Lanham Act claim that is not

26   protected by the First Amendment.  Therefore, the anti-SLAPP motion to strike fails as a matter of

27   law because there is a cognizable cause of action that is not subject to First Amendment

28   protection.

1   Furthermore, motions to strike are not properly decided at this early stage of the litigation.

2   In fact, the holding of <u>Bosley Medical Institute Inc., v. Kremer</u>, 403 F.3d 672 (9th Cir. 2005) sets

3   forth this point.  In <u>Bosley</u>, the plaintiff Bosley Medical Institute owned the registered trademark

4   "Bosley Medical," and Kremer created a website using the trademark as domain name

5   www.BosleyMedical.com.  *Id.* at 674.  Bosley sued for trademark infringement and state-law

6   claims, and Kremer moved to strike Bosley's state-law claims pursuant to California's anti-SLAPP

7   statute.  *Id.*  The district court granted the anti-SLAPP motion to strike, but the Ninth Circuit

8   reversed.  *Id.* at 682.  The court held that although "the noncommercial use of a trademark as the

9   domain name of a website – the subject of which is consumer commentary about the products and

10  services represented by the mark – [did] not constitute infringement under the Lanham Act[,]" the

11  allegations concerning unauthorized use of the trademark "was not so lacking in merit as to be

12  susceptible to an anti-SLAPP motion to strike at an early stage of the case."  *Id.* at 674.

13      With respect to Counterdefendant's anti-SLAPP motion, the <u>Bosley</u> Court's holding is

14  directly on point.  The Freecycle Network's allegations concerning the unauthorized use of its

15  inherently distinctive Marks do not lack merit as to be susceptible to Counterdefendant's motion to

16  strike at this early stage of the litigation.  Thus, Counterdefendant's motion to strike must be

17  denied.

18      **3.    Statements of "Opinion" are Judged by Reasonableness and Context –
             Not on Their Face**

19

20      In its Order, this Court stated that "[o]n their *face*, the postings [of Mr. Oey] do not appear

21  to be, as Defendant suggests, 'a private commercial dispute,' but rather Mr. Oey's *expression of his*

22  *opinion* about the Mark's protectability."  *Id.* at 15:15-18 (emphasis added).  The Court only cited

23  to snippets of the statements, which do not constitute, by any means, the entirety of statements at

24  issue.  This is not the correct basis for making such finding.

25      As discussed above, cloaking small snippets of statements as "opinion" does not

26  automatically make the statement an opinion: "[s]imply couching a statement … in terms of

27  opinion … does not dispel the factual implication contained in the statement."  <u>Milkovich</u>, 497

28  U.S. at 19.  In <u>Milkovich</u>, the Court was not persuaded that "an additional separate constitutional

privilege for 'opinion' is required to ensure the freedom of expression guaranteed by the First Amendment." *Id.* at 21. Rather, it is a question of reasonableness. *Id.* Moreover, it is a question of the context in which Counterdefendant made the statements. *See* <u>Austin</u>, 418 U.S. at 284 (1974). Nonetheless, the fact remains that at this early stage of the litigation, all material allegations must be taken as true and construed in the light most favorable to The Freecycle Network. *See* <u>Big Bear Lodging</u>, 182 F.3d at 1101.

**4.    Counterdefendant Has Failed to Meet Its Burden of Showing that the Freecycle Network's State Law Unfair Competition Counterclaim Arises Out of Speech Acts in Connection with an Issue of Public Interest**

Notwithstanding the Ninth Circuit's strong precedents of <u>Dr. Seuss</u> that enforcement of the Lanham Act does not arouse fears that trigger the First Amendment and of <u>Bosley</u> that violations of the Lanham Act are not subject to anti-SLAPP motions, Counterdefendant cannot sustain its burden of showing that The Freecycle Network's third counterclaim arises out of speech "in connection with an issue of public interest" under CAL. CODE CIV. P. § 425.16(e). "A defendant [here, plaintiff] filing an anti-SLAPP motion to strike must make an initial prima facie showing that the plaintiff's suit [here, Defendant's counterclaims] arises from an act in furtherance of defendant's [here, Plaintiff's] right of petition or free speech." <u>Bosley</u>, 403 F.3d at 682 (internal quotations omitted). Because the factual allegations made constitute allegations of infringement, and a deliberate act of genericizing a competitor's marks, Counterdefendant has failed to meet its burden under CAL. CODE CIV. P. § 425.16(e). Counterdefendant cannot simply ignore allegations contained in the counterclaims in an attempt to support its motion to strike. Accordingly, Counterdefendant's motion to strike dismiss must be denied.

**5.    The Freecycle Network's Allegations Substantiating Its Underlying Claims of Illegal, Unfair, And Fraudulent Practices Show Its Probability of Success and are Sufficiently Pled**

Enforcement of the Lanham Act does not arouse fears that trigger the First Amendment, violations of the Lanham Act are not subject to anti-SLAPP, statements of "opinion" are judged by their context and not on their face, and Counterdefendant cannot sustain its burden under the anti-SLAPP statutes. This Court stated that The Freecycle Network must establish that Counterdefendant's business practice is "unlawful (i.e., is forbidden by law), unfair (i.e., harm to

- 23 -

victim outweighs any benefit) or fraudulent (i.e., is likely to deceive members of the public)."

Order at 16:16-22 (*quoting* Albillo v. Intermodal Container Servs., Inc., 114 Cal. App. 4th 190,

206 (2003)). This Court ordered The Freecycle Network "to file amended pleadings which, in

addition to specifying the specific legal basis or bases for the § 17200 claim, allege facts

sufficient, if proved, to substantiate the underlying claim of an illegal, unfair or fraudulent

practice." Order at 17:13-18.

     The Freecycle Network has complied with the Order. After incorporating each of the

federal law allegations, The Freecycle Network has alleged facts sufficient to substantiate its

underlying claim of illegal practice: "Counterdefendant's misuse of the Marks without permission,

its encouragement of others to misuse the Marks, and its inducement of others to infringe the

Marks is forbidden by law and therefore constitutes illegal practice under the Cal. Bus. & Prof.

Code § 17200." Answer at ¶¶ 93, 95. Also, The Freecycle Network has alleged facts sufficient to

substantiate its underlying claim of unfair practice: "Counterdefendant's misuse of the Marks

without permission, its encouragement of others to misuse the Marks have caused The Freecycle

Network to suffer a loss in reputation, goodwill, membership, and corporate sponsorship and is

therefore unfair in that it harms The Freecycle Network and such harm outweighs the benefit to

the Counterdefendant. Such unfair business practices violate Cal. Bus. & Prof. Code § 17200."

Answer at ¶ 96. Also, The Freecycle Network has alleged facts sufficient to substantiate its

underlying claim of fraudulent practice: "Counterdefendant's misuse of the Marks without

permission and its inducement of others to misuse and Infringe the Marks is fraudulent in that it is

likely to deceive the public and cause confusion as to the affiliation, connection, or association

with the counterdefendant and The Freecycle Network, and thus constitutes a violation of Cal.

Bus. & Prof. Code § 17200." Answer at ¶ 97. Furthermore, The Freecycle Network incorporated

its previous allegations in the preceding 92 paragraphs. As is observed, these short and plain

statement provides Counterdefendant fair notice of the specific legal bases for its § 17200 claims

and facts sufficient to substantiate the underlying claim of an illegal, unfair or fraudulent practice.

As such, The Freecycle Network has met its pleading requirements of Conley and this Court.

Thus, Counterdefendant's motion to strike dismiss must be denied.

1

**F.     LEAVE TO AMEND IS FREELY GRANTED**

2       "[A] party may amend the party's pleading only by leave of court or by written consent of

3  the adverse party; and leave ***shall be freely given*** when justice so requires." FED.R.CIV.P. 15(a)

4  (emphasis added).  "Where a pleading such as an affirmative defense is deemed deficient and

5  stricken, the Court should require the non-moving party to submit an amended pleading which

6  includes more specific allegations.  In the absence of prejudice to the opposing party, leave to

7  amend should be freely given." Wyshak v. City Nat'l Bank, 607 F.2d 824, 826-27 (9th Cir. 1979)

8  (*citing* Foman v. Davis, 371 U.S. 178, 182 (1962)); Howey v. United States, 481 F.2d 1187, 1190

9  (9th Cir. 1973).  The Freecycle Network has provided this Court with reasons why the amended

10  answer and counterclaims asserted are sound.  Thus, to the extent necessary, The Freecycle

11  Network respectfully requests the Court to grant it leave to amend its pleadings.

12

13                          **V.     CONCLUSION**

14       Based upon the foregoing arguments, The Freecycle Network respectfully requests that the

15  Court deny Counterdefendant's motions to dismiss and to strike.  In the alternative, should the

16  Court find any merit in Counterdefendant's arguments, The Freecycle Network respectfully

17  requests leave to amend its Amended Answer and Counterclaims.

18

19  DATED:  September 15, 2006                **PERKINS COIE** LLP

20

21                                By ____/s/ Lisa Kobialka_____
                                   Paul J. Andre

22                                 Lisa Kobialka
                                   Esha Bandyopadhyay

23                                 Sean Boyle

24                                 Attorneys for Defendant
                                   The Freecycle Network, Inc.

25

26

27

28