1  MAYER, BROWN, ROWE & MAW LLP
   IAN N. FEINBERG (SBN 88324)
2  ifeinberg@mayerbrownrowe.com
   DENNIS S. CORGILL (SBN 103429)
3  dcorgill@mayerbrownrowe.com
   ERIC B. EVANS (SBN 232476)
4  eevans@mayerbrownrowe.com
   Two Palo Alto Square, Suite 300
5  3000 El Camino Real
   Palo Alto, CA  94306-2112
6  Telephone: (650) 331-2000
   Facsimile:  (650) 331-2060
7
   Attorneys for Plaintiff
8  FREECYCLESUNNYVALE,

9
                  **UNITED STATES DISTRICT COURT**
10
                      **NORTHERN DISTRICT**
11
                      **OAKLAND DIVISION**
12

13 FREECYCLESUNNYVALE,                        Case No. C06-00324 CW
   a California unincorporated association,
14                                            **PLAINTIFF AND
                                              COUNTERDEFENDANT
15                Plaintiff,                   FREECYCLESUNNYVALE'S
                                              CORRECTED NOTICE OF MOTION
16        v.                                  AND MOTION FOR SUMMARY
                                              JUDGMENT, OR IN THE
   THE FREECYCLE NETWORK,                     ALTERNATIVE, SUMMARY
17 an Arizona corporation,                    ADJUDICATION, ON
                                              FREECYCLESUNNYVALE'S FIRST
18                Defendant.                   CLAIM FOR RELIEF AND THE
                                              FREECYCLE NETWORK'S
19                                            COUNTERCLAIMS**

20                                            **[FED. R. CIV. P. 56]**

21
                                             Date:        August 23, 2007
22                                           Time:        2:00 p.m.
                                             Before:      Hon. Claudia Wilken
23                                           Location:    Courtroom 2

24 AND RELATED COUNTERCLAIMS

25

26

27

28

---

CORRECTED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION
                                                        CASE NO. C06-00324 CW

Dockets.Justia.com

TABLE OF CONTENTS

PAGE

I.     INTRODUCTION ........................................................................................................ 1

II.    STATEMENT OF THE ISSUE TO BE DECIDED....................................................... 1

III.   STATEMENT OF THE FACTS ................................................................................... 1

       A.   The Parties ........................................................................................................ 2

       B.   Online Freecycling............................................................................................ 2

       C.   TFN's Early Contribution To The Freecycling Movement ................................... 3

       D.   FreecycleSunnyvale Joins The Freecycling Movement In October 2003 ............ 4

            1.   Ms. Abraham started the freecyclesunnyvale online group before
                 affiliating with TFN ................................................................................. 4

            2.   TFN permitted FreecycleSunnyvale to use TFN's logo with only a
                 request that the logo not be used for commercial purposes ...................... 4

       E.   Until September 2004, Online Freecycling Operated With Little, If Any,
            Guidance Or Oversight From TFN...................................................................... 6

       F.   Starting In September 2004, TFN Mobilized Volunteer Groups, But None
            Of These Groups Monitored Or Supervised Online Freecycling Groups.............. 9

            1.   New Group Approvers checked new groups for administrative
                 criteria, but did not monitor or supervise online freecycling.................. 10

            2.   Group Outreach and Assistance responded to complaints, but did
                 not monitor or supervise online freecycling ........................................... 11

            3.   Interim Moderators stepped in to run a group if the moderators
                 retired, but did not monitor or supervise online freecycling.................... 12

            4.   The Penguin Patrol educated online freecycling groups about
                 TFN's trademark policy and investigated TFN's critics, but did not
                 monitor or supervise online freecycling ................................................. 12

       G.   TFN Does Not Have Possession, Custody, Or Control Of The Files Of Its
            Alleged Licensees ........................................................................................... 13

IV.    LEGAL STANDARD................................................................................................. 13

V.     ARGUMENT ........................................................................................................... 14

       A.   TFN Did Not Establish Quality Standards......................................................... 15

       B.   TFN Did Not Retain Contractual Rights To Inspect Or Supervise .................... 17

       C.   TFN Did Not Engage In Quality Control ........................................................... 18

       D.   TFN Had No Basis To Rely On Licensee Control Of Quality ........................... 19

       E.   TFN's Belated Trademark Enforcement Does Not Revive Any Trademark
            Rights That Were Forfeited Through Naked Licensing ...................................... 20

       F.   TFN Cannot Revive Its Alleged Trademarks Because TFN's Naked
            Licensing Continues......................................................................................... 20

       G.   TFN's Lack Of Enforceable Trademark Rights Requires Summary
            Judgment Or Adjudication On Its Trademark-Related Counterclaims................. 21

VI.    CONCLUSION.......................................................................................................... 22

TABLE OF AUTHORITIES

<u>CASES</u>                                                                                          <u>PAGE</u>

Anderson v. Liberty Lobby,
    477 U.S. 242 (1986)...................................................................................................14

Barcamerica Intern. v. Tyfield Importers, Inc.,
    289 F.3d 589 (9th Cir. 2002) ............................................................................... passim

Brookfield Communications, Inc. v .West Coast Entertainment Corp.,
    174 F.3d 1036 (9th Cir. 1999)......................................................................................21

Celotex Corp. v. Catrett,
    477 U.S. 325 (1986)...................................................................................................14

Cleary v. News Corp.,
    30 F.3d 1255 (9th Cir.1994) ...................................................................................14, 22

Eisenberg v. Insurance Co. of N. America,
    815 F.2d 1285 (9th Cir. 1987) ...................................................................................14

First Interstate Bancorp v. Stenquist,
    1990 WL 300321 (N.D. Cal. July 13, 1990).......................................................... passim

Fuddruckers, Inc. v. Doc's B.R. Others, Inc.,
    826 F.2d 837 (9th Cir.1987) ......................................................................................14

Glow Industrial v. Lopez,
    252 F. Supp. 2d 962 (C.D. Cal. 2002) .........................................................................21

Halo Management, LLC v. Interland, Inc.,
    76 U.S.P.Q. 2d 1199, 2004 WL 1781013 (N.D. Cal. Aug. 10, 2004) ........................17, 18, 20

Lujan v. National Wildlife Federation,
    497 U.S. 871 (1990)...................................................................................................14

Mallard Creek Industries, Inc. v. Morgan,
    56 Cal. App. 4th 426, 65 Cal. Rptr. 2d 461 (1997)......................................................22

Siegel v. Chicken Delight, Inc.,
    448 F.2d 43 (9th Cir. 1971) .......................................................................................15

Transgro, Inc. v. Ajac Transmission Parts Corp.,
    768 F.2d 1001 (9th Cir. 1985) ...................................................................................19

<u>STATUTES</u>

Cal. Bus. & Prof. Code § 17200 ..................................................................................14, 22

FED. R. CIV. P. 34(a) ....................................................................................................20

FED. R.CIV. P. 56...........................................................................................................14

15 U.S.C. § 1055...........................................................................................................15

**TABLE OF AUTHORITIES (cont'd)**

PAGE

15 U.S.C. §§ 1114.................................................................................................21

15 U.S.C. § 1125(a) ........................................................................................14, 21

15 U.S.C. § 1127.................................................................................................15

MISCELLANEOUS

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION §§ 17:6, 18:42 (4th ed. 2007) ............15

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 18:55, at 18-94 (4th ed. 2001) ........16

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 18:57 (4th ed. 2007).......................19

MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION §§ 18:58-59 (4th ed. 2007) ...............18

1    TO DEFENDANT AND COUNTERCLAIMANT THE FREECYCLE NETWORK,

2  INC., AND ITS ATTORNEYS OF RECORD:

3    NOTICE IS HEREBY GIVEN that on August 23, 2007, at 2:00 p.m., or as soon

4  thereafter as the matter may be heard, Plaintiff and Counterdefendant FreecycleSunnyvale shall

5  move this Court for summary judgment, or in the alternative, summary adjudication, on the First

6  Claim for Relief of its First Amended Complaint and summary judgment on all Counterclaims of

7  Defendant and Counterclaimant The Freecycle Network, Inc.

8    This motion respectfully asks this Court to enter summary judgment or adjudication on

9  all trademark based claims and counterclaims on the ground that The Freecycle Network nakedly

10  licensed its alleged trademarks, thereby abandoning any trademark rights it might have had in the

11  word "freecycle," the phrase "The Freecycle Network," or a logo containing a stylized version of

12  "freecycle" and the elements of a guitar and bicycle.

13    Plaintiff and Counterdefendant's motion for summary judgment or adjudication is based

14  on FED.R.CIV.P. 56 and is supported by the following Memorandum of Points and Authorities,

15  the [Proposed] Order, the Declaration of Timothy Oey, the Declaration of Lisanne Abraham, the

16  Declaration of Kenneth A. Hedden, Sr., the Declaration of Miles Dennis Robertson, Jr., the

17  Declaration of Dennis S. Corgill, the file in this matter, any facts or records of which this Court

18  may take judicial notice, and any argument that may be heard by the Court.

19

20

21

22

23

24

25

26

27

28

CORRECTED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION
CASE NO. C06-00324 CW

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

The central issues in this action are whether The Freecycle Network ("TFN") has trademark rights in the word "freecycle," the phrase "The Freecycle Network," and a logo containing a stylized version of "freecycle" and the elements of a guitar and bicycle (collectively "TFN Alleged Marks").  This Court need not reach those issues because TFN abandoned whatever rights TFN had in the TFN Alleged Marks through naked licensing.  When permitting others to use its alleged trademarks, TFN (1) did not establish quality standards for its alleged licensees, (2) did not retain any contractual rights to inspect or supervise its alleged licensees, (3) did not engage in quality control of its alleged licensees' operations, and (4) permitted complete strangers to use its alleged trademarks without having any basis to rely on the quality control efforts of these strangers.

Because TFN's naked licensing abandoned any rights it might have had in its purported trademarks, FreecycleSunnyvale is entitled to summary judgment or adjudication on its First Claim for Relief, which seeks declaratory judgment of non-infringement of TFN's Alleged Marks, and on all TFN's counterclaims.

### II.    STATEMENT OF THE ISSUE TO BE DECIDED

Whether TFN abandoned the TFN Alleged Marks through naked licensing when TFN did not (1) establish quality standards, (2) retain contractual rights to control quality, (3) actually control quality, or (4) reasonably rely on alleged licensees to control quality?

### III.    STATEMENT OF THE FACTS

This dispute arises out of the largely internet-based activity of "freecycling," in which a person with an unwanted item—a "freecycler"—gives the item to a stranger rather than sending the item to a landfill.  For online freecycling, local freecycling organizations maintain online groups, such as those available from Yahoo! Corporation.  Online freecyclers visit a local online group to post messages announcing unwanted items.  When another member of that online group expresses an interest and a transfer is made, the item is "freecycled."  *See* Declaration of Lisanne Abraham at ¶¶ 2-3 ["Abraham Dec."]; Declaration of Timothy Oey ¶¶ 3-5 ["Oey Dec."].

**A.**    **The Parties**

Defendant and Counterclaimant TFN is an Arizona Corporation founded in March 2003. TFN operates not for profit and has only one full-time employee, Deron Beal, TFN's founder and now Executive Director.  TFN coordinates a network of local freecycling groups and maintains a Web site with links to thousands of groups who use the TFN Alleged Marks.[1]  *See* Oey Dec. ¶ 61 & Exh. JJ.  TFN seeks to control the grassroots freecycling movement by filing trademark infringement reports with Yahoo!, which then terminates online groups at TFN's behest.  *See* Declaration of Miles Dennis Robertson, Jr. ¶ 28 ["Robertson Dec."].

Plaintiff and Counterdefendant FreecycleSunnyvale is a California unincorporated association that has operated in Sunnyvale, California, since October 2003.  FreecycleSunnyvale is a local freecycling group that formerly participated in TFN's network and used all of the TFN Alleged Marks.  *See* Abraham Dec. ¶¶ 8, 10-11, 15; Oey Dec. ¶ 12 & Exh. F. FreecycleSunnyvale believes that "freecycle" is a generic term that cannot be protected as a trademark.  FreecycleSunnyvale filed this declaratory relief action after TFN caused Yahoo! to terminate FreecycleSunnyvale's online group.  *See* Oey Dec. ¶ 12.  TFN counterclaimed for trademark infringement and unfair competition.

**B.**    **Online Freecycling**

An online freecycling group is comprised of owners, moderators, and members.  The owners are the ones who register with, and obtain a group service account from, an internet service provider, such as Yahoo! Groups.  The owners control the operation of the group.  The owners select moderators and/or moderate the groups themselves.  Moderators can, but usually do not, review messages that members send to the online group.  Where moderators review and approve messages, a moderator posts the message to the group's home page, which automatically relays the message to the other members.  Members of an online group join a group so that they may send messages to the group and, in turn, read messages that have been posted.  Members do not review messages before those messages are posted.  Typically, the owners and moderators are also members.  *See* Abraham Dec. ¶¶ 2-6; Oey Dec. ¶¶ 7-9.

---

[1]  TFN's Web site is located at www.freecycle.org.

To freecycle online, an individual first finds an online freecycling group by using Google or another internet search engine and searching on the terms "freecycle" and the name of the local community. The individual "joins" the group by registering as a member. Then, the member (a) sends an "offer" message to the online group, (b) the "offer" is posted on the group's home page and relayed to members, (c) one or more members who want the item reply to the "offer," and (d) the member offering the item arranges to transfer the item to one of the members wanting the item. A member can also post a "wanted" message and follow the same process to see if another member has an item that he or she no longer wants. *See* Abraham Dec. ¶ 7; Oey Dec. ¶¶ 6, 13.

## C.      **TFN's Early Contribution To The Freecycling Movement**

TFN was founded in March 2003, when freecycling was truly a decentralized and grassroots movement comprised entirely of volunteers. Although TFN was not the first organization to promote freecycling, TFN did popularize freecycling on the internet. *See* Oey Declaration ¶ 3 & Exh. C. In particular, TFN set up a Web site showing local volunteers how to set up and moderate online groups using Yahoo! Groups, a free service. *See* Declaration of Kenneth A. Hedden, Sr. ¶ 3 ["Hedden Dec."]; Robertson Dec. ¶ 13. TFN's Web site also provides links to local groups. *See* Abraham Dec. ¶ 16; Robertson Dec. ¶ 14.

In its early days, TFN operated without regard to preserving any rights in its now alleged trademarks or, for that matter, to following the obligations imposed upon a trademark licensor. For example, "freecycle" was commonly used as a generic term, not only on TFN's Web site, but also by TFN's founder and now Executive Director, Deron Beal. For example, Mr. Beal referred to members of online groups as "freecyclers" and encouraged others to "Keep on Freecyclin'!" *See* Oey Dec. ¶¶ 74(c) & Exh. VV, 74(e) & Exh. XX. *See also* Hedden Dec. ¶¶ 9, 34; Oey Dec. ¶ 74. *Compare* Amended Complaint ¶ 23 & Exh. 1 (docket # 20 entered Apr. 6, 2006) (copy of home page of TFN's Web site showing generic use of "freecycle") *with* Answer to Amended Complaint ¶ 23 (docket # 46 entered Aug. 8, 2006) (not denying that exhibit is copy of home page of TFN's Web site).

### D.    FreecycleSunnyvale Joins The Freecycling Movement In October 2003

FreecycleSunnyvale was founded in October 2003, when Lisanne Abraham entered into a contract with Yahoo! for a group service account. Ms. Abraham had learned about online freecycling from a friend, Albert Kaufman, who owned and moderated an online freecycling group in Portland, Oregon. In an October 3, 2003, email sent to several of his friends, including Ms. Abraham, Mr. Kaufman explained online freecycling and invited his friends to start online freecycling groups in their local communities. Mr. Kaufman encouraged his friends to copy and use anything from his online group. *See* Abraham Dec. ¶ 9 & Exh. A.

#### 1.    Ms. Abraham started the freecyclesunnyvale online group before affiliating with TFN

In response to Mr. Kaufman's email, Ms. Abraham contacted Yahoo! and started a Yahoo! online group on October 7, 2003. Ms. Abraham entered into a group service account with Yahoo! independently and without the assistance of Mr. Kaufman, TFN, Mr. Beal or, for that matter, anyone else. Ms. Abraham named the online group "freecyclesunnyvale," because Ms. Abraham lives in Sunnyvale, California, where she promotes local freecycling to this day. By creating freecyclesunnyvale, Ms. Abraham was the founding member of FreecycleSunnyvale,[2] a group of volunteers who, over time, have moderated online groups for freecyclers in the local Sunnyvale area. *See* Abraham Dec. ¶¶ 8, 10.

#### 2.    TFN permitted FreecycleSunnyvale to use TFN's logo with only a request that the logo not be used for commercial purposes

Also on October 7, 2003, Ms. Abraham contacted Mr. Kaufman to inquire about getting a logo like the one that she had seen used by Mr. Kaufman's online group. In response, Mr. Kaufman asked Ms. Abraham to contact Mr. Beal so that freecyclesunnyvale could be listed on TFN's Web site. Mr. Kaufman suggested that Ms. Abraham contact Mark Messinger for a

---

[2] "FreecycleSunnyvale," with an uppercase "F" and "S," refers to the Plaintiff and Counterdefendant, a California unincorporated association. By contrast, "freecyclesunnyvale," with a lowercase "f" and "s," refers to the Yahoo! group that was known by that name. FreecycleSunnyvale is comprised of volunteers who moderated the freecyclesunnyvale online group until that group was terminated at TFN's behest. The FreecycleSunnyvale volunteers now own and moderate a Yahoo! Group known as "sunnyvalefree." *See* Abraham Dec. ¶ 8; Oey Dec. ¶¶ 12, 71-72.

1  logo, and Mr. Kaufman also offered to provide the typefont used in the logo.  In the next day or

2  two, Ms. Abraham had a brief telephone conversation with Mr. Beal, marking the first time that

3  the two ever communicated.  *See* Abraham Dec. ¶¶ 12-13.

4          On October 9, 2003, Mr. Beal added freecyclesunnyvale to the list of online freecycling

5  groups on TFN's Web site.  Mr. Beal then sent an email to Ms. Abraham, indicating that

6  freecyclesunnyvale could use TFN's logo, with the only restriction a request not to use the logo

7  for commercial purposes.  Mr. Beal's email stated, in its entirety:

8              Yeah, Sunnyvale!
              You can get the neutral logo from http://www.freeecycle.org , just
9              don't use it for commercial purposes or you [sic] maybe Mark or
              Albert can help you to do your own fancy schmancy logo!
10
              Good luck
11             Deron

12  This is the only written communication between TFN and FreecycleSunnyvale regarding use of

13  TFN's logo.[3]  *See* Abraham Dec. ¶¶ 14 & Exh. C, 16.

14          Following the suggestions of both Mr. Kaufman and Mr. Beal, Ms. Abraham contacted

15  Mr. Messinger regarding a logo.  Mr. Messinger agreed to design a logo for Ms. Abraham.

16  TFN's logo is a stylized depiction of the word "freecycle" containing the elements of a bicycle

17  and a guitar.  Mr. Messinger modified TFN's logo by adding a similarly stylized version of

18  "Sunnyvale":

19
20  
21
22

23  Within a week or so of starting freecyclesunnyvale, Ms. Abraham put the "freecyclesunnyvale"

24  logo on the homepage of freecyclesunnyvale, where it remained until November 21, 2005, when

25

26  _____
    [3]  FreecycleSunnyvale does not concede that this email, or any other communication or course of
27  conduct between TFN and FreecycleSunnyvale constitutes a contract or license.  Rather, this
    motion argues that, even if TFN had trademark rights and entered into licenses, TFN abandoned
28  any trademark rights it might have had through naked licensing.

1  Yahoo! terminated freecyclesunnyvale at TFN's behest.[4]  *See* Abraham Dec. ¶¶ 8, 13-15 & Exh.

2  D; Oey Dec. ¶¶ 12 & Exh. F, 71.

3      When Ms. Abraham started freecyclesunnyvale, she also posted an "etiquette" on the

4  home page of freecyclesunnyvale.  An "etiquette" is a guideline for members of an online group

5  to follow when posting messages to the group.  Ms. Abraham based the etiquette on one posted

6  on either Mr. Kaufman's group for Portland, Oregon, or Mr. Beal's group for Tucson, Arizona.

7  For example, the etiquette uses "Sunnyvale Freecycle Network" as a name for

8  freecyclesunnyvale.  Other than noting that the exchange of pets should be legal, the etiquette for

9  freecyclesunnyvale did not provide any restrictions or guidance as to what kinds of items could

10  be posted for freecycling.  *See* Abraham Dec. ¶ 11.

11      Of importance is what did not happen when FreecycleSunnyvale affiliated its online

12  group with TFN and began using TFN's logo.  There were no contracts.  There were no

13  discussions of any requirements, restrictions, or conditions on the use of the word "freecycle" or

14  the phrase "The Freecycle Network."  At this time, freecycling was a grassroots movement, and

15  neither TFN nor Mr. Beal made any effort to control local groups by asserting trademark rights.

16  *See also* Oey Dec. ¶ 15.

17  **E.  Until September 2004, Online Freecycling Operated With Little, If Any, Guidance Or Oversight From TFN**

18

19      Until September 2004, the online freecycling movement remained a grassroots movement

20  where local groups ran themselves.  As the online freecylcing movement grew, new online

21  groups started with little, if any, assistance from TFN.  Individuals with experience as

22  moderators of online groups started new freecycling groups with no assistance.  For example,

23  when Miles Robertson of Stillwater, Oklahoma, emailed Mr. Beal about starting an online

24  freecycling group, Mr. Beal suggested that he become a member of one or two existing online

25  freecycling groups to see how those groups operated.  Otherwise, Mr. Robertson was on his own.

26  Individuals without experience as moderators of online groups could visit TFN's Web site for

27  ───────────────
[4] TFN subsequently made changes to its logo by adopting a slightly different bicycle and guitar.
*See also* Hedden Dec. ¶ 14; Robertson Dec. ¶ 29.  The freecyclesunnyvale logo depicted in the

28  text contains TFN's logo as it originally appeared in October 2003.

1  instructions on how to obtain a group service account from Yahoo! and how to moderate an

2  online freecycling group.  *See* Hedden Dec. ¶ 3; Robertson Dec. ¶¶ 2-7.

3         Groups were listed on TFN's Web site without any approval process whatsoever.  For

4  example, Kenneth Hedden of Schroon Lake, New York, started seven online freecycling groups

5  in New York.  These groups were up and running before Mr. Hedden provided TFN with the

6  information needed to list his groups on TFN's Web site.  Mr. Hedden's groups were added to

7  TFN's Web site without any approval process, typically within twenty-four hours of his request.

8  *See* Hedden Dec. ¶¶ 7-10; Robertson Dec. ¶ 8.

9         Throughout this process of setting up online freecycling groups, newly formed groups

10 freely borrowed material from each other.  A new group owner would use files from other online

11 groups—such as the "etiquette" file—as a template for their own files.  Groups also used TFN's

12 logo.  *See* Hedden Dec. ¶¶ 5, 7; Robertson Dec. ¶¶ 2, 4.

13        Again, of importance during this time period is what did not happen when new online

14 freecycling groups affiliated with TFN and began using TFN's logo.  There were no contracts.

15 There were no discussions of any requirements, restrictions, or conditions on the use of the word

16 "freecycle," the phrase "The Freecycle Network," or TFN's logo.  Neither TFN nor Mr. Beal

17 made any effort to control local groups by asserting trademark rights.  *See* Hedden Dec. ¶ 10;

18 Robertson Dec. ¶ 8.

19        In October of 2003, shortly after Ms. Abraham started freecyclesunnyvale, Mr. Beal

20 announced that he would start a discussion group for moderators of established online

21 freecycling groups.  At this time, there were approximately nineteen online freecycling groups.

22 The names of these groups—such as "freecyclesunnyvale" or "Seattle Freecycle Network"—

23 typically combined "freecycle" or "Freecycle Network" with the name of the local community.

24 *See* Abraham Dec. ¶¶ 17-18 & Exh. E.  *See also* Hedden Dec. ¶ 4; Oey Dec. ¶¶ 37-38; Robertson

25 Dec. ¶ 4.

26        An online discussion group for moderators started in October 2003 and was named

27 "freecyclemoderatorsquad" or "modsquad" for short.  The modsquad was an online forum for

28 moderators to post questions about the operation of their online groups.  Other moderators could

offer advice or suggestions if they wished to do so.  Moderators were not required to join the modsquad, much less to participate in discussions.  *See* Abraham Dec. ¶ 18; Hedden Dec. ¶ 11; Oey Dec. ¶¶ 16-18; Robertson Dec. ¶ 9.

In January 2004, Mr. Beal asked the moderator members of the modsquad to vote on the issue of whether all online freecycling groups should adopt a rule that posted items should be "free, legal, and appropriate for all ages."  Mr. Beal emphasized that neither he nor TFN would make this decision; the decision was left to the moderator members of the modsquad to make.  The majority of moderator members participating in the poll voted in favor of "free, legal, and appropriate for all ages."  Mr. Beal then announced, on January 11, 2004, that all online freecycling groups "have one true guiding principle:  'Keep it free, legal & appropriate for all ages.'  This goes for the posts and the gifts themselves."  *See* Abraham Dec. ¶¶ 20 & Exh. G, 21 & Exh. H, 22 & Exh. I; Hedden Dec. ¶ 12.

Even though a majority of the moderator members of the modsquad had voted in favor of "free, legal, and appropriate for all ages," not all online groups moved quickly to endorse the new guideline.  For example, the original etiquette for freecyclesunnyvale did not contain the direction for members to keep it "free, legal, and appropriate for all ages."  In June of 2004, that phrase was added to freecyclesunnyvale's etiquette and emailed to all members for the first time on July 1, 2004.  *Compare* Abraham Dec. ¶ 11 (original etiquette) *with* Oey Dec. ¶ 27 & Exh. G (revised etiquette).

Despite the fact that a majority of the member moderators of the modsquad voted in favor of "free, legal, and appropriate for all ages," Mr. Beal and TFN took a decidedly "hands off" approach when it came to interpreting that phrase.  *See* Abraham Dec. ¶¶ 22-23; Hedden Dec. ¶ 13.  In the months that followed the modsquad vote, discussions on the modsquad questioned whether the following items were "appropriate for all ages":  (1) firearms, (2) legal drugs (e.g., over the counter medications), (3) spanking paddles, (4) leather wrist straps, (5) services of an artist, (6) syringes, (7) archery equipment, and (8) pets.  *See* Abraham Dec. ¶¶ 24-25; Oey Dec. ¶¶ 21, 23-26.

At the time of these discussions, neither Mr. Beal nor TFN indicated whether these items were "appropriate for all ages." *See* Abraham Dec. ¶¶ 24-25; Oey Dec. ¶¶ 21, 23-26.  Later, in a modsquad discussion on February 27, 2004, Mr. Beal provided the interpretation that "appropriate for all ages" means "no porn, alcohol, drugs, firearms or any fees, etc." *See* Abraham Dec. ¶ 24 & Exh. K.  Even later, by August 4, 2004, Mr. Beal had added tobacco to the list.  *See* Oey Dec. ¶ 26 & Exh. O.  Other than these prohibited items, local moderators were left on their own to decide what was "free, legal, and appropriate for all ages." *See* Hedden Dec. ¶ 6; Oey Dec. ¶ 20.

With respect to the operations of local online freecycling groups, Mr. Beal and TFN provided even less guidance.  For example, when asked how to deal with spam messages, Mr. Beal suggested that a moderator wait until the group became big enough for spam to become a problem.  Mr. Beal also suggested that local moderators turn to each other with questions.  And, when one new moderator complained that she received no guidance after posting a question on the modsquad, Mr. Beal asked for understanding because people were busy.  *See* Abraham Dec. ¶¶ 26-29; Hedden Dec. ¶¶ 2, 8-9; Oey Dec. ¶ 22.

During this time period, from March 2003 until September 2004, Mr. Beal and TFN did not monitor or supervise online freecycling groups.  The online freecycling movement was growing, and new groups were being added to the list of approved groups on TFN's Web site.  There is no evidence, however, that Mr. Beal or TFN monitored or supervised online groups that used the TFN Alleged Marks.  *See also* Oey Dec. ¶¶ 29-30, 57; Robertson Dec. ¶¶ 7-8.

**F.**    **Starting In September 2004, TFN Mobilized Volunteer Groups, But None Of These Groups Monitored Or Supervised Online Freecycling Groups**

As the online freecycling movement continued to grow, Mr. Beal began organizing groups of volunteers to assist with various administrative tasks on behalf of TFN.  None of these groups undertook the task of monitoring or supervising online freecycling groups that used the TFN Alleged Marks, including those groups that were listed as approved groups on TFN's Web site.

**1.    New Group Approvers checked new groups for administrative criteria, but did not monitor or supervise online freecycling**

In September 2004, Mr. Beal organized a group of volunteers known as New Group Approvers ("NGAs").  If an online freecycling group asked to be listed on TFN's Web site, an NGA would approve the group for listing.  Initially, the approval process focused on whether the group posted certain files, such as an approved etiquette.  Later, the approval process added a requirement that the new group must have the latest version of TFN's logo as well as TFN's trademark and copyright notice.  Even later, the approval process required that groups must list "Ersatzfriend" as a co-owner.  Ersatzfriend was a fictional person with an email address, created by TFN for the stated purpose of providing an alternate owner of a group in case the original owner or the moderators retired or were locked out of their groups.  Some believed that Ersatzfriend was created for TFN to control of local freecycling groups through the privileges of an online group owner.  On September 9, 2005, after the moderator members of the modsquad voted against Ersatzfriend, TFN dropped the requirement.  *See* Hedden Dec. ¶¶ 14, 19-24; Oey Dec. ¶¶ 31-33, 54 & Exh. GG, 66 & Exh. NN; Robertson Dec. ¶¶ 11, 13-14, 16, 18, 32.

There was an uneven practice among NGAs, who received minimal training and supervision.  For example, at times, groups were approved even if those groups did not use TFN's logo or post TFN's trademark and copyright notice.  At other times, groups were allowed to use TFN's logo before they were approved.  Similarly, NGAs did not require new groups to list Ersatzfriend as a co-owner before TFN added that requirement.  And, NGAs did not require new groups to list Ersatzfriend as a co-owner after the requirement was dropped on September 9, 2005.  Even during the time that Ersatzfriend was required, one NGA effectively evaded the Ersatzfriend requirement for his own online freecycling group.  *See* Oey ¶¶ 34, 56, 62 & Exh. KK; Robertson Dec. ¶¶ 12, 17-18, 31.

NGAs did not require new groups to enter into a contract granting TFN rights to inspect or supervise, and NGAs did not inspect or supervise online freecycling groups.  While NGAs did inspect the Web sites of new groups to make sure that certain files were included, NGAs did not follow up to make sure that those files were, in fact, kept or used.  NGAs did not inspect groups

1    that were previously listed on TFN's Web site. NGAs did not inspect new groups after those

2    groups were approved and listed on TFN's Web site. In fact, NGAs were forbidden from

3    visiting online freecycling groups to see if there were any problems. Rather, NGAs interacted

4    minimally with new groups and, in so doing, approved groups whose owners were previously

5    unknown to the NGAs. *See* Hedden Dec. ¶¶ 25-27; Oey Dec. ¶¶ 35-36, 56-57, 60-63; Robertson

6    Dec. ¶¶ 13, 15, 20.

7

           **2.**      **Group Outreach and Assistance responded to complaints, but did not**
                   **monitor or supervise online freecycling**

8

9         Shortly after Mr. Beal organized the NGAs, and in approximately September 2004,

10   Mr. Beal organized a group of volunteers known as Group Outreach and Assistance ("GOAs").

11   If a member of an online freecycling group had a complaint about a particular group, a GOA

12   would handle the complaint. Not all complaints were investigated, however. For example, one

13   GOA often waited until receiving two or three complaints about a particular group before

14   investigating. Even though GOAs were supposed to enforce TFN's "rules," not all rules were

15   enforced. Again, one GOA often made judgment calls about pressing an issue if the owner of an

16   online group protested on the grounds that the group was locally owned and locally controlled.

17   In these situations, the investigation of the complaint was often dropped, especially for

18   seemingly minor violations of TFN's "rules." *See* Robertson Dec. ¶¶ 19, 21, 23-27.

19         GOAs took action, if at all, for flagrant violations of TFN's rules, such as repeated

20   postings of items for sale. GOAs could remove a local group from the list of approved

21   freecycling groups on TFN's Web site. GOAs also could report a group to a senior volunteer

22   who worked in the "back office" for TFN's Web site, who would initiate a request that Yahoo!

23   terminate the group. Once the group no longer existed, TFN would then step in and start a new

24   group with its own volunteers as the owners and moderators. *See* Robertson Dec. ¶¶ 28-30.

25         GOAs did not monitor or supervise online freecycling groups. GOAs only responded to

26   complaints. TFN expressly instructed GOAs not to visit or inspect groups before a complaint

27   was made. In fact, Mr. Beal expressly told GOAs that he did not want to create the appearance

28

1   that TFN was monitoring local groups in any way.  *See* Oey Dec. ¶¶ 58 & Exh. HH, 60-63;

2   Robertson Dec. ¶ 21.

3          **3.    Interim Moderators stepped in to run a group if the moderators
              retired, but did not monitor or supervise online freecycling**

4

5          In January 2005, Mr. Beal announced to the modsquad that he organized a group of

6   volunteers known as the Interim Moderator Team ("I-Mods").  Initially, I-Mods were intended to

7   step in where a group was abandoned by its owners and moderators.  If Ersatzfriend was a co-

8   owner of the abandoned group, TFN appointed an I-Mod to moderate the group.  If Ersatzfriend

9   was not a co-owner, TFN created a new group and asked the members of the abandoned group to

10  join the replacement group moderated by an I-Mod.  When local owners and moderators could

11  be found for the group, the I-Mod's job was done.  *See* Oey Dec. ¶ 59 & Exh. II.

12         In September of 2005, at the same time that TFN dropped the Ersatzfriend requirement,

13  the role of I-Mods was changed so that an I-Mod would own a replacement group for three

14  months and then promote a local moderator to co-owner.  I-Mods now stepped in as owners of

15  any replacement group, including ones created when a group was removed from TFN's Web site

16  or deleted altogether.  This effectively gave TFN control over the local groups for which an

17  I-Mod remained as an owner.  *See* Oey Dec. ¶ 66 & Exh. NN.

18         I-Mods did not monitor or supervise online freecycling groups.  Instead, I-Mods stepped

19  in to moderate replacement groups or groups that lost their owners and moderators.  After

20  September 2005, I-Mods remained as owners of replacement groups.  With respect to all other

21  online freecycling groups, I-Mods played no role at all.  *See* Oey Dec. ¶¶ 59, 60-63.

22         **4.    The Penguin Patrol educated online freecycling groups about TFN's
              trademark policy and investigated TFN's critics, but did not monitor
              or supervise online freecycling**

23

24         In February of 2005, a group of volunteers known as the Penguin Patrol was created

25  primarily to introduce and implement TFN's trademark policy.  The duties included

26  (1) identifying and sending cease and desist notices to "rogue groups," that is, online freecycling

27  groups using the TFN Alleged Marks but that were not on TFN's approved list of groups,

28  (2) promoting TFN's trademark and copyright policy and encouraging local groups to adopt that

12

policy, (3) protecting TFN volunteers from "outing" by "particular baddies," and (4) "[g]eneral sleuthing," that is, identifying and keeping tabs on individuals who were critical of TFN. Because of the sensitive nature of Penguin Patrol activities, TFN requested members not to discuss Penguin Patrol business outside of the group.[5]  *See* Oey Dec. ¶¶ 48-50 & Exh. DD.

The duties of members of the Penguin Patrol did not include monitoring and supervising online freecycling groups. The focus of the Penguin Patrol was on groups that were not listed on TFN's Web site and on individuals who criticized TFN anonymously. The Penguin Patrol had nothing to do with online freecycling groups that were approved and listed on TFN's Web site. *See* Oey Dec. ¶ 50.

### G.    TFN Does Not Have Possession, Custody, Or Control Of The Files Of Its Alleged Licensees

In the course of this action, FreecycleSunnyvale served a discovery request for production of documents that include the files of online freecycling groups that use the TFN Alleged Marks. TFN effectively admitted that this request seeks documents that are relevant to several issues, including the issue of whether TFN engaged in naked licensing. *See* Declaration of Dennis S. Corgill ¶¶ 2-4 ["Corgill Dec."]. Rather, on June 8, 2007, TFN objected, for the first time, that it lacks possession, custody, or control of the files of many of the groups that TFN lists on its Web site as approved groups. Thus, TFN admits that, unless it is a co-owner, moderator, or member of an affiliated online freecycling group, it lacks access to archived group files without the permission of the group's owners or moderators. *See* Corgill Dec. ¶ 5.

## IV.    LEGAL STANDARD

Summary judgment should be granted when there is no genuine issue as to any material fact because, viewing the evidence most favorably to the nonmoving party, the moving party is

---

[5]  TFN was the first to disclose and use the Penguin Patrol in litigation. In a related action in Arizona, TFN seeks damages from Timothy Oey and his wife for trademark infringement and unfair competition. Mr. Oey is the leading member of FreecycleSunnyvale. Mr. Oey also is a former senior TFN volunteer and member of the Penguin Patrol. TFN cited Mr. Oey's role in the Penguin Patrol in support of its argument that the Arizona court had personal jurisdiction over Mr. Oey. *See* Order Granting Defendants' Motion to Stay, at p. 4, *The Freecycle Network, Inc. v. Tim Oey and Jane Doe Oey*, No. CV 06-173-TUC-RCC (D. Ariz. filed Apr. 4, 2006) (Docket # 64 entered June 20, 2006).

1  entitled to judgment as a matter of law.  Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317,

2  322-24 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th Cir. 1987).  "One of

3  the principal purposes of the summary judgment rule is to isolate and dispose of factually

4  unsupported claims or defenses . . . ."  *Celotex Corp.*, 477 U.S. at 323-24.

5  Because a party asserting naked licensing has the ultimate burden of proof at trial, on

6  summary judgment that party must make a prima facie showing that would entitle it to prevail on

7  that issue.  *See Barcamerica Intern. v. Tyfield Importers, Inc.*, 289 F.3d 589, 596 (9th Cir. 2002)

8  (party asserting naked licensing "faces a stringent standard of proof"; quotation omitted).  Once

9  the moving party has satisfied its initial burden, however, the nonmoving party must set forth

10  specific facts controverting the moving party's prima facie case; it "may not rest upon the mere

11  allegations or denials of the adverse party's pleading, but . . . must set forth *specific* facts

12  showing that there is a genuine issue for trial."  Fed.R.Civ.P. 56(e) (emphasis added).  *See also*

13  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby*,

14  477 U.S. 242, 256 (1986).

15  **V.    ARGUMENT**

16  Even drawing all inferences in favor of TFN, FreecycleSunnyvale is entitled to summary

17  judgment or adjudication because there are no material facts which show or infer that TFN

18  maintained quality control over its alleged licensees' products or services.  All of TFN's

19  counterclaims require TFN to prove that it has trademark rights.  Trademark rights are an

20  essential element of TFN's counterclaims under 15 U.S.C. § 1125(a) for trademark infringement

21  and unfair competition.  *See Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th

22  Cir.1987) (to prevail on claim under § 43, plaintiff must show protectable trademark interest).

23  So too, TFN's counterclaims under California Bus. & Prof. Code §§ 17200 *et seq*. require that

24  TFN has trademark rights.  *See Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir.1994)

25  (stating that the Ninth Circuit "has consistently held that state common law claims of unfair

26  competition and actions pursuant to California Business and Professions Code § 17200 are

27  'substantially congruent' to claims made under the Lanham Act").  FreecycleSunnyvale is

28

1  entitled to summary judgment or adjudication because TFN abandoned any trademark rights

2  through naked licensing.

3       It is black letter law that naked licensing forfeits trademark rights: "[W]here a trademark

4  owner engages in naked licensing, without any control over the quality of goods produced by the

5  licensee, such a practice is *inherently deceptive* and constitutes abandonment of any rights to the

6  trademark by the licensor." *Barcamerica Intern.*, 289 F.3d at 598 (emphasis in original;

7  quotation omitted). *See also Siegel v. Chicken Delight, Inc.*, 448 F.2d 43, 51 (9th Cir. 1971)

8  (trademark licensor "owes an affirmative duty to the public to assure that in the hands of [its]

9  licensee the trade-mark continues to represent that which it purports to represent"); *First*

10 *Interstate Bancorp v. Stenquist*, 1990 WL 300321, *3 (N.D. Cal. July 13, 1990) (naked licensing

11 forbidden by 15 U.S.C. §§ 1055, 1127). *See generally* 3 MCCARTHY ON TRADEMARKS AND

12 UNFAIR COMPETITION §§ 17:6, 18:42 (4th ed. 2007).

13      Courts look to three kinds of evidence to determine if an alleged trademark has been

14 abandoned through naked licensing: whether the trademark owner (1) retained contractual rights

15 to control quality, (2) actually controlled quality, or (3) reasonably relied on the licensee to

16 maintain quality. *See Barcamerica Intern.*, 289 F.3d at 596 (courts uphold trademark where

17 licensor familiar with licensee and relies on licensee quality control); *First Interstate*, 1990 WL

18 300321, *4 (first indication of quality control found in license agreement; actual licensor control

19 accepted in absence of contractual right). Here, the facts show, not only a complete absence of

20 quality control, but also an absence of quality standards.

21      **A.    TFN Did Not Establish Quality Standards**

22      For a trademark licensor to comply with its affirmative obligation to control the quality of

23 its licensees' goods or services, *a fortiori* the trademark owner must establish quality standards.

24 By any relevant measure, TFN does not have quality standards.

25      TFN's request that FreecycleSunnyvale not use TFN's logo for commercial purposes has

26 nothing to do with quality control. As the Ninth Circuit explained, quoting Professor McCarthy,

27      It is important to keep in mind that "quality control" does not
        necessarily mean that the licensed goods or services must be of
28      "high" quality, but merely of equal quality, whether that quality is

> high, low or middle. The point is that customers are entitled to assume that the nature and quality of goods and services sold under the mark at all licensed outlets will be consistent and predictable.

*Barcamerica Intern.*, 289 F.3d at 598 (emphasis omitted; quoting MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 18:55, at 18-94 (4th ed. 2001)). The fact that a licensee operates not for profit says nothing about whether that licensee's freecycling services are of a given level of quality.

TFN's guideline that postings and items posted must be "free, legal, and appropriate for all ages" is not a quality control standard. First, the admonition that items must be "free" defines any freecycling service, but says nothing about the quality of a freecycling service, only its existence. Stating that freecycling is free is tantamount to stating that a hamburger stand sells hamburgers. Second, the admonition that items must be "legal" restates a condition that applies to any business. Stating that freecyclers may not exchange illegal items—such as heroin—is not a quality standard regarding the way that freecyclers exchange lawful items or what lawful items can be exchanged. "Legal" freecycling says nothing about the quality of lawful freecycling. Third, the phrase "appropriate for all ages" is not a quality standard because TFN permits and encourages local groups to decide, for themselves, what that phrase means. From syringes to spanking paddles, and from pets to archery equipment, TFN's refusal to define what kinds of items are "appropriate for all ages" precludes it from being a quality standard.

Nor can TFN argue that there is a quality standard in the way that its alleged licensees operate their online freecycling groups. From March 2003 until September 2004, TFN did not have a standard etiquette for online groups. From March 2003 until the spring of 2005, TFN did not have an approved manual for group moderators. At one time, TFN required new groups to list Ersatzfriend as a co-owner, but groups approved before September 2004, were exempt, and even this putative requirement was dropped in September 2005. Throughout, TFN has consistently avoided questions pertaining to the operation of local groups, such as questions about spam, but instead asked local groups to seek guidance from modsquad discussions, which were not always responsive to moderator questions.

1    As an alleged trademark owner with alleged licensees, TFN has an obligation to set

2 quality standards so that freecyclers know that the freecycling services offered by TFN's

3 approved groups are consistent and predictable.  TFN failed to set quality standards for its

4 alleged licensees.  For this reason alone, TFN abandoned its alleged trademarks through naked

5 licensing, and FreecycleSunnyvale is entitled to summary judgment or adjudication.

6    **B.    TFN Did Not Retain Contractual Rights To Inspect Or Supervise**

7    Even if TFN had quality standards—which TFN did not and does not—TFN must control

8 its alleged licensees to assure that those quality standards are met.  Here, courts first look to

9 express license provisions to determine if the trademark licensor has contractual rights to inspect

10 or supervise.  *See First Interstate*, 1990 WL 300321, *4 ("first indication that [licensor] did not

11 exercise sufficient quality control to protect its trademark is the lack of any controls or

12 restrictions in the agreement itself").

13    TFN did not enter into contracts with new online freecycling groups, much less contracts

14 that gave TFN rights to inspect or supervise.  The closest that TFN came to a contractual right to

15 inspect or supervise was the Ersatzfriend requirement, which might have given TFN privileges to

16 inspect and supervise the activities of groups for which Ersatzfriend had sufficient rights.  But,

17 the Ersatzfriend requirement never applied to all of TFN's approved groups, and TFN dropped

18 the requirement after a majority of modsquad members voted against it in September 2005.

19    TFN's so-called license with FreecycleSunnyvale demonstrates that TFN did not retain

20 any contractual rights to inspect or supervise.  The only express provision is an admonition not to

21 "use it [the logo] for commercial purposes."  Even if the prohibition of commercial purposes had

22 something to do with the quality of a licensee's services, TFN's alleged license falls short.  The

23 purported contract does not define the services that FreecycleSunnyvale can offer or how it must

24 conduct its operations.  The so-called contract does not even prevent FreecycleSunnyvale from

25 assigning its right to use any of the TFN Alleged Marks.

26    Indeed, TFN's purported license with FreecycleSunnyvale is far less detailed than license

27 found to be naked in *Halo Management, LLC v. Interland, Inc.*, 76 U.S.P.Q.2d 1199, 2004 WL

28 1781013 (N.D. Cal. Aug. 10, 2004).  There, the license required the licensee, "one, 'to employ

1 reasonable efforts to maintain the positive business value of the HALO mark'; two, to limit mark

2 use to that 'substantially as shown in the pending applications and with services substantially as

3 recited'; and, three, to cooperate with HM to 'mitigate the confusion or likelihood of confusion

4 between the parties' respective marks'." *Id.* at *4.  These contractual restrictions, which are far

5 more detailed than TFN's simple 'no commercial purposes' restriction, were deemed "inherently

6 amorphous" and "wholly undefined." *Id.*  The *Halo Management* court found that license, by its

7 own terms, "a 'naked' one," *id.*, a conclusion that applies with even more force to all of TFN's

8 alleged licenses.

9 ### C.    TFN Did Not Engage In Quality Control

10 "[W]here the courts have excused the absence of a contractual right of control, they have

11 still required that the licensor demonstrate actual control through some sort of inspection or

12 supervision." *First Interstate*, 1990 WL 300321, *4.  *See generally* 3 McCARTHY ON

13 TRADEMARKS AND UNFAIR COMPETITION §§ 18:58-59 (4th ed. 2007).  But, TFN did not inspect

14 or supervise its putative licensees.  Indeed, TFN took no interest whatsoever in the operations of

15 its putative licensees until September 2004—a year and a half after TFN asserts priority to the

16 TFN Alleged Marks—when Mr. Beal formed the NGA and GOA volunteer groups.

17 Even after TFN took an arguable interest in its alleged licensees' operations, TFN did not

18 attempt to monitor or supervise all of the online freecycling groups that it approved and listed on

19 its Web site.  TFN expressly told NGAs not to inspect already approved groups.  GOAs only

20 responded to complaints about particular groups, and TFN expressly told GOAs not to inspect or

21 visit groups unless a complaint was made.  The I-Mod volunteer group, which was formed in

22 January 2005, moderated only replacement groups or groups that lost their owners and

23 moderators.  Throughout, TFN and Mr. Beal did not want to create the appearance that TFN's

24 volunteers were monitoring groups in any way.

25 In February of 2005, when TFN formed the Penguin Patrol, TFN began to take an interest

26 in how its alleged licensees used the TFN Alleged Marks.  But, control of the use of a mark is

27 not quality control of the goods or services distinguished by that mark.  Even if trademark use

28 were relevant to quality control, TFN did not inspect trademark use until long after it asserts

18

1   priority to the TFN Alleged Marks.  TFN simply did not maintain quality control in its actual

2   relationships with its alleged licensees.

3        **D.**    **TFN Had No Basis To Rely On Licensee Control Of Quality**

4        Some courts have permitted a trademark licensor to rely upon the licensee's own quality

5   control, but only if "the licensor is familiar with and relies upon the licensee's own efforts to

6   control quality" based on long-standing and close working relationships.  *Barcamerica Intern.*,

7   289 F.3d at 596-7 (reviewing cases in which prior associations lasted from eight to seventeen

8   years).  *Accord*, *Transgro, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1018 (9th Cir.

9   1985) (court may consider whether licensor had long association with licensee and trusted

10  licensee to maintain quality).  *See generally* 3 MCCARTHY ON TRADEMARKS AND UNFAIR

11  COMPETITION § 18:57 (4th ed. 2007).  Here, however, there is no dispute that TFN was not

12  familiar with its alleged licensees' own quality control.  Rather, TFN approved online

13  freecycling groups that were owned and moderated by total strangers without any quality control

14  history.  FreecycleSunnyvale, for example, received a naked license a few days after Mr. Beal

15  and Ms. Abraham had a single telephone conversation and exchanged a few emails.  TFN can

16  hardly claim that it was "familiar with and relie[d] upon [FreecycleSunnyvale's] own efforts to

17  control quality."  FreecycleSunnyvale was a nascent group that lacked any quality control track

18  record, let alone one with which TFN was familiar.

19       Even after TFN formed the NGA volunteer group, TFN permitted unaffiliated freecycling

20  organizations to start operations that used the TFN Alleged Marks without prior notice to TFN.

21  TFN voiced no objection when those online groups would later affiliate with TFN's network.

22  When individuals would contact TFN for assistance before starting an online freecycling group,

23  TFN regularly allowed those groups to use the TFN Alleged Marks before those groups were

24  approved by an NGA.  Just as Ms. Abraham was a total stranger to TFN when TFN granted

25  FreecycleSunnyvale a naked license, so too were the owners and moderators of numerous other

26  online freecycling groups.  TFN had no reasonable basis to rely on any of these strangers to

27  perform any quality control.

28

E.    **TFN's Belated Trademark Enforcement Does Not Revive Any Trademark Rights That Were Forfeited Through Naked Licensing**

Once a trademark has been abandoned through naked licensing, that trademark cannot be revived through belated efforts to inspect or supervise the quality of licensee operations.  In *Halo Management*, this Court rejected just such an attempt, stating that, "attempts to monitor [the putative licensee's] use of the mark [beginning] more than six months after the license agreement was entered . . . do not change the character of the 'naked' license . . . and they do not restore [the putative licensor's] forfeited state or federal rights."  2004 WL 1781013, *6.  In this case, at a minimum, TFN engaged in naked licensing from TFN's inception in March 2003, until September 2004.  If the six month delay in *Halo Management* was inexcusable, the almost year and a half delay in the instant case cannot revive TFN's forfeited rights.

Even if a year and a half delay were excusable, TFN's tardy efforts were categorically inadequate.  TFN never inspected or supervised all of its alleged licensees.  Rather, TFN's belated efforts initially focused NGA volunteers only upon new online groups that sought to affiliate with TFN.  Literally hundreds of existing groups continued to operate without any efforts by TFN to control quality.  Similarly, none of the GOA, I-Mod, and Penguin Patrol volunteers monitored and supervised quality control over all of the approved freecycling groups that are listed on TFN's Web site.  Thus, TFN's naked licensing continued because volunteers inspected groups only when new groups were approved or a complaint was received about an existing group.  A non-profit organization with only a single full-time employee cannot somehow ensure quality control over the thousands of online groups that are listed on TFN's Web site.

F.    **TFN Cannot Revive Its Alleged Trademarks Because TFN's Naked Licensing Continues**

No precedent supports restoring a putative trademark abandoned through naked licensing, much less one for which naked licensing continues unabated.  TFN has refused to produce the archived files of many of its alleged licensees on the grounds that it lacks the possession, custody or control required by FED.R.CIV.P. 34(a).  TFN cannot argue, on the one hand, that it monitors

20

1  and supervises its alleged licensees' online freecycling activities while simultaneously asserting

2  that it lacks possession, custody or control of the relevant documents.  TFN's conceded lack of a

3  legal right to the electronic files that show how its alleged licensees engage in online freecycling

4  inherently concedes that it lacks the ability to inspect, monitor or supervise its alleged licensees'

5  activities.

6        Even if TFN at some point had trademark rights—which TFN did not—TFN abandoned

7  any alleged rights through naked licensing to FreecycleSunnyvale and countless others.  As an

8  alleged trademark owner, TFN has an obligation to maintain quality standards, but TFN has no

9  quality standards to maintain.  Finally, TFN never maintained contractual rights to inspect and

10 supervise, never actually monitored and supervised its putative licensees, and never could

11 reasonably rely upon strangers to control quality.  Each of these failures, standing alone, would

12 preclude any reasonable jury from finding that TFN has a protectable trademark interest.  Taken

13 together, there can be no legitimate question that they mandate summary judgment or

14 adjudication.  *See Barcamerica*, 289 F.3d at 598 (affirming summary judgment dismissing

15 licensor's trademark claims where licensor abandoned mark through naked licensing); *First*

16 *Interstate*, 1990 WL 300321, *5 (partial summary judgment of trademark-based counterclaims

17 due to naked licensing).

18        **G.    TFN's Lack Of Enforceable Trademark Rights Requires Summary**
             **Judgment Or Adjudication On Its Trademark-Related Counterclaims**
19

20       As set forth above, TFN's counterclaims are not premised on a valid trademark.

21 Accordingly, TFN cannot establish an essential element of its federal trademark infringement

22 and unfair competition counterclaims.  *See* 15 U.S.C. §§ 1114, 1125(a) (requiring valid

23 trademark as element of federal trademark and unfair competition claim).

24       "The standard for Lanham Act unfair competition is the same as that for Lanham Act

25 trademark infringement."  *Glow Indus. v. Lopez*, 252 F. Supp. 2d 962, 975 n.90 (C.D. Cal. 2002).

26 *Accord*, *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036,

27 1046-47 (9th Cir. 1999) (both trademark infringement and unfair competition under the Lanham

28 Act require establishing that the defendant is using a mark confusingly similar to a valid,

1    protectable trademark of the plaintiff).  Similarly, because "state common law claims of unfair

2    competition and actions pursuant to California Business and Professions Code § 17200 are

3    'substantially congruent' to claims made under the Lanham Act," TFN's lack of a protectable

4    trademark interest dooms its state law counterclaims as well.  *Cleary v. News Corp.*, 30 F.3d

5    1255, 1262-63 (9th Cir. 1994).  *Accord*, *Mallard Creek Industries, Inc. v. Morgan*, 56

6    Cal.App.4th 426, 434, 65 Cal.Rptr.2d 461, 466-67 (1997) (analysis for state law trademark

7    infringement is the same as under federal law).  Therefore, FreecycleSunnyvale is entitled to

8    summary judgment or adjudication on all of TFN's trademark-related counterclaims.

9         Because TFN lacks a protectable trademark interest, it cannot prevail on any federal or

10   state counterclaim for trademark infringement or unfair competition.  Accordingly,

11   FreecycleSunnyvale is entitled to summary judgment or adjudication on its request for a

12   declaration of non-infringement.

13   **VI.    <u>CONCLUSION</u>**

14        The undisputed facts conclusively establish that even if TFN ever had any protectable

15   interest in the TFN Alleged Marks, it abandoned those marks by engaging in naked licensing.

16   Even if any precedent supported allowing a trademark owner to regain marks lost to naked

17   licensing, TFN's continued practices, and its inability or refusal to monitor or supervise its

18   putative licensees, would prevent any reasonable jury from finding in its favor at trial.

19        Accordingly, Plaintiff and Counterdefendant FreecycleSunnyvale respectfully requests

20   that this Court grant summary judgment or adjudication on the First Claim for Relief of its First

21   Amended Complaint and summary judgment on all Counterclaims of Defendant and

22   Counterclaimant The Freecycle Network, Inc.

23   Dated:  July 19, 2007                                MAYER, BROWN, ROWE & MAW LLP

24

25

26                                              By:_____/s/___Dennis S. Corgill_____
                                                    Dennis S. Corgill
27                                                  Attorneys for Plaintiff
                                                    FREECYCLESUNNYVALE,

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28