| | |
|---|---|
| 1 | MAYER BROWN LLP |
| | IAN N. FEINBERG (SBN 88324) |
| 2 | ifeinberg@mayerbrownrowe.com |
| | ERIC B. EVANS (SBN 232476) |
| 3 | eevans@mayerbrownrowe.com |
| | Two Palo Alto Square, Suite 300 |
| 4 | 3000 El Camino Real |
| | Palo Alto, CA 94306-2112 |
| 5 | Telephone: (650) 331-2000 |
| | Facsimile: (650) 331-2060 |
| 6 | |
| | Attorneys for Plaintiff |
| 7 | FREECYCLESUNNYVALE, |

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT

## OAKLAND DIVISION

| FREECYCLESUNNYVALE, a California unincorporated association, | Case No. C06-00324 CW |
|---|---|
| Plaintiff, | **PLAINTIFF AND COUNTERDEFENDANT FREECYCLESUNNYVALE'S REPLY RE MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION, ON FREECYCLESUNNYVALE'S FIRST CLAIM FOR RELIEF AND THE FREECYCLE NETWORK'S COUNTERCLAIMS** |
| v. | |
| THE FREECYCLE NETWORK, an Arizona corporation, | |
| Defendant. | |
| | **[FED. R. CIV. P. 56]** |
| | Date: September 27, 2007 |
| | Time: 2:00 p.m. |
| | Before: Hon. Claudia Wilken |
| | Location: Courtroom 2 |
| AND RELATED COUNTERCLAIMS | |

REPLY RE MOTION FOR SUMMARY JUDGMENT OR ADJUDICATION
CASE NO. C06-00324 CW

Dockets.Justia.com

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The Freecycle Network's ("TFN's") opposition to FreecycleSunnyvale's motion for summary judgment ("the Naked Licensing Motion") is a mere distraction. TFN throws out a lot of facts, but none are material to FreecycleSunnyvale's motion. And TFN's numerous misstatements of law and citations to irrelevant facts do not meet TFN's burden of producing evidence sufficient to justify denial of summary judgment.

Before proceeding further, it is well to recall just how naked the October 9, 2003 license by TFN to FreecycleSunnyvale was:

> Yeah, Sunnyvale!
> You can get the neutral logo from http://www.freeecycle.org , just don't use it for commercial purposes or you [sic] maybe Mark or Albert can help you to do your own fancy schmancy logo!
>
> Good luck
> Deron

That's it. No requirement to meet quality standards, no right to monitor, no right to terminate. The only "restriction" in the license, if it even amounts to a "license" and not just blanket permission to use the term "freecycle," is "just don't use it for commercial purposes."

TFN's first error in its Opposition is its refusal to acknowledge the effect of its litigation admission that it could not produce its licensees' quality control documents, because it lacked possession, custody or control of them. Without possession, custody or control of its licensees' quality control documents, TFN necessarily lacked the ability to monitor quality control—or indeed, to determine whether its licensees controlled quality at all. In other words, TFN's admitted lack of any right to obtain its licensees' quality control documents precludes it from asserting that it engaged in quality control.

Second, TFN confuses its belated efforts at bullying and intimidation, begun long after it nakedly licensed the purported marks, with a ***right*** to inspect, supervise, or otherwise control quality. Only rights to inspect, supervise or control quality avoid naked licensing, and those rights are indisputably absent here. TFN neither retained explicit contractual rights to inspect or supervise its alleged licensees, nor enjoyed the close working relationship with its licensees that

1  can stand in for an explicit right.  TFN's nonprofit status does not alter the bar to establishing
2  naked licensing.  And no case located by FreecycleSunnyvale or cited by TFN has excused
3  licensing thousands of strangers without retaining an express contractual right to control quality,
4  as TFN has done.

5      Third, TFN's purported efforts to "recapture" purported marks it nakedly licensed are too
6  little and too late.  TFN never pled or otherwise asserted the purported "right of recapture"
7  before its opposition to the naked licensing motion.  And even if those efforts might have any
8  effect against others, TFN's prior and longstanding naked license to FreecycleSunnyvale estops
9  it from "recapturing" the purported marks against FreecycleSunnyvale.

10     Simply put, there is no dispute that TFN's naked licensing abandoned whatever rights it
11 might once have had in "freecycle" and related terms.  Its attempts to "recapture" these rights are
12 insufficient to recapture any rights TFN might have had and were begun too late to give it any
13 rights against FreecycleSunnyvale and other prior naked licensees.  FreecycleSunnyvale is
14 therefore entitled to summary judgment or adjudication on its First Claim for Relief.

## II.   THE ROBERTSON DECLARATION

16     TFN seeks to strike the Declaration of Miles Dennis Robertson, Jr. in support of
17 FreecycleSunnyvale's motion for summary judgment (July 17, 2007; Document # 70)
18 ("Robertson Decl.") because Mr. Robertson was not disclosed in FreecycleSunnyvale's initial
19 disclosures.

20     As explained more fully in FreecycleSunnyvale's additional opposition to TFN's motion
21 to strike, TFN's arguments elevate form over substance: TFN was perfectly aware of Mr.
22 Robertson's identity and activities long before the case began, and knew he would be a witness
23 at least by the time his declaration was filed by FreecycleSunnyvale *two weeks before discovery*
24 *closed*.  FreecycleSunnyvale even offered, to avoid the expense of responding to TFN's
25 unmeritorious motion to strike, to extend discovery so Mr. Robertson's deposition could be
26 taken.  Instead, TFN chose to game the system by bringing a motion to strike because
27 FreecycleSunnyvale would not also extend discovery for fully disclosed witnesses.
28

TFN cannot manufacture its own prejudice. This Court should not countenance TFN's refusal to take Mr. Robertson's deposition, and recognize that its decision to move to strike rather than to depose, like its decision to file a separate—but now stayed—lawsuit in Tucson against a principal of FreecycleSunnyvale, is just another act of gamesmanship.

### III.     ARGUMENT

#### A.     TFN's Admission that It Lacks Control Over Quality Control Documents Establishes Naked Licensing

In its opening papers, FreecycleSunnyvale argued that TFN's admission that it lacks possession, custody, or control of the files of many of its purported licensees establishes naked licensing. Declaration of Dennis S. Corgill. in support of FreecycleSunnyvale's motion for summary judgment (July 17, 2007, Document # 96) ("Corgill Decl.") ¶¶ 2-4. Specifically, TFN made the following admission in correspondence with FreecycleSunnyvale:

> The Freecycle Network may not have direct access to the archives for these [many freecycling] groups and may not be able to secure access on your behalf, as these groups were created by local moderators who *may retain sole control over access to the groups*.

(Corgill Decl., Ex. A. at 34).

TFN argues that the fact that it lacks "possession, custody or control" of freecycling groups' files "is completely irrelevant to the question of quality controls for a trademark." Opp. at 24:5-8. But TFN misses the point. If TFN does not have possession, custody or control of its freecycling groups' quality control documents, it necessarily lacks the ability to monitor the quality of their services. This is because "possession, custody or control" under Rule 34 "is defined as *the legal right to obtain documents upon demand*." *In re Citric Acid Litigation*, 191 F.3d 1090, 1107 (9th Cir. 1999) (emphasis added). Thus, TFN's representation that it had *no legal right to demand documents*, including quality control documents, from the freecycling groups establishes that TFN lacks the right to control quality.

TFN now wishes to retract this admission, even faulting FreecycleSunnyvale for taking TFN at its word and not making a motion to compel production of documents (freecycling groups' files) that TFN expressly told FreecycleSunnyvale it did not have. Opp. at 24:5-8. But if TFN's statement that it lacked possession, custody or control were true, a motion to compel

1 would have been futile. And if it were false, then TFN has abused the discovery process and
2 should not now be allowed to recant its lie. In either event, this Court should conclusively
3 presume that TFN in fact lacks possession, custody or control of its purported licensees' quality
4 control documents. *See generally* FED. R. CIV. P. 26(g) ("The signature of the attorney" in
5 response to discovery request "constitutes a certification," and false certification mandates an
6 "appropriate sanction"). TFN's admitted inability to demand quality control documents from the
7 freecycling groups establishes lack of quality control, and naked licensing, as a matter of law.

### B. TFN Did Not Have the Right to Control Quality

#### 1. TFN Admits that It Did Not Have an Express Contractual Right to Control Quality

TFN points to no evidence—for there is none—that it retained an express contractual right to control quality. The absence of an express contractual right to control quality is strong evidence of naked licensing: the terms of the license are the best evidence of the parties' rights. *See, e.g., Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.,* 289 F.3d 589, 596 (9th Cir. 2002) (beginning naked licensing analysis with examination of whether there was contractual right to control quality); *First Interstate Bancorp. v. Stenquist,* 1990 WL 300321, at *3 (N.D. Cal. 1990). And most freecycling groups did not have an express license from TFN at all. Naked Licensing Motion at 6-11 (citing Abraham, Hedden, Oey, and Robertson Decls.). Thus, because there is no dispute that TFN retained no contractual quality control right, TFN has abandoned the marks through naked licensing unless it "demonstrate[s] actual control through some sort of inspection or supervision." *First Interstate,* 1990 WL 300321, at *4 (citations omitted).

#### 2. TFN Undisputedly Lacked "the Type of Close Working Relationship Required to Establish Adequate Quality Control in the Absence of a Formal Agreement"

Conceding that it did not have an express right to control quality, TFN seeks to invent an "implied" right to control quality. But its loose and unstructured relations with the vast array of Yahoo! groups that make up much of the freecycling community fall far short of the intense, intimate business relations that give rise to implied rights to control quality.

*Barcamerica*—the leading Ninth Circuit case on naked licensing, extensively cited by both parties—establishes that TFN's purported extra-contractual "quality control" does not even come close to saving it from naked licensing. If it did not retain a contractual right to control quality, a licensor can avoid naked licensing only if it has "the type of close working relationship required to establish adequate quality control in the absence of a formal agreement." 289 F.3d at 597.

This "close working relationship" requires far more than TFN's campaign of bullying and ill-informed persuasion: *Barcamerica* cites the following examples of the "close working relationship" required:

1. "licensor and licensee enjoyed close working relationship for eight years"—*Taco Cabana Int'l, Inc. v. Two Pesos, Inc.,* 932 F.2d 1113, 1121 (5th Cir. 1991).
2. "licensor manufactured 90% of components sold by licensee, licensor informed licensee that if he chose to use his own parts '[licensee] wanted to know about it,' licensor had ten year association with licensee and was familiar with his ability and expertise"—*Transgo, Inc. v. Ajac Transmission Parts Corp.,* 768 F.2d 1001, 1017-18 (9th Cir. 1985);
3. "licensor and licensee were sisters in business together for seventeen years, licensee's business was a continuation of the licensor's and licensee's prior business, licensor visited licensee's store from time to time and was satisfied with the quality of the merchandise offered"—*Taffy Original Design, Inc. v. Taffy's Inc.,* 161 U.S.P.Q. 707, 713 (N.D. Ill. 1966);
4. "licensor engaged in a close working relationship with licensee's employees and licensee agreement provided that license would terminate if certain employees ceased to be affiliated with licensee"—*Arner v. Sharper Image Corp.,* 1995 WL 873730, at *4-5 (C.D. Cal. 1995).

*Barcamerica*, 289 F.3d at 597 (parenthetical descriptions retained from original). Here, as in *Barcamerica*, "[n]o such familiarity or close working relationship ever existed between" TFN and the freecycling groups. Indeed, the nakedness of TFN's licensing—if it even qualifies as licensing, given its utter informality—goes well beyond that found to abandon the trademarks in *Barcamerica* and in the cases it cited. Every cited case that has found that a licensor somehow avoided naked licensing, despite the absence of a contractual right to control quality, has done so *only* when the licensor has an intimate, ongoing relationship with a single licensee or a small

group of licensees. *See, e.g., Barcamerica*, 289 F.3d 597. FreecycleSunnyvale is aware of no authority—and TFN proffered none—excusing TFN's failure to impose express quality control standards on the numerous entities that it purportedly "licensed."

### 3. There Is No "Nonprofit Entity" Exception to the Quality Control Requirement

TFN is entitled to no special treatment because it is a nonprofit entity. TFN places heavy reliance on *Birthright v. Birthright Inc.*, 827 F. Supp. 1114 (D.N.J. 1993), for the proposition that the rules of naked licensing are somehow different for nonprofits. TFN's reliance is misplaced. Nowhere does *Birthright* hold or even suggest that nonprofits have more right to nakedly license than for-profit companies. *Birthright* merely held, consistent with *Barcamerica*, that a particular license was not naked because "the ***relationship*** between plaintiff and Birthright Inc. amounted to an implied license authorizing the latter to use the name." *Birthright*, 827 F.Supp. at 1135 (emphasis added). No such close relationship exists here.

And the allegation in that case was that Birthright had nakedly licensed only two entities (Birthright Inc. and Woodbury Birthright), not the "thousands of local recycling groups" nakedly licensed here. Finally, and most important, the court expressly found that defendants' "use occurred pursuant to licenses….", *id.* at 1139 (conclusion of law 34), and the defendants "knew of and acknowledged the fact of plaintiff Birthright's role and authority in monitoring the name and logo," *id.* at 1128 (facts 87-88). Here, there were no licenses and no acknowledgment of the right to monitor. Moreover, unlike the license to the two entities in *Birthright*, TFN has nakedly licensed ***thousands*** of freecycling groups, most of whom were unknown to TFN when it granted their naked licenses.

### 4. No Case Has Excused the Absence of an Express Right to Control Quality Where the Scale of Naked Licensing Has Even Approached that Found Here.

In every case cited by TFN or located by FreecycleSunnyvale which has excused the absence of an express contractual right to control quality, there was only one, or at most a tiny number, of licensees. But here TFN trumpets the fact that TFN "is a worldwide organization, with thousands of local recycling groups and more than an estimated two million individual

6

members." Opp. at 3:17-19. TFN cites to no case, and FreecycleSunnyvale has located none, excusing a contractual right to control quality in the face of licensing on such a grand scale.

And of course it makes complete sense that widespread licensing without an express quality control right cannot be excused, given that only a close working relationship will excuse the absence of a contractual quality control right. And all of the cases excusing an express quality control right have concerned long pre-existing relationships; here TFN promiscuously offered up its purported marks, with no quality control whatsoever, to hundreds if not thousands of perfect strangers. Since TFN does not and could not argue that it had long pre-existing and intimate relationship with each and every one of the thousands of freecycling groups it licensed, there is no disputed issue of fact that TFN abandoned its purported marks.

### C. TFN's Purported "Recapture" of the Marks by Delayed Quality Control Comes Too Little and Too Late

In its Opposition, TFN argues for the first time that even if it nakedly licensed its marks, it has now recaptured them. This argument suffers from at least two fatal flaws, in addition to the fact that it was neither pleaded nor advanced anywhere by TFN prior to its opposition.

First, TFN offers no argument—much less evidence—regarding *when* the nakedly licensed marks were supposedly recaptured. This is critical, because anyone who used the recaptured mark before its alleged recapture would be entitled to continue using them as a senior user. *First Interstate Bancorp v. Stenquist*, 1990 WL 299251, at *3 (N.D. Cal. 1990) ("A finding of uncontrolled licensing may result in . . . abandonment of all rights in the mark . . . and a break in a chain of continuous use necessary to prove priority of use over another.") (quotation omitted; ellipses in original). TFN admits that it only created its "intellectual property working group" in "early 2004." Opp. at 5:17-19. And any actions by this group cannot disturb rights in the mark that arose before that date—including FreecycleSunnyvale's.

Second, TFN has not recaptured anything. As established above, TFN cannot show the type of close working relationship with each of the "thousands of local recycling groups" that might excuse its failure to impose express contractual quality terms. More important, no court has ever excused contractual quality control where literally thousands of naked licenses were

granted. No amount of remedial action by TFN, short of obtaining express contractual quality control obligations from all freecycling groups —and probably not even that—could reclaim the marks. TFN does not even claim to have obtained an express right to control quality. Moreover, even if it somehow did so, its rights would not be good against groups whose rights to the mark arose before TFN recaptured its rights.

### D. TFN Is Estopped from Asserting Its Abandoned Trademark Rights Against Freecycle Sunnyvale

In any event, TFN's naked license to FreecycleSunnyvale and its failure, for years, to police the quality of FreecycleSunnyvale's services, estops it from asserting any "recaptured" rights against FreecycleSunnyvale: "Failure to exercise such control and supervision for a significant period of time may estop the trademark owner from challenging the use of the mark and business which the licensee has developed during the period of such unsupervised use." *Miller v. Glenn Miller Productions*, 318 F. Supp. 2d 923, 945 (C.D. Cal. 2004).

There is no question that TFN granted FreecycleSunnyvale a naked license to use the Freecycle name and logo on October, 9, 2003:

> Yeah, Sunnyvale!
> You can get the neutral logo from http://www.freeecycle.org , just don't use it for commercial purposes or you [sic] maybe Mark or Albert can help you to do your own fancy schmancy logo!
>
> Good luck
> Deron

TFN's naked license to FreecycleSunnyvale includes no mention of the quality controls TFN later purported to assert. FreecycleSunnyvale acted in reliance on this naked license, using the licensed marks to help its members freecycle items "during the period of . . . unsupervised use" between October 2003 and late 2005. Naked Licensing Motion, 6-13. TFN is therefore estopped from asserting any "rights" in the logo and other marks it licensed to FreecycleSunnyvale. *Miller*, 318 F. Supp. 2d at 945.

## IV. CONCLUSION

Nothing in TFN's opposition is relevant to the few, simple, undisputed, material facts. There is no dispute that TFN allowed FreecycleSunnyvale (and hundreds or thousands of other freecycling groups) to use the purported freecycle marks, and that it did so without any quality control obligations whatsoever. Indeed, TFN did not even retain the right to demand quality control documents. Nor is there any dispute that TFN lacked the type of close working relationship with those numerous freecycling groups that might otherwise substitute for express quality control requirements. Rather, the undisputed facts show that at the time that they received permission to use the marks, most or all of the freecycling groups were total strangers to TFN.

In short, there simply is no dispute that TFN nakedly licensed its purported marks. And even if TFN were able to recapture those nakedly licensed marks from the general public – which it cannot – it would be estopped from preventing FreecycleSunnyvale's continued use of those marks as it had "during the period of [FreecycleSunnyvale's] unsupervised use." *Miller*, 318 F.Supp.2d at 945.

Because TFN has not proffered, and cannot proffer, facts upon which a reasonable jury might find in its favor at trial, FreecycleSunnyvale respectfully requests that this Court grant its motion for summary judgment or adjudication.

Dated: September 13, 2007                    MAYER BROWN LLP


By: _/s/_
    Ian N. Feinberg
    Attorneys for Plaintiff
    FREECYCLESUNNYVALE