# EXHIBIT 3

Dockets.Justia.com

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                       FOR THE DISTRICT OF ARIZONA

8

9    THE FREECYCLE NETWORK, INC., an)        No. CV 06-173-TUC-RCC
     Arizona non-profit organization,        )
10                                            )     **ORDER GRANTING DEFENDANTS'**
             Plaintiff,                       )     **MOTION TO STAY**
11                                            )
     vs.                                      )
12                                            )
                                              )
13   TIM OEY and JANE DOE OEY,                )
                                              )
14           Defendant.                       )
                                              )
15   _____)

16

17        Pending before the Court is Defendants' Motion to Stay or Transfer (Docket # 26).

18
     **I. BACKGROUND**
19

20        The Freecycle Network is a nonprofit Arizona corporation with member groups

21   throughout the world dedicated to encouraging and coordinating the reusing, recycling, and

22   gifting of goods.  Starting with a single community in Tucson, Freecycle has grown to a

23   worldwide organization with thousands of local recycling groups and more than two million

24   members.

25        Freecycle has been using the trademarks FREECYCLE, THE FREECYCLE

26   NETWORK and "The Freecycle Network" logo since May 2003.  On November 22, 2005,

27   Freecycle's trademark and logo were approved for publication on the Principal Register by

28   the United States Patent and Trademark Office ("USPTO").  A notice of publication was

1    issued on December 28, 2005, but that registration is being opposed by a group in California

2    making the trademark's application pending.

3    Defendant Oey was actively involved with Freecycle from early 2005 until late 2005.

4    Part of Defendant's duties included participating in an intellectual property group tasked with

5    developing guidelines for protecting Freecycle's intellectual property.  As part of his duties,

6    Defendant has authored emails which have defended Freecycle's trademark rights.

7    In mid-September 2005 Defendant resigned from his position with Freecycle.

8    Subsequently, Defendant began making public remarks disagreeing with the validity

9    Freecycle's trademark rights.  In support of this, Defendant has emailed remarks disparaging

10   Freecycle's trademark as well as posting comments on the internet disparaging Freecycle's

11   trademark.

12   Before the action in this Court was filed, another very similar action was filed in the

13   Northern District of California.  In that case, FreecycleSunnyvale as Plaintiff filed a suit

14   against The Freecycle Network alleging that there was no copyright, logo or trademark

15   associated with The Freecycle Network.  It should be noted that Defendant Tim Oey is a

16   principal of Freecycle Sunnyvale.  The Freecycle Network has filed an Answer in that case

17   and is actively defending its interest.

18   The Freecycle Network subsequently filed this action against Defendant claiming that

19   he had made remarks that infringed upon their trademark.  In accordance with this, Plaintiff

20   moved for a temporary restraining order and a preliminary injunction which were both

21   granted by this Court.

22   Now, pending before the Court is Defendants' Motion to Stay or Transfer where they

23   ask the Court for a change of venue pursuant to 28 U.S.C. § 1404 or in the alternative to stay

24   the case for reasons of judicial economy and to maintain consistency between the Courts.

25

26

27

28   **II. DISCUSSION**

- 2 -

1    Ordinarily, a Plaintiff's choice of forum should be accorded "great weight." *Lou v.*

2   *Belzberg,* 834 F.2d 730, 739 (9th Cir. 1987).  However, "district courts have applied a 'general

3   rule' that, in actions based on a claim of intellectual property infringement, a plaintiff's choice

4   of forum is accorded little deference where the central facts of the lawsuit occur outside the

5   plaintiff's chosen forum." *Sorensen v. DaimlerChrysler AG*, 2003 U.S. Dist. LEXIS 6294,

6   11-12 (D.Cal. 2003).

7    Additionally, in intellectual property cases "the preferred forum is that which is the

8   center of the accused activity," i.e., the forum where the defendant is alleged to have

9   developed, tested, researched, produced, marketed, and made sales decisions concerning the

10  accused product. *S.C. Johnson & Son, Inc. v. Gillette Co.*, 571 F.Supp. 1185, 1187-88 (N.D.

11  Ill. 1983) (holding that preferred forum was district in which defendant conducted "all

12  development, testing, research, and production" and made "virtually all marketing and sales

13  decisions" concerning accused product); *see also Saint-Gobain Calmar, Inc. v. Nat'l

14  Products Corp.*, 230 F.Supp.2d 655, 660 (E.D.Pa. 2002) (holding that plaintiff's choice of

15  forum entitled to less deference where "center of gravity of the alleged infringement"

16  occurred in another forum where defendant assembled and shipped accused device).

17   Defendants' arguments are listed below.

18  A.  The Court Has Personal Jurisdiction Over Tim Oey

19   Defendants claim that the case should be transferred because the Court does not

20  possess personal jurisdiction over Tim Oey.

21    In cases, regarding the internet, a person must be found to have purposely availed

22  himself to the forum state and "purposeful availment exists if Defendants can be shown to

23  have transacted business with Arizona consumers over the Internet [or] on Defendants'

24  advertisements in web sites accessible to Arizona consumers." *Park Inns Int'l. v. Pacific

25  Plaza Hotels*, 5 F.Supp.2d 762, 763-64 (D.Ariz. 1998).  Defendants claim that the Complaint

26  does not allege anything which would entail that the Court has personal jurisdiction over

27  Oey.  Defendants argue that the Complaint merely says that Oey sat at his computer in

28  Sunnyvale, California and sent emails to online groups provided by Yahoo!.

1    Defendants argue that courts have found that individuals, like Oey, who simply place

2    information on the Internet do not subject themselves to jurisdiction in each state into which

3    the electronic signal is transmitted and received. *ALS Scan, Inc. v. Digital Serv. Consultants,*

4    *Inc.*, 293 F.3d 707, 715 (4th Cir. 2002).  Defendants argue that this is exactly what has

5    happened in this case and as a result, there is no personal jurisdiction over the Defendant.

6    The question turns on whether Defendant Oey "purposefully availed" himself of this

7    forum.  Purposeful availment means that Defendant has "performed some type of affirmative

8    conduct which allows or promotes the transaction of business within the forum state." *Doe*

9    *v. Unocal*, Inc., 248 F.3d 915, 924 (9th Cir. 2001).

10    It is indisputable that Defendant was intimately involved in numerous policy and

11    strategy decisions of The Freecycle Network.  He acted as the head of the New Website

12    Planning Team, the head of Freecycle Next (a group of all local member moderators), one

13    of the leaders of the Freecycle Modsquad (which was the main worldwide moderator group),

14    an active member of the Penguin Patrol (an international planning group tasked with

15    developing guidelines and policies for the protection of The Freecycle Network's intellectual

16    property), and he was largely responsible for the implementation, drafting and execution of

17    The Freecycle Network's Trademark and Copyright Policy. The combination of all of these

18    activities provides a strong argument in Plaintiff's favor that in fact, Defendant Oey has

19    engaged in enough conduct with the Arizona-based non-profit organization to warrant

20    personal jurisdiction over him in this Court.

21

22    B.  The Action is Appropriate in This Forum

23    Section 28 U.S.C. § 1338(a) gives District Courts original jurisdiction over trademark

24    cases.  A transfer is proper, however, when the transferee Court is able to exercise personal

25    jurisdiction over the parties. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985).

26    Defendants are residents of the Northern District of California and contend that Plaintiff has

27    submitted to jurisdiction in the California court by filing a counterclaim in that suit.

28

- 4 -

1    However, as demonstrated, the Court does in fact have personal jurisdiction over

2  Defendants thus negating this argument.

3

4  C.  The Statutory Criteria of 28 U.S.C. § 1404(a) and the Majority of the *Jones* Factors
   Establish That This Case Is Suitable for Adjudication in Arizona; However Due to the

5  Interrelated Nature of the Two Cases the Question of Staying this Case Must Be Examined

6

7    Defendants contend that the criteria of 28 U.S.C. § 1404(a) and the *Jones* factors

   establish that the case should be transferred to the federal court in California.  Section
8
   1404(a) allows a transfer for the "convenience" of the parties or "in the interests of justice."
9
   28 U.S.C. § 1404(a).
10
     A case may be transferred where the criteria set forth in 28 U.S.C. § 1404(a) for
11
   transfer of venue, i.e., the convenience of the parties; the convenience of witnesses; and the
12
   interest of justice, are met.  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct.
13
   2239, 2243, 101 L.Ed.2d 22, 31 (1988).  However, the Ninth Circuit has added eight
14
   additional factors that may be considered by the district court when deciding whether to
15
   transfer:
16

17
     1.  the location where the relevant agreements were negotiated and executed;
18
     2.  the state that is most familiar with the governing law;
19
     3.  the plaintiff's choice of forum;
20
     4.  the respective parties' contacts with the forum;
21
     5.  the contacts relating to the plaintiff's cause of action in the chosen forum;
22
     6.  the differences in the costs of litigation in the two forums;
23
     7.  the availability of compulsory process to compel attendance of unwilling non-
24
   party witnesses, and;
25
     8.  the ease of access to sources of proof.
26

27
   *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 497 (9th Cir. 2000).
28

- 5 -

1    Defendants argue that the Northern District of California has already exercised
2    jurisdiction over the trademark at issue and that The Freecycle Network has already filed its
3    Answer and Counterclaims in that court.  Defendants further argue that the burden of rulings
4    from two different courts on this matter could produce inconsistent outcomes on the two
5    cases.
6    Defendants also claim that both parties' contacts with the forum favor California
7    because of Tim Oey's residency in that state and The Freecylce's Network appearance before
8    the Northern District of California; the differences in the costs of litigation between the two
9    forums, the availability of compulsory process to compel attendance of unwilling non-party
10    witnesses and the ease of access to sources of proof favor California  because of the same
11    reasons.
12    Finally, Defendants argue that the interests of justice and the reduction in costs is best
13    served by a transfer to California.  The pendency of a related case in the proposed transferee
14    forum is a powerful reason to grant a motion for a change of venue. *Supco Automotive Parts,*
15    *Inc. v. Triangle Auto Spring Co.*, 538 F. Supp. 1187, 1192 (E.D.Pa. 1982).  In addition,
16    judicial economy is served by having two actions in the same district even if the actions are
17    not consolidated.  *Fairfax Dental (Ireland), Ltd. v. S.J. Filhol, Ltd.*, 645 F.Supp. 89, 91
18    (E.D.N.Y. 1986).
19    In this case, The Freecycle Network, its founder and all of its board members as well
20    as the majority of its business records are located in Tucson.  The *Jones* factors that are
21    relevant to this case, plaintiff's choice of forum, the respective parties' contact with the forum,
22    the contacts relating to the plaintiff's cause of action, the difference in costs in litigating
23    between the two forums and the ease of access to information all fall in Arizona's favor.
24    However, what The Freecycle Network has not satisfactorily addressed is the
25    relevance of the California case to this one.  The Freecycle Network contends that this case
26    has involves different parties, facts and issues.  The issue of different parties is somewhat
27    disingenuous as The Freecycle Network is a party in both actions and Defendant Tom Oey
28

- 6 -

1    is a personal defendant in this case and serves as a principal of the FreecycleSunnyvale

2    Network.

3        The California case involves a determination on whether The Freecycle Network's

4    trademarks have been infringed or whether those trademarks are generic.  Plaintiff contends

5    that whether "Mr. Oey" has committed defamation, trademark disparagement, injurious

6    falsehood or intentional interference with business relations" has no effect on the California's

7    case.  However, what Plaintiffs do not mention is that if the California court determines that

8    The Freecycle Network does not have any trademark or logo rights then this case is moot.

9    In order to resolve both cases, the courts must first determine whether The Freecycle

10   Network has any sort of protected intellectual property right and there falls the problem for

11   Plaintiff in this case.  This fact makes a strong argument for transferring the case to

12   California.

13

14   D.  The "First to File" Rule

15

16       The final argument that Defendants advance as to whether to transfer this case is the

17   "first to file" rule.  The "first to file" rule provides that when lawsuits involving the same

18   parties and issues are pending in two state courts, the first action should be allowed to

19   proceed to judgment.  *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir.

20   1991).  District courts in the Ninth Circuit recognize that "courts generally do not require

21   identical issues or parties so long as the actions involve closely related questions or common

22   subject matter."  *Centocor, Inc., et al. v. Medimmune, Inc.*, 2002 U.S. Dist. LEXIS 21109,

23   3 (N.D.Cal. 2002).

24       Although application of the "first to file" rule is subject to the sound discretion of the

25   court, "The party filing the second action must demonstrate the existence of special

26   circumstances to overcome the strong presumption of the first-filed action."  *Id.*

27       Plaintiff simply argues that the cases are not related and therefore the "first to file"

28   rule should not apply.

- 7 -

1    Because the Court will stay this case, this issue is moot.

2

3    E.  The Case Should be Stayed

4

5    Defendants finally contend that many of the factors mentioned to transfer the case are

6    applicable to stay the case in the alternative.  The accused activities are both in this case and

7    the suit filed in California.  Moreover, according to Defendants, judicial economy in terms

8    of cots and duplicated effort will be best served if issues of infringement and validity are

9    determined in one jurisdiction.   Plaintiffs, of course, do not believe that staying the case

10   should be done because in their view, the cases are not similar enough to warrant this option.

11   Probably the most important consideration in deciding on whether to stay the case is

12   the fact that in both suits, respective of the specific issues, the courts must consider whether

13   The Freecycle Network holds legal trademark and copyright rights to the term "freecycle"

14   and its logo.  In each case, this issue must first be determined and then the respective case

15   can proceed.  In the California suit, once that is resolved then the court can decide whether

16   FreecycleSunnyvale is entitled to use the term "freecycle."  Likewise, in the suit before this

17   Court, only once the issue of whether or not The Freecycle Network has trademark rights

18   worthy of being protected can the Court decide whether Defendant Oey engaged in tortious

19   conduct to the detriment of The Freecycle Network.

20   To avoid the distinct possibility that one court could find that The Freecycle Network

21   does in fact have trademark rights protectable by the law while the other does not, a stay

22   seems appropriate in this case.  Because the California suit was filed before this suit and

23   using the principles involved under the "first to file" rule this case is stayed pending the

24   resolution of the California case.

25

26   Accordingly, IT IS HEREBY ORDERED THAT this case is STAYED pending the

27   resolution of the case of FreecycleSunnyvale v. The Freecycle Network in the Northern

28

1   District of California.   Defendants' Motion to Stay or Transfer (Docket # 26) is thus
2   GRANTED IN PART and DENIED IN PART.

3

4           DATED this 20th day of June, 2006.

5

6

7

8

9

10

11

12

13   _____
14                  Raner C. Collins
                United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28