1            UNITED STATES DISTRICT COURT

2           NORTHERN DISTRICT OF CALIFORNIA

3               SAN JOSE DIVISION

4

5

   FREECYCLESUNNYVALE,          )  C-06-00324 CW
6                               )
                PLAINTIFF,      )  SAN JOSE, CALIFORNIA
7                               )
           VS.                  )  SEPTEMBER 27, 2007
8                               )
   FREECYCLE NETWORK,           )  PAGES 1-47
9                               )
                DEFENDANT.      )
10  _____)

11

12           TRANSCRIPT OF PROCEEDINGS
       BEFORE THE HONORABLE CLAUDIA WILKEN
13          UNITED STATES DISTRICT JUDGE

14

15  A P P E A R A N C E S:

16  FOR THE PLAINTIFF:  MAYER BROWN
                        BY:  IAN N. FEINBERG AND
17                           ERIC BUTLER EVANS
                        TWO PALO ALTO SQUARE, SUITE 300
18                      PALO ALTO, CALIFORNIA  94306

19  FOR THE DEFENDANT:  PERKINS, COIE
                        BY:  LISA KOBIALKA
20                      101 JEFFERSON DRIVE
                        MENLO PARK, CALIFORNIA  94025

21
                        GIGI C. HOANG
22                      4 EMBARCADERO SQUARE, SUITE 2400
                        SAN FRANCISCO, CALIFORNIA  94111

23

24  OFFICIAL COURT REPORTER: LEE-ANNE SHORTRIDGE, CSR, CRR
                             CERTIFICATE NUMBER 9595

25

                                                         1

```
 1    SAN JOSE, CALIFORNIA          SEPTEMBER 27, 2007
 2                     P R O C E E D I N G S
 3                     (WHEREUPON, COURT CONVENED AND THE
 4    FOLLOWING PROCEEDINGS WERE HELD:)
 5                     THE CLERK:  CALLING THE MATTER OF
 6    FREECYCLESUNNYVALE VERSUS FREECYCLE NETWORK, CIVIL
 7    ACTION NUMBER C-06-0324.
 8                     COUNSEL, PLEASE COME FORWARD AND STATE
 9    YOUR APPEARANCES FOR THE RECORD.
10                     MR. FEINBERG:  IAN FEINBERG WITH MAYER
11    BROWN FOR PLAINTIFF, FREECYCLESUNNYVALE.
12                     MS. KOBIALKA:  GOOD AFTERNOON, YOUR
13    HONOR.  LISA KOBIALKA OF PERKINS, COIE ON BEHALF OF
14    FREECYCLE NETWORK.
15                     MS. HOANG:  GIGI HOANG, PERKINS, COIE ON
16    BEHALF OF THE DEFENDANT, FREECYCLE NETWORK.
17                     MR. EVANS:  ERIC EVANS, MAYER BROWN FOR
18    FREECYCLESUNNYVALE.
19                     THE COURT:  ALL RIGHT.  SO THIS IS ON FOR
20    PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND
21    DEFENDANT'S MOTION TO STRIKE.
22                     IS SOMEONE ON THE TELEPHONE?
23                     THE CLERK:  NO.
24                     THE COURT:  WHAT'S THAT WEIRD NOISE?
25                     THE CLERK:  IT'S COMING FROM THE -- I
```

14:15:47   1    DON'T KNOW WHAT'S CAUSING IT.

14:15:48   2         THE COURT:  IT SOUNDS LIKE SOMEBODY IS ON

14:15:50   3    THE PHONE.

14:15:51   4         THE CLERK:  I DON'T KNOW.

14:15:52   5         THE COURT:  OH, WELL.

14:15:55   6         SO JUST OUT OF CURIOSITY, MAYBE I'VE BEEN

14:15:58   7    TOLD THIS BEFORE, BUT WHAT EXACTLY IS IT THAT

14:16:01   8    FREECYCLESUNNYVALE DID TO OFFEND THE FREECYCLE

14:16:04   9    NETWORK AND GET ITSELF BOOTED OFF THE YAHOO GROUPS?

14:16:08   10    JUST OUT OF CURIOSITY.  IT DOESN'T HAVE ANYTHING TO

14:16:11   11    DO WITH THE MOTION.

14:16:11   12         MS. KOBIALKA:  SO THE MEMBERS OF

14:16:13   13    FREECYCLESUNNYVALE DECIDED THAT THEY DIDN'T WANT TO

14:16:15   14    COMPLY WITH VARIOUS RULES AND REGULATIONS --

14:16:18   15         THE COURT:  SUCH AS WHAT?

14:16:19   16         MS. KOBIALKA:  -- THAT THE FREECYCLE

14:16:20   17    NETWORK HAD, WHICH INCLUDED PROPER USAGE OF ITS

14:16:23   18    TRADEMARKS.

14:16:24   19         ALSO, THERE WERE A NUMBER OF VARIOUS

14:16:26   20    GROUPS THAT THE MEMBERS WERE INVOLVED IN, AND THEY

14:16:30   21    BASICALLY JUST DECIDED THEY DIDN'T LIKE THE

14:16:32   22    DIRECTION THE FREECYCLE NETWORK WAS GOING, TOOK A

14:16:35   23    NUMBER OF ACTIONS, INCLUDING OPPOSED -- I BELIEVE

14:16:37   24    THEY OPPOSED A TRADEMARK APPLICATION THAT WE HAD

14:16:40   25    THAT WAS ABOUT TO BE PUBLISHED FOR REGISTRATION.

14:16:43 1      THEY MADE A NUMBER OF STATEMENTS IN

14:16:47 2  PUBLICATIONS STATING THAT YOU SHOULD USE FREECYCLE

14:16:50 3  AS A GENERIC TERM.  THERE WAS A NUMBER OF

14:16:53 4  ACTIVITIES THAT WENT ON.

14:16:54 5      THE COURT:  OKAY.  WELL, SO FAR I'VE

14:16:55 6  HEARD TWO:  YOU THINK THEY OPPOSED YOUR TRADEMARK

14:16:59 7  APPLICATION; AND YOU THINK THEY SPOKE OUT ABOUT

14:17:01 8  THEIR VIEW THAT FREECYCLE SHOULD BE GENERIC.

14:17:03 9      MS. KOBIALKA:  NO.  ACTUALLY IT WASN'T

14:17:05 10  JUST THAT THEY SPOKE OUT ABOUT THEIR VIEW.

14:17:07 11      THEY ACTUALLY WENT OUT AND TOLD

14:17:09 12  INDIVIDUALS THAT IT IS A GENERIC TERM, THIS IS HOW

14:17:12 13  YOU MAKE IT GENERIC, GO OUT AND DO X, Y, AND Z TO

14:17:16 14  ENSURE THAT EVERYBODY CAN USE FREECYCLE AS A

14:17:18 15  GENERIC TERM.  THERE'S QUITE A BIT OF DOCUMENTATION

14:17:21 16  ON IT.

14:17:21 17      AND THERE'S ALSO ANOTHER CASE THAT'S

14:17:23 18  PENDING IN ARIZONA AS IT RELATES TO A SPECIFIC

14:17:26 19  INDIVIDUAL, TIM OEY, WHO APPARENTLY IS ALSO A

14:17:28 20  CO-OWNER OF FREECYCLESUNNYVALE.

14:17:30 21      AND IN THAT PARTICULAR INSTANCE, THERE

14:17:32 22  WAS ACTUALLY AN INJUNCTION THAT WAS ISSUED IN THE

14:17:35 23  ARIZONA COURT WHICH HAS SINCE BEEN REMANDED BY THE

14:17:38 24  NINTH CIRCUIT.

14:17:38 25      BUT THERE WAS QUITE A FEW THINGS THAT

```
14:17:40   1    WENT ON, INCLUDING --

14:17:41   2             THE COURT:  WELL, I'M INTERESTED IN WHAT

14:17:43   3    THEY WERE.  I'VE HEARD TWO.  ARE THERE ANY MORE?

14:17:46   4             MS. KOBIALKA:  SO, FOR EXAMPLE, MR. OEY

14:17:48   5    ACTUALLY DRAFTED OUR TRADEMARK POLICY.

14:17:51   6             HE THEN TURNED AROUND AND TOLD, IN

14:17:52   7    VARIOUS E-MAIL POSTINGS AND ON POSTER BOARDS, HOW

14:17:56   8    TO USE THE MARK IMPROPERLY, KNOWING FULL WELL THAT

14:17:59   9    WAS A COMPLETE VIOLATION --

14:18:00  10             THE COURT:  YOU SAID THAT ALREADY.

14:18:01  11    THAT'S THING NUMBER TWO.

14:18:03  12             THING NUMBER ONE WAS OPPOSING THE

14:18:05  13    TRADEMARK APPLICATION.

14:18:05  14             THING NUMBER TWO WAS KEEPING OUT IN

14:18:06  15    VARIOUS WAYS, OR ENCOURAGING OTHERS TO DO THIS OR

14:18:07  16    THAT WITH RESPECT TO THE GENERICNESS OF THE TERM.

14:18:11  17             IS THERE ANYTHING ELSE?  DID THEY POST

14:18:13  18    PETS?  DID THEY POST ILLEGAL DRUGS?  DID THEY FAIL

14:18:18  19    TO COMPLY WITH THE PENGUIN PATROL'S DIRECTIVES?

14:18:22  20    DID THEY DO ANYTHING OTHER THAN THOSE TWO THINGS

14:18:25  21    THAT YOU'VE MENTIONED?

14:18:25  22             MS. KOBIALKA:  THERE -- I'M GOING TO HAVE

14:18:28  23    TO GO BACK AND THINK ABOUT IT, BUT I BELIEVE THERE

14:18:30  24    WERE ACTUALLY A NUMBER OF DIFFERENT THINGS THAT

14:18:32  25    THEY HAD DONE WHICH VIOLATED THE --
```

```
14:18:35   1            THE COURT:  BUT YOU CAN'T THINK OF ANY OF
14:18:37   2    THEM?
14:18:37   3            MS. KOBIALKA:  I'D HAVE TO LOOK QUICKLY
14:18:38   4    BACK AT WHAT I HAVE, BUT I'M RECALLING SPECIFICALLY
14:18:41   5    IN CONNECTION WITH MR. OEY.
14:18:43   6            I ALSO BELIEVE THAT THE MEMBERS DECIDED
14:18:45   7    THEY DIDN'T WANT TO BE PART OF THE FREECYCLE
14:18:47   8    NETWORK ANY LONGER AS WELL, BECAUSE --
14:18:48   9            THE COURT:  RIGHT.  BUT YOU KICKED THEM
14:18:50  10    OFF YAHOO GROUPS, SO MY QUESTION IS, WHY DID YOU
14:18:54  11    KICK THEM OFF OF YAHOO GROUPS?
14:18:55  12            MS. KOBIALKA:  BECAUSE THEY WERE USING
14:18:56  13    THE TRADEMARK.  THEY WERE USING FREECYCLE -- THEY
14:18:58  14    CONTINUED TO USE FREECYCLE EVEN THOUGH THEY WERE NO
14:19:01  15    LONGER AFFILIATED WITH FREECYCLE NETWORK, WHICH WAS
14:19:04  16    THE --
14:19:05  17            THE COURT:  IN WHAT SENSE WERE THEY NO
14:19:07  18    LONGER AFFILIATED?
14:19:08  19            MS. KOBIALKA:  THEY DECIDED THAT THEY
14:19:09  20    WERE GOING TO BE THEIR OWN GROUP HAVING THEIR OWN
14:19:12  21    SET OF RULES.
14:19:13  22            THEY WERE GOING TO DO GIFTING AND
14:19:14  23    RECYCLING OVER THE INTERNET SEPARATE AND APART FROM
14:19:18  24    THE FREECYCLE NETWORK.
14:19:19  25            THEY WERE NO LONGER GOING TO BE AN
```

1  AFFILIATED MEMBER OF THE FREECYCLE NETWORK ITSELF.

2          THE COURT:  HOW DID THEY COMMUNICATE

3  THAT?

4          MS. KOBIALKA:  I BELIEVE THERE'S A NUMBER

5  OF DIFFERENT MEMBERS OF THE FREECYCLESUNNYVALE -- I

6  THINK THERE WERE TWO INDIVIDUALS THAT INFORMED THE

7  FREECYCLE NETWORK THEY NO LONGER WANTED TO BE

8  AFFILIATED, AND ONE INDIVIDUAL WAS ASKED TO NO

9  LONGER -- TO STEP DOWN FROM THE VARIOUS POSITIONS.

10          THE COURT:  SO, WHAT, THEY DIDN'T WANT TO

11  BE LISTED ON FREECYCLE.ORG ANYMORE?  IS THAT WHAT

12  HAPPENED?

13          MS. KOBIALKA:  I THINK IN PART, YES.

14  THEY DIDN'T WANT TO BE LISTED.  THEY DIDN'T WANT TO

15  BE AFFILIATED IN ANY WAY WITH THE FREECYCLE

16  NETWORK.

17          THEY DIDN'T AGREE WITH THE FACT THAT THEY

18  WERE RECEIVING FUNDING FROM WASTE MANAGEMENT.  IT

19  DIDN'T LIKE THE DIRECTION THEY WERE GOING.  THEY

20  DIDN'T LIKE SOME OF THE RULES AND REGULATIONS THAT

21  WERE BEING PUT IN PLACE.  THEY THOUGHT THEY WERE

22  TOO STALINISTIC.

23          AND THEY CALLED MR. BEAL, WHO WAS THE

24  FOUNDER OF THE FREECYCLE NETWORK, I UNDERSTAND

25  QUITE A FEW NAMES AS A RESULT, WHICH WAS JUST

BASICALLY ANTITHETICAL TO THE OVERALL IDEA AND
POINT BEHIND THE FREECYCLE NETWORK, WHICH IS TO
HAVE PEOPLE WORK TOGETHER AS A COMMUNITY TO REDUCE
WASTE.

        THE COURT:  OKAY.

        MR. FEINBERG:  CAN I RESPOND QUICKLY TO
SOMETHING?

        THE COURT:  OH, NO.  I'M SURE IT'S
DISPUTED.  I WAS JUST CURIOUS.

        MR. FEINBERG:  I WAS ACTUALLY JUST GOING
TO HAND YOU UP THE NINTH CIRCUIT DECISION WHICH
CAME DOWN YESTERDAY.

        THE COURT:  OH.  YOU CAN GIVE IT TO THE
COURTROOM DEPUTY AND --

        MR. FEINBERG:  SHE'S CLEARLY AWARE OF IT.

        THE COURT:  THE COURTROOM DEPUTY, I SAID.

        MR. FEINBERG:  OH, I'M SORRY (HANDING).

        THE COURT:  THAT'S WHO HANDS IT UP TO ME.

        SO THEY REVERSED THE INJUNCTION?

        MR. FEINBERG:  YES.  AND IT'S NOT ON
FIRST AMENDMENT GROUNDS WHICH, FRANKLY, YOUR HONOR,
I NAIVELY EXPECTED IT TO BE.

        BASICALLY WHAT THEY SAID, AND I'M SURE
THERE WILL BE A DISPUTE, BUT WHAT THEY SAID IS ALL
OF THE THINGS THAT OPPOSING COUNSEL COMPLAINED OF

AREN'T ACTIONABLE; THEREFORE, YOU CAN'T HAVE A
PRELIMINARY INJUNCTION BASED ON IT, INCLUDING
THINGS LIKE GENERICIDE ISN'T A CLAIM, ENCOURAGING
PEOPLE TO USE A MARK OR PURPORTED MARK GENERICALLY
IS A RISK OF HAVING A MARK.

     THE REASON I BRING THIS UP IS WE WOULD
LIKE TO REQUEST PERMISSION TO MOVE FOR SUMMARY
JUDGMENT ON THE COUNTERCLAIMS, BECAUSE WE BELIEVE
THIS NINTH CIRCUIT DECISION, WHICH IS THE LAW OF
THE CASE, EVISCERATES THEIR COUNTERCLAIMS, WHICH
ARE TORT AND ESSENTIALLY THE SAME THINGS THEY
COMPLAINED OF.

     THE COURT:  I WISH YOU'D TOLD ME THIS
YESTERDAY.  I WOULD HAVE HAD TIME TO READ IT.

     MR. FEINBERG:  WE'RE NOT GOING TO
ACTUALLY BRING THE MOTION TODAY.

     THE COURT:  WELL, NO, BUT I WOULD HAVE
BEEN CURIOUS.

     SO, WELL, THAT WAS ONE OF MY QUESTIONS IS
WHAT COUNTERCLAIMS ARE THERE THAT AREN'T THE
SUBJECT OF THIS MOTION?

     MR. FEINBERG:  THERE ARE TORT CLAIMS
AGAINST MR. OEY, AND WE BELIEVE THAT THEY ARE GONE.
I'M SURE OPPOSING COUNSEL DISAGREES, BUT WE THINK
THAT THEY CANNOT SURVIVE SUMMARY JUDGMENT.

```
14:21:57   1              THE COURT:  RIGHT.  BUT, I MEAN, WHICH
14:21:59   2    COUNTERCLAIMS ARE NOT THE SUBJECT OF THE MOTION
14:22:01   3    YOU'VE ALREADY MADE?
14:22:02   4              MR. FEINBERG:  NONE OF THE COUNTERCLAIMS
14:22:03   5    ARE THE SUBJECT OF THIS MOTION.
14:22:05   6              THIS IS STRICTLY ON OUR DECLARATORY
14:22:07   7    RELIEF AND THEIR COUNTERCLAIM FOR INFRINGEMENT.
14:22:09   8              THE ISSUE OF WHETHER OR NOT --
14:22:10   9              THE COURT:  SO THAT'S AT LEAST ONE OF THE
14:22:12  10    COUNTERCLAIMS THAT IT ADDRESSES?
14:22:15  11              MR. FEINBERG:  WELL, THE QUESTION IS
14:22:16  12    WHETHER THEY HAVE NAKEDLY LICENSED THE MARK AND,
14:22:19  13    THEREFORE, HAVE NO MARK TO PROTECT AND NO MARK TO
14:22:22  14    REGISTER.
14:22:23  15              THE COURT:  I KNOW THAT'S THE ISSUE.
14:22:24  16              BUT MY QUESTION IS, WHICH OF THE
14:22:26  17    COUNTERCLAIMS DOES THAT ISSUE AFFECT AND WHICH OF
14:22:28  18    THE COUNTERCLAIMS DOES IT NOT AFFECT?
14:22:30  19              MR. FEINBERG:  BOTH OF THE TRADEMARK
14:22:32  20    INFRINGEMENT COUNTERCLAIMS.
14:22:34  21              THE COURT:  OKAY.  NONE OF THE OTHER
14:22:35  22    COUNTERCLAIMS?
14:22:36  23              MR. FEINBERG:  NO.
14:22:36  24              THE COURT:  YOU BETTER ASK YOUR FRIEND
14:22:38  25    HERE.
```

```
14:22:42   1              (PAUSE IN PROCEEDINGS.)

14:22:43   2              MR. FEINBERG:  MY SENSE IS THAT THE NINTH

14:22:45   3    CIRCUIT HAS EVISCERATED --

14:22:47   4              THE COURT:  YEAH, BUT I'M NOT ASKING YOU

14:22:49   5    THAT.

14:22:49   6              MR. FEINBERG:  I UNDERSTAND THAT.

14:22:50   7              THE COURT:  I'M ASKING YOU, WHICH

14:22:51   8    MOTIONS -- WHICH COUNTERCLAIMS DID YOU MOVE ON IN

14:22:54   9    THE MOTION THAT'S BEFORE ME TODAY, AND WHICH ONES

14:22:56  10    DID YOU NOT MOVE ON IN THE MOTION THAT'S BEFORE ME

14:22:58  11    TODAY?

14:23:00  12              MS. KOBIALKA:  WELL, THE FIRST --

14:23:01  13              THE COURT:  MAYBE YOU KNOW.

14:23:02  14              MS. KOBIALKA:  THE FIRST CLAIM THAT --

14:23:04  15    FREECYCLE NETWORK'S COUNTERCLAIMS, ACCORDING THE

14:23:07  16    TITLE OF THEIR MOTION, WHICH I BELIEVE WAS A

14:23:09  17    DECLARATORY JUDGMENT ON THE ISSUE OF

14:23:11  18    INFRINGEMENT --

14:23:12  19              THE COURT:  THIS SAYS ALL OF THEM.

14:23:13  20              MR. FEINBERG:  WE MOVED ON ALL OF THEM,

14:23:15  21    BECAUSE IF THEY DON'T HAVE A TRADEMARK TO SUPPORT

14:23:17  22    THEIR COUNTERCLAIMS, THERE'S NOTHING THERE.

14:23:20  23              THE COURT:  WHAT ELSE IS IN THE CASE

14:23:21  24    BESIDES YOUR CLAIM AGAINST THEM AND ALL OF THEIR

14:23:23  25    COUNTERCLAIMS AGAINST YOU?
```

MR. FEINBERG: THERE'S NOTHING ELSE.

WE, AT ONE POINT, HAD A TORTIOUS INTERFERENCE CLAIM, AND WE DROPPED THE DAMAGES CLAIM AND THAT CLAIM WILL DROP OUT, TOO.

THE COURT: SO YOU THINK THAT YOUR TRADEMARK, YOUR NEGLIGENT LICENSING ISSUE AFFECTS ALL OF THEIR COUNTERCLAIMS?

MR. FEINBERG: YES.

THE COURT: OKAY. WELL, I TEND TO THINK THAT -- TO AGREE WITH YOU THAT THIS NAKED LICENSING TERM -- I DON'T REALLY LIKE IT, IT REMINDS ME OF -- I GET THIS PICTURE OF PEOPLE AT THE D.M.V.

BUT IT SEEMS TO ME THAT THE NAKED LICENSING DOES MEAN THAT THEY CAN HAVE NO TRADEMARK CLAIM AGAINST YOU, BECAUSE YOU GOT YOUR -- OR YOU GOT YOUR PERMISSION TO USE THE TRADEMARK BEFORE THEY EVEN ARGUABLY STARTED TO PUT IN CONTROLS AND SO ON AND SO FORTH.

I HAVE A QUESTION IN MY MIND NOW, AT LEAST, AS TO WHETHER THEY PERHAPS RECAPTURED THEIR TRADEMARK SUBSEQUENTLY AND MIGHT HAVE SOME KIND OF TRADEMARK CLAIM AGAINST SOMEBODY OTHER THAN YOU, WHICH THEN MIGHT KEEP ALIVE SOME COUNTERCLAIMS HAVING TO DO WITH INDUCEMENT OR SOMETHING ELSE.

SO I'M CONCERNED ABOUT THE RECAPTURE

ISSUE AND WHAT COUNTERCLAIMS MIGHT STILL BE ALIVE

IF THERE WAS A DISPUTE OF FACT OR AN UNCERTAINTY

ABOUT THE RECAPTURE ISSUE.

        MR. FEINBERG:  WELL, FIRST OF ALL, WHAT

THE -- THE TORT CLAIMS, I THINK -- I APOLOGIZE FOR

NOT GETTING THIS ORDER OUT TO YOU EARLIER FROM THE

NINTH CIRCUIT, BUT WE JUST GOT IT YESTERDAY MORNING

AND IT WAS JUST IN THE LEGAL PAPERS TODAY.

        THE COURT:  WELL, I HAVEN'T READ TODAY'S

PAPER.

        MR. FEINBERG:  IT IS -- THE PROBLEM WITH

THE RECAPTURE IS, A, IT DOESN'T GO AGAINST, AGAINST

MR. OEY, AND THE TORT --

        THE COURT:  I AGREE.

        MR. FEINBERG:  -- AND THE TORT CLAIMS

WILL GO AWAY.

        BUT MORE IMPORTANTLY, THEY HAVE -- THE

ESSENCE OF THE TRADEMARK IS MAINTAINING QUALITY.

        THIS FREE AND LEGAL AND APPROPRIATE FOR

ALL AGES ISN'T A MEASURE OF QUALITY.  IT'S A SCOPE

OF A LICENSE.

        THE COURT:  OKAY.  BUT LET'S ASSUME FOR

THE PURPOSES OF DISCUSSION JUST FOR A MOMENT THAT I

THINK THERE MIGHT BE AN ISSUE ABOUT WHETHER THEY,

IN FACT, INSTITUTED SUFFICIENT CONTROLS LATER, AND

14:26:02 1    PERHAPS EVEN DID SO SUFFICIENTLY TO RECAPTURE THEIR

14:26:06 2    TRADEMARK.

14:26:07 3         WHICH OF YOUR COUNTERCLAIMS THEN MIGHT

14:26:10 4    ARGUABLY, AT LEAST, AND ASSUMING THOSE FACTS WHICH

14:26:13 5    I KNOW YOU DISAGREE WITH, WHICH OF YOUR

14:26:15 6    COUNTERCLAIMS MIGHT THEN ARGUABLY SURVIVE?

14:26:18 7         MR. FEINBERG:  THEIR COUNTERCLAIMS?

14:26:19 8         THE COURT:  THEIR COUNTERCLAIMS.

14:26:20 9         MR. FEINBERG:  I DON'T THINK ANY OF THEM

14:26:21 10   SURVIVE, BECAUSE IF MR. OEY HAD THE RIGHT TO USE

14:26:25 11   FREECYCLE BECAUSE HE WAS NAKEDLY LICENSED, THEN

14:26:28 12   THEIR COUNTERCLAIMS ARE GONE.

14:26:29 13        THE COURT:  DID HE HAVE THE RIGHT TO

14:26:31 14   INDUCE SOMEONE WHO WASN'T NAKEDLY LICENSED AND WHO

14:26:34 15   WAS FULLY CLOTHED AND IS SUBJECT TO CONTROLS AND

14:26:37 16   ENCOURAGE THEM TO MISUSE THE TRADEMARK EVEN THOUGH

14:26:40 17   MR. OEY HIMSELF COULD USE THE TRADEMARK AS HE

14:26:43 18   CHOSE?

14:26:43 19        MR. FEINBERG:  ALL RIGHT.  SO WE GET A

14:26:46 20   LITTLE BIT INTO THE NINTH CIRCUIT HOLDING HERE, BUT

14:26:48 21   THE NINTH CIRCUIT SAID THERE IS NO SUCH THING AS

14:26:51 22   GENERICIDE IF YOU USE A TRADEMARK AS A VERB, OR YOU

14:26:55 23   TRY TO DESTROY ITS VALUE, WHICH IS REALLY WHAT

14:26:58 24   THEIR COUNTERCLAIMS ARE ABOUT.  IT'S NOT

14:27:00 25   ACTIONABLE.

SO THE PROBLEM IS WE'RE NOW IN AN AREA
WHERE, WHEN WE MADE OUR MOTION, THERE WASN'T ANY
NINTH CIRCUIT LAW, OR PARTICULARLY GOOD LAW, AND
NOW THERE IS.

                    AND SO MY VIEW IS IF MR. -- IF --

                    THE COURT:  OKAY.  WELL, LET ME ASK IT A
DIFFERENT WAY, THEN.  LET'S SET ASIDE THE NINTH
CIRCUIT OPINION.

                    LET'S SAY, JUST FOR PURPOSES OF
DISCUSSION, THAT ALTHOUGH THEY NAKEDLY LICENSED
YOU, THEY FULLY CLOTHED LICENSED OTHER PEOPLE
LATER; AND, FURTHERMORE, THEY INSTITUTED ADEQUATE
CONTROLS; AND, FURTHERMORE, YOU INDUCED THOSE
PEOPLE TO VIOLATE THE TRADEMARK IN A REAL WAY, AN
ACTUAL VIOLATION.

                    WHICH COUNTERCLAIM WOULD SURVIVE, IF ANY?

                    MR. FEINBERG:  I DON'T THINK ANY OF THEM.

                    AND MORE IMPORTANT, THE PROBLEM WITH THAT
IS IT'S NOT JUST US.  IT'S EVERYONE ELSE WHO WAS
NAKEDLY LICENSED, WHICH MEANS THERE ARE 20 OR 30 OR
50 OR 200 FOLKS RUNNING AROUND WHO HAVE THE RIGHT
TO USE THIS WITHOUT REGARD TO THEIR RULES, WHICH IN
MY VIEW, ALTHOUGH IT HASN'T BEEN BRIEFED BY EITHER
SIDE BECAUSE WE REALLY HADN'T SEEN THIS RECAPTURE
ARGUMENT UNTIL THEIR OPPOSITION, BUT THERE IS NO

TRADEMARK RIGHT AT THAT POINT.  THERE ARE TOO MANY
PEOPLE WHO HAVE THE RIGHT TO USE IT WITHOUT
RESTRICTION.

            THE COURT:  OKAY.  AND WHAT WOULD YOU
LIKE TO SAY?

            MS. KOBIALKA:  THERE'S ABSOLUTELY NO
EVIDENCE OF THESE HUNDREDS OR 20 OR 30 OTHER
INDIVIDUALS WHO WERE SUPPOSEDLY NAKEDLY LICENSED BY
THE FREECYCLE NETWORK.  IT JUST DOESN'T EXIST.

            THEY'VE SUBMITTED DECLARATIONS OF PRETTY
SPECIFIC INDIVIDUALS.

            WE'VE BEEN ABLE TO REBUT EACH AND EVERY
ONE, DESCRIBING SPECIFICALLY THE RULES AND THE
ETIQUETTE AND THE GUIDELINES THAT WERE PROVIDED TO
THEM IN CONNECTION WITH THESE MARKS.

            AND WE NEED TO BE VERY CLEAR HERE.  WE'RE
NOT TALKING ABOUT ONE TRADEMARK.

            WE'RE TALKING ABOUT THREE DIFFERENT
TRADEMARKS.  THE PLAINTIFF IN THIS CASE DOESN'T
EVEN COME CLOSE TO ADDRESSING EACH AND EVERY ONE OF
THOSE TRADEMARKS.  ONE IS A LOGO; ONE IS THE WORD,
THE MARK FREECYCLE; AND THE OTHER ONE IS THE
FREECYCLE NETWORK.

            YET THEY'RE ATTEMPTING TO BUNDLE ALL
THREE AND SAY THAT SOMEHOW ALL THREE NOW HAVE BEEN

16

NAKEDLY LICENSED.

BUT IF YOU LOOK CAREFULLY AT THE RECORD
AND THE EVIDENCE THAT WE'VE PROVIDED -- AND IN THIS
CASE, THE EXHIBITS WE PROVIDED ARE REALLY
REPRESENTATIVE EXAMPLES BECAUSE THERE ARE TENS OF
THOUSANDS OF PAGES THAT GO TO ALL OF THE EFFORTS
THAT THE FREECYCLE NETWORK HAD IN ENSURING THAT ITS
RULES AND GUIDELINES AND ETIQUETTES WERE PROPERLY
ENFORCED, INCLUDING AS EARLY AS 2003, TOWARDS THE
END OF 2003, AS WELL AS IN 2004.

BUT TURNING TO THIS ISSUE, YOU'VE GOT TO
ACTUALLY HAVE EVIDENCE.  YOU CAN'T JUST MAKE THE
STATEMENT THAT SUPPOSEDLY OTHER INDIVIDUALS HAVE
BEEN NAKEDLY LICENSED.  THEY HAVEN'T PROVIDED ANY
OF THAT.

SO IF YOU LOOK AT THE INDIVIDUALS THAT --

THE COURT:  WELL, FOR WHAT -- YOU'RE
TALKING ABOUT FOR THE COUNTERCLAIMS.  FOR THE
COUNTERCLAIMS, THOSE ARE YOUR CLAIMS, SO YOU HAVE
THE BURDEN OF PROOF.

ALL THEY HAVE TO DO IS POINT OUT THAT YOU
HAVE NOT PRESENTED ANY EVIDENCE ON YOUR
COUNTERCLAIMS AND THE BURDEN IS ON YOU TO PRESENT
SOME.

MS. KOBIALKA:  THAT WE HAVEN'T NAKEDLY

17

14:30:02  1
14:30:04  2
14:30:04  3
14:30:06  4
14:30:08  5
14:30:10  6
14:30:11  7
14:30:12  8
14:30:15  9
14:30:19  10
14:30:22  11
14:30:23  12
14:30:25  13
14:30:28  14
14:30:31  15
14:30:33  16
14:30:35  17
14:30:35  18
14:30:37  19
14:30:40  20
14:30:43  21
14:30:46  22
14:30:49  23
14:30:52  24
14:30:55  25

LICENSED? THAT'S THEIR CLAIM. THEY HAVE THE

BURDEN --

     THE COURT: NO, ON YOUR COUNTERCLAIMS.

     MS. KOBIALKA: RIGHT. OUR

COUNTERCLAIM -- AS I UNDERSTAND IT, WE DIDN'T MOVE

FOR SUMMARY JUDGMENT ON THE ISSUE OF TRADEMARK

INFRINGEMENT.

     THAT IS WHAT -- AND A DETERMINATION THAT

THE -- BECAUSE THEIR DECLARATORY JUDGMENT ACTION

WAS FOR A DETERMINATION THAT THE MARK IS DEEMED

GENERIC.

     THEY'VE ADDITIONALLY INCLUDED THE SUMMARY

JUDGMENT ON THE ISSUE OF NAKED LICENSING.

     BUT IF YOU LOOK AT THEIR DECLARATORY

JUDGMENT ACTION, IT WAS ACTUALLY ON THE

DETERMINATION THAT THE MARK WOULD BE DEEMED

GENERIC.

     WE SUED FOR TRADEMARK INFRINGEMENT, BUT

AS I UNDERSTOOD IT, THAT CLAIM IS NOT PUT AT ISSUE

HERE IN THE SENSE THAT WE DIDN'T CROSS MOVE FOR A

DETERMINATION OF TRADEMARK INFRINGEMENT.

     WHAT WE HAVE DEMONSTRATED IS THAT WE DO,

IN FACT, HAVE A TRADEMARK THAT WE HAVE GONE OUT AND

AGGRESSIVELY PROTECTED. WE HAVE TAKEN GREAT PAINS

TO DESCRIBE ALL THE DIFFERENT PROCEDURES, RULES,

ETIQUETTE, ETHOS.

I MEAN, I CAN GO ON AND ON ABOUT THE
THINGS THAT THE FREECYCLE NETWORK HAS DONE TO, IN
FACT, PROTECT INDIVIDUALS WHO DECIDED TO BECOME
MEMBERS OF THE FREECYCLE NETWORK AND BECOME A PART
OF THAT PARTICULAR GROUP, AND ALL THOSE RULES WERE
ACTUALLY ENFORCED THROUGHOUT, AND CONTINUE TO BE
ENFORCED THROUGH TODAY.

SO WE HAVE DEMONSTRATED WITH EXTENSIVE
EXHIBITS, AND I CAN GO THROUGH AND START TO
DESCRIBE, AND ONE OF THE MOST IMPORTANT THINGS --

THE COURT:  WELL, NO.  I GUESS YOU CAN --
I'M FAMILIAR WITH THE EXHIBITS.

MS. KOBIALKA:  ALL RIGHT.  AND THE
EVIDENCE RIGHT NOW IS THAT MR. DERON BEAL HIMSELF
MONITORED ALL OF THE VARIOUS NEW GROUPS THAT
STARTED TO JOIN STARTING IN THE OCTOBER 2003
TIMEFRAME.  HE SET FORTH THAT IN HIS DECLARATION.

THAT IS NOT DISPUTED BY THE PLAINTIFF IN
THIS PARTICULAR CASE.

AND IN OCTOBER, HE STARTED HAVING THE
MODERATORS DO A LOT OF THE WORK.  HE REQUESTED THAT
THE MODERATORS ENSURE THAT THEY ADDRESS THE
DAY-TO-DAY PROBLEMS AND ISSUES THAT WOULD COME UP
AND ENSURE THAT PEOPLE ARE COMPLYING.

19

```
14:32:06  1        AND WHEN INDIVIDUALS WEREN'T COMPLYING,
14:32:08  2   AS EARLY AS EARLY 2004, THERE WAS A DETERMINATION
14:32:13  3   OF A GROUP WHO DIDN'T ACTUALLY --
14:32:15  4        THE COURT:  RIGHT.  BUT THE CAUSE OF ALL
14:32:17  5   OF THAT IS THAT NONE OF IT WAS DONE AT THE TIME
14:32:20  6   THAT FREECYCLESUNNYVALE GOT THEIR LICENSE.
14:32:23  7        MS. KOBIALKA:  IT WAS.
14:32:23  8        THE COURT:  NO, IT WASN'T.  ALL THAT WAS
14:32:24  9   DONE TO THEM IS THE OFT QUOTED E-MAIL, DON'T USE IT
14:32:29 10   COMMERCIALLY.
14:32:30 11        SO IT SEEMS THAT --
14:32:31 12        MS. KOBIALKA:  YOU'RE TALKING ABOUT WITH
14:32:33 13   RESPECT TO THE LOGO.
14:32:34 14        BUT THERE WAS ACTUALLY OTHER DISCUSSIONS
14:32:36 15   THAT HAD OCCURRED, AND THAT'S ALSO IN THE EVIDENCE
14:32:38 16   IN THE RECORD WHERE MR. BEAL AND MR. KAUFMAN, WHO
14:32:41 17   WAS A MEMBER OF THE FREECYCLE NETWORK, PROVIDED THE
14:32:43 18   ETIQUETTE THAT HAD BEEN SET FORTH THAT THE
14:32:45 19   FREECYCLE NETWORK --
14:32:47 20        THE COURT:  BUT THAT WAS LATER.
14:32:48 21        MS. KOBIALKA:  NO.  IT WAS ACTUALLY AT
14:32:50 22   THE TIME --
14:32:50 23        THE COURT:  NO, IT WASN'T.
14:32:51 24        MS. KOBIALKA:  IT WAS IN OCTOBER OF 2003.
14:32:53 25        THE COURT:  RIGHT.  BUT THE E-MAIL WENT
```

OUT EARLIER THAN THAT.

          MS. KOBIALKA:  WHICH E-MAIL ARE YOU
REFERRING TO?

          THE COURT:  THE E-MAIL THAT SAID, YEAH,
FREECYCLE -- I CAN PROBABLY QUOTE THE WHOLE THING,
IT WAS MENTIONED SO FREQUENTLY -- YEAH, FREECYCLE,
GO AHEAD AND USE IT.  JUST DON'T USE IT
COMMERCIALLY.  SO-AND-SO CAN GET YOU A FANCY
SCHMANCY LOGO, WHATEVER.

          MS. KOBIALKA:  YEAH, THAT'S DATED OCTOBER
9TH, 2003.

          PRIOR TO THAT, MR. BEAL HAD HAD
DISCUSSIONS WITH MS. ABRAHAM, THAT'S IN HIS
DECLARATION, AS WELL AS IN THE DOCUMENTS, AND
MR. KAUFMAN AS WELL IN WHICH THE ETIQUETTE WAS
PROVIDED.

          AND THE ETIQUETTE LISTS NOT FOR PROFIT,
NO POLITICS, NO SPAMMING, PROCEDURES FOR POSTING,
WHAT WORDS TO USE AND HOW TO POST.

          YOU HAD TO AGREE TO THE YAHOO TERMS AND
CONDITIONS.

          THIS IS NOT CHALLENGED.  ALL OF THIS WAS
OCCURRING BACK IN SEPTEMBER OF 2003 AND OCTOBER.

          THERE WAS A BAN ON THE CURBSIDE PICK UP.
THERE WAS NO FIRST COME, FIRST SERVE.  THERE WAS NO

BARTER OFFERS.

AND THESE THINGS ARE IMPORTANT, BECAUSE
THE FACT THAT THE FREECYCLE NETWORK IS DOING THESE
THINGS FOR FREE IS WHAT DISTINGUISHES IT FROM OTHER
ENTITIES SUCH AS CRAIG'S LIST OR EBAY OR SOME OF
THE OTHER WEB SITES WHERE YOU'RE ACTUALLY ALLOWED
TO BARTER THINGS OR TRADE THINGS, SO IT'S A
ONE-FOR-ONE EXCHANGE, WHICH WAS NOT THE PRINCIPLE
UNDER WHICH THE FREECYCLE NETWORK ITSELF WAS
FOUNDED.

SO WE'VE BEEN ABLE TO IDENTIFY QUITE A
BIT, AND THAT IS NOT CHALLENGED AT ALL.

IN FACT, SOME OF THAT CAME DIRECTLY OUT
OF THE DECLARATION OF MR. KAUFMAN HIMSELF.

AND THEN WE HAD ADDITIONALLY DOCUMENTS
THAT WERE ATTACHED TO MY DECLARATION, AS WELL AS
MR. BEAL'S DECLARATION.

SO AT THAT TIME, ALL OF THAT WAS IN PLACE
AND ACTUALLY DID EXIST AND WAS PROVIDED TO
MS. ABRAHAM, WAS PROVIDED TO MR. KAUFMAN, AND LATER
TO MR. ROBERTSON AS WELL.

MR. FEINBERG:  CAN I RESPOND QUICKLY TO A
COUPLE POINTS?

THE COURT:  NO.  WHEN SHE'S FINISHED, YOU
CAN RESPOND.

14:34:41  1         MS. KOBIALKA: OKAY. AFTER THAT TIME,

14:34:42  2  WHEN THERE STARTED TO BECOME MORE AND MORE GROUPS

14:34:45  3  THAT WERE JOINING, MR. BEAL, HE'S PROVIDED A

14:34:49  4  DECLARATION, HE MONITORED IT HIMSELF.

14:34:51  5         BUT THEN HE CAME AND DECIDED IMMEDIATELY

14:34:53  6  THEREAFTER, SO OCTOBER 9TH, 2003, TO NOT ONLY HAVE

14:34:57  7  MODERATORS, BUT TO HAVE A MOD SQUAD.

14:35:00  8         AND THE PURPOSE OF THE MOD SQUAD WAS TO

14:35:02  9  ENSURE THAT PEOPLE COMPLIED WITH THE RULES, AND

14:35:04  10  THEY HAD THIS RULE OF TWO STRIKES AND YOU'RE OUT,

14:35:06  11  AND THEY EVENTUALLY DEVELOPED A MANUAL THAT WAS

14:35:08  12  PROVIDED.

14:35:09  13         BUT THIS POLICING WAS ONGOING.

14:35:11  14         SO AS OF DECEMBER 9TH, 2003, THERE'S

14:35:14  15  EXHIBIT 100 WHICH DEMONSTRATED HOW THE FREECYCLE

14:35:17  16  NETWORK WAS ACTUALLY POLICING ITS TRADEMARKS.

14:35:21  17         THERE WAS AN INSTANCE IN LINCOLN COUNTY

14:35:23  18  WHERE SOMEONE WAS USING IT.

14:35:25  19         SO THESE GUIDELINES AND RULES AND

14:35:26  20  PROCEDURES HAD BEEN AROUND REALLY AT THAT TIME, AND

14:35:29  21  THAT'S WHAT THE RECORD SHOWS.

14:35:30  22         WE HAVE NUMEROUS EXHIBITS THAT WE

14:35:32  23  PROVIDED FROM THAT TIMEFRAME TO DEMONSTRATE THAT,

14:35:35  24  AS WELL AS MR. BEAL'S DECLARATION, WHICH IS NOT

14:35:37  25  CHALLENGED.

1          I THINK THAT, YOU KNOW, THE THINGS THAT

2   THE PLAINTIFF ARE ATTEMPTING TO POINT TO ARE THESE

3   PERCEPTIONS THAT THESE INDIVIDUALS MAY OR MAY NOT

4   HAVE HAD AT THE TIME, BUT THEY ALL CLEARLY KNEW

5   THAT THEY WERE BECOMING MEMBERS OF THE FREECYCLE

6   NETWORK.

7          OTHERWISE WHY WOULD MR. BEAL BE

8   CONTACTING THEM OR SUGGESTING THAT THEY WOULD HAVE

9   THIS INFORMATION OR SUCH THAT THEY WOULD BE POSTED

10  OR HAVE A LINK TO THE FREECYCLE NETWORK'S WEB SITE?

11         SO THERE WAS ALL THESE DIFFERENT

12  PROVISIONS THAT EXISTED BACK THEN THAT THEY

13  CONTINUED TO AGGRESSIVELY PURSUE AND MAKE SURE --

14  AS THE GROUP GOT BIGGER, THEY HAD TO MAKE SURE THAT

15  THEY WERE ADDRESSING THE ISSUES AND CONCERNS THAT

16  WERE COMING UP, BECAUSE LIKE MANY SMALL GRASSROOTS

17  MOVEMENTS THAT CATCH FIRE, YOU'VE GOT TO ADDRESS

18  THINGS AS THEY CHANGE, AND PARTICULARLY AS THE

19  FREECYCLE NETWORK BEGAN TO HAVE INTERNATIONAL

20  REPRESENTATION IN DIFFERENT COUNTRIES, IT WAS

21  IMPORTANT FOR THEM TO ENSURE THAT THEIR RULES

22  REFLECTED AND WERE USEFUL TO ALL OF THOSE VARIOUS

23  GROUPS.

24         AND SO TO REFLECT THE CHANGES THAT WERE

25  HAPPENING WITHIN THE FREECYCLE NETWORK IN JANUARY

OF 2004, THERE WAS A VOTE THAT WAS TAKEN WHETHER OR
NOT WE SHOULD EXPAND THIS PRINCIPLE OF JUST BEING
FREE, WHICH HAD EXISTED FROM THE INCEPTION OF THE
FREECYCLE NETWORK.  IT WAS, IN POINT OF FACT, THE
POINT OF IT, TO BE FREE, LEGAL, AND APPROPRIATE FOR
ALL AGES BECAUSE OF THE ISSUES THAT WERE COMING UP
AND AS THE GROUP WAS GROWING BIGGER.

        AND THE MOD SQUAD HAD SIGNIFICANT
CORRESPONDENCE WITH MR. BEAL.  HE DIDN'T JUST WALK
AWAY AND SAY, "OKAY, THIS IS NOW AN OPPORTUNITY FOR
THE MODERATORS OR THE MOD SQUAD TO DEAL WITH."

        HE CONTINUED TO HAVE CORRESPONDENCE WITH
THEM THROUGHOUT TO ENSURE THAT THESE THINGS WERE
COMPLIED WITH AND CONTINUED TO CREATE STRUCTURE AND
ADDITIONAL RULES AND HIERARCHY TO ENSURE THAT
PEOPLE WERE COMPLYING WITH THE RULES BECAUSE THIS
WAS STARTING TO CATCH, YOU KNOW, CATCH FIRE.  IT
WAS EXPANDING PRETTY AGGRESSIVELY THROUGHOUT THE
WORLD.

        AND AS A REFLECTION OF THAT, THEY STARTED
THE PENGUIN PATROL, WHICH WAS SPECIFIC TO THE
TRADEMARKS, AND THAT WAS IN THE 2004 TIMEFRAME.

        THEN THEY HAD THE NEW GROUP APPROVERS,
WHICH DID NOT, CONTRARY TO THE DECLARATION
SUBMITTED BY PLAINTIFF, JUST APPROVE GROUPS WILLY

NILLY.  IN FACT, WE PROVIDED EVIDENCE WHERE GROUPS
HAD TO WAIT FOR APPROVAL.

AND THESE NEW GROUP APPROVERS WOULD
INSPECT THE SITE AND ENSURE THAT THIS WOULD COMPLY
WITH WHAT THE FREECYCLE NETWORK'S PHILOSOPHY WAS,
AS WELL AS ITS RULES AND ETIQUETTE.

IT CONTINUED ON WITH THE GROUP OUTREACH
ASSISTANCE AS WELL IN SEPTEMBER 2004.

AND AT ONE POINT, THE PLAINTIFF ITSELF,
IN OCTOBER 2004, SAID, "YOU KNOW WHAT?  I REALLY
WANT A CLEAR TRADEMARK POLICY."

SO NOT ONLY DID THEY ACKNOWLEDGE THERE
WAS A TRADEMARK POLICY IN PLACE, BUT THEY WANTED TO
CLARIFY IT AND MAKE IT SHARPER AND CLEANER, AND
THAT'S EXHIBIT 103.

WHEN IT BECAME APPARENT AT THE TIME THAT
SOME OF THESE OWNERS AND MODERATORS WERE
DISAPPEARING, THEY WERE MOVING AND NOT MAINTAINING
THE WEB SITES, IT BECAME IMPORTANT TO TRY AND HAVE
INTERIM MODERATORS THERE SO THAT YOU COULD CONTINUE
THE QUALITY AND THE STANDARDS, WHICH IS THE REASON
FOR HAVING THE I MODS.

SO IT'S PRETTY EXTENSIVE THE AMOUNT OF
WORK THAT THE FREECYCLE NETWORK PUT IN WITH
MR. BEAL AT THE CENTER OF IT TO TRY AND ENSURE THAT

ITS QUALITY STANDARDS WERE BEING MAINTAINED
THROUGHOUT.

I WANTED TO MAKE SURE THAT THE ETIQUETTE
ITSELF WAS ACTUALLY CIRCULATED BY THE PLAINTIFF IN
2004.  THAT'S EXHIBIT 16.

THE PLAINTIFF ALSO POLICED THE MARKS
THEMSELVES.  THAT'S EXHIBIT 73.

SO THERE'S QUITE A BIT ON THE PLAINTIFF'S
SIDE WHERE THEY ACTUALLY WERE GOING OUT AND TRYING
TO ENFORCE THESE RULES THEMSELVES.

AND EXAMPLES OF THE CONSTANT
CORRESPONDENCE THAT MR. BEAL HAD EARLY IN 2004 IS
EXHIBIT 36, AND THAT IS WITH THE MODS TO ENSURE
THAT THEY WERE REALLY GOING OUT THERE AND FOLLOWING
UP WITH THE VARIOUS MEMBER GROUPS.

THE COURT:  COULD YOU FINISH UP --

MS. KOBIALKA:  ABSOLUTELY.

THE COURT:  -- SHORTLY?

MS. KOBIALKA:  SURE.  IN ADDITION TO THIS
ISSUE ABOUT THERE ARE THREE SEPARATE MARKS AND
REALLY THESE MARKS HAVE NOT BEEN IDENTIFIED
SEPARATELY, THEY'VE BEEN BUNDLED TOGETHER, THERE
IS, YOU KNOW, AN EXTRAORDINARY AMOUNT OF PROOF THAT
I THINK NEEDS TO COME FORWARD BY A PLAINTIFF
SEEKING TO STRIP A PARTY OF ITS TRADEMARK RIGHTS.

14:40:02  1          IT'S NOT SOMETHING WHERE YOU CAN JUST

14:40:03  2     MAKE STATEMENTS THAT, "OH, THERE ARE OTHER PARTIES

14:40:06  3     OUT THERE" WITHOUT ACTUALLY PROVIDING PROOF THAT

14:40:09  4     THEY WERE SUPPOSEDLY NAKED LICENSING, AND I REALLY

14:40:12  5     THINK THAT THEY HAVE TO ADDRESS ALL OF THE

14:40:13  6     SUBSTANTIVE EVIDENCE THAT WE PROVIDED IN OUR

14:40:15  7     OPPOSITION, WHICH THEY FRANKLY DIDN'T DO.

14:40:17  8          THE LAST POINT I HAD WAS THEY REALLY

14:40:19  9     MISREPRESENTED THE DOCUMENT PRODUCTION.

14:40:21 10          THERE'S A DISPUTE WITH RESPECT TO

14:40:23 11     DOCUMENT REQUEST NUMBER 64, AND IF YOU LOOK VERY

14:40:27 12     CAREFULLY AT THE EXHIBIT 1 THAT WAS ATTACHED TO

14:40:31 13     MR. CORGILL'S DECLARATION, AND THIS IS SUPPOSEDLY

14:40:34 14     WHERE THE QUOTE THAT THEY USED FOR THEIR REPLY

14:40:38 15     BRIEF CAME FROM, IT'S ACTUALLY A MISQUOTE.  IT'S

14:40:41 16     NOT ACCURATE.

14:40:42 17          THEY FILLED IN WORDS IMPROPERLY THERE AND

14:40:44 18     IT TAKES OUT OF CONTEXT ACTUALLY WHAT THE DISPUTE

14:40:47 19     WAS.

14:40:48 20          SO THE REQUEST HAD TO DO WITH EVERY

14:40:50 21     SINGLE DOCUMENT, INCLUDING ARCHIVED ELECTRONIC

14:40:53 22     FILES, OF BASICALLY EVERY POSTING, WEB PAGE,

14:40:57 23     ANYTHING THAT EXISTED OF EVERY MEMBER GROUP OF THE

14:41:00 24     ENTIRE FREECYCLE NETWORK, AND WE INFORMED THE

14:41:04 25     PLAINTIFF THAT THAT WAS UNDULY BURDENSOME AND

OVERLY BROAD.

WE HAD DISCUSSIONS GOING BACK AND FORTH
ASKING FOR THEM TO NARROW, MAYBE PICK AND SELECT A
NUMBER OF GROUPS AND WE CAN PROVIDE THAT.

MOST OF THAT INFORMATION ALSO WAS PUBLIC
AND WE HAD PROVIDED IT, IN FACT, WITH RESPECT TO
QUITE A FEW OF THESE DIFFERENT ENTITIES.

THE PLAINTIFF CAME BACK AND IDENTIFIED
SOME, I THINK IT WAS 15 OR 20, DIFFERENT SITES OR
GROUPS THAT THEY WANTED THE DOCUMENTATION FROM, BUT
SAID THAT, "NO, WE STILL RESERVE THE RIGHT TO COME
BACK AND KEEP ASKING FOR MORE," WHICH WE WERE JUST
UNABLE TO REACH AGREEMENT UPON.

HOWEVER, WE DID NOTIFY THEM SPECIFICALLY
THAT QUITE A FEW OF THOSE ON THE LIST WERE PUBLICLY
AVAILABLE AND THEY COULD GET IT THEMSELVES.

QUITE A FEW OF THEM ON THE LIST WE'D
ALREADY PROVIDED THOSE DOCUMENTS.

AND IT SAYS IN OUR LETTER, QUOTE, "THE
FREECYCLE NETWORK HAS ALREADY PROVIDED THE VAST
MAJORITY OF THESE DOCUMENTS IN EARLIER DOCUMENT
PRODUCTIONS, INCLUDING FROM," AND IT GOES ON TO
IDENTIFY THE WEB SITE NAME.

THE ONLY STATEMENT THAT WE MADE WAS "THE
FREECYCLE NETWORK MAY NOT HAVE DIRECT ACCESS TO THE

14:42:08 1    ARCHIVES FOR THESE GROUPS AND MAY NOT BE ABLE TO"

14:42:12 2    ACCESS, "SECURE ACCESS ON YOUR BEHALF AS THESE

14:42:16 3    GROUPS WERE CREATED BY LOCAL MODERATORS WHO MAY

14:42:19 4    RETAIN SOLE CONTROL OVER ACCESS TO THOSE GROUPS."

14:42:23 5         AND WHAT WE WERE REFERRING TO THERE ARE

14:42:25 6    THOSE INDIVIDUALS WHO DECIDED THEY NO LONGER WANTED

14:42:27 7    TO BE PART OF THE FREECYCLE NETWORK SUCH THAT WE

14:42:30 8    DON'T HAVE ANY KIND OF ACCESS TO THEIR OLD FILES

14:42:32 9    THAT MAY HAVE EXISTED.

14:42:33 10        AND TO THE EXTENT WE DID, WE PRODUCED

14:42:36 11   THEM, OR THERE WAS A FEW INSTANCES IN WHICH THE

14:42:39 12   MODERATORS DID NOT PROVIDE THE FREECYCLE NETWORK

14:42:42 13   ACCESS TO ALL OF THEIR FILES, BUT REPRESENTED THAT

14:42:44 14   THEY WOULD DO THE POLICING AND MONITORING MORE

14:42:46 15   AGGRESSIVELY THAN SOME OF THE OTHER MODERATORS ON

14:42:50 16   THE OTHER WEB SITES.

14:42:51 17        SO IT'S A VERY SMALL SUBSECTION THAT WAS

14:42:54 18   BEING DISCUSSED IN CONNECTION WITH THAT PARTICULAR

14:42:56 19   QUOTE, AND THEY COMPLETELY MISREPRESENTED IT AND

14:42:59 20   SAID THAT WE BASICALLY STATED WE DON'T HAVE

14:43:02 21   POSSESSION, CUSTODY, OR CONTROL OF THESE DOCUMENTS,

14:43:04 22   WHICH IS ABSOLUTELY UNTRUE, AND IF YOU LOOK AT THE

14:43:07 23   VERY SAME LETTER, WHICH IS A JUNE 7TH, 2007 LETTER,

14:43:11 24   IT SETS THAT FORTH QUITE CLEARLY.

14:43:13 25        THE COURT:  THE DECLARATORY JUDGMENT, AS

30

14:43:18  1   I HAVE IT, SEEMS TO BE DECLARATORY JUDGMENT THAT

14:43:22  2   THEY DID NOT INFRINGE YOUR TRADEMARK.

14:43:24  3        ARE YOU SAYING IT WAS A DECLARATORY

14:43:26  4   JUDGMENT THAT YOU DON'T HAVE A TRADEMARK?

14:43:27  5        MS. KOBIALKA:  IN PART TWO, THAT WAS -- I

14:43:29  6   BELIEVE THE REQUEST FOR RELIEF WAS THAT THEY

14:43:31  7   DON'T -- THAT THERE IS NO TRADEMARK.

14:43:33  8        THE COURT:  OKAY.  AND THEN YOU REFER TO

14:43:36  9   CLAIMS YOU HAVE AGAINST THEM.  ARE THOSE YOUR

14:43:41  10  COUNTERCLAIMS?

14:43:43  11       MS. KOBIALKA:  THAT'S CORRECT.

14:43:43  12       THE COURT:  YOU HAVE SOME OTHER CLAIM

14:43:45  13  AGAINST THEM BESIDES YOUR COUNTERCLAIMS?

14:43:46  14       MS. KOBIALKA:  NO.  WITH RESPECT TO

14:43:48  15  FREECYCLESUNNYVALE, WE ONLY HAVE THE COUNTERCLAIMS

14:43:51  16  THAT ARE IN THIS CASE.

14:43:51  17       THE COURT:  OKAY.

14:43:52  18       MS. KOBIALKA:  AND THAT HAVE BEEN

14:43:52  19  ASSERTED.

14:43:53  20       THE COURT:  OKAY.  SO IF I WERE TO FIND

14:43:55  21  THAT YOU HAD NAKEDLY LICENSED FREECYCLESUNNYVALE

14:44:00  22  ITSELF AND, THUS, THEY COULD NOT BE ACCUSED OF

14:44:02  23  INFRINGING YOUR TRADEMARKS, BUT I SAID THAT THERE

14:44:06  24  WAS A DISPUTE ABOUT WHETHER YOU HAD RECAPTURED YOUR

14:44:09  25  TRADEMARK AND WHETHER YOU DID HAVE A TRADEMARK

31

1    VIS-A-VIS SOME OTHER PEOPLE, WHICH OF YOUR

2    COUNTERCLAIMS IN YOUR VIEW WOULD SURVIVE?

3            MS. KOBIALKA:  WELL, WE STILL WOULD

4    PROBABLY HAVE OUR TRADEMARK INFRINGEMENT CLAIM.

5            THE COURT:  AGAINST WHOM?

6            MS. KOBIALKA:  AGAINST

7    FREECYCLESUNNYVALE, BECAUSE THE DETERMINATION IS

8    GOING TO NEED TO BE MADE IN TERMS OF AT WHAT POINT,

9    TO THE EXTENT YOU DETERMINE THERE'S BEEN NAKED

10   LICENSING, THE RECAPTURE ACTUALLY OCCURRED.

11           THE COURT:  NO, THE RECAPTURE WOULD NEVER

12   OCCUR -- THERE WOULD NEVER BE ANY RECAPTURE

13   VIS-A-VIS THEM.  IT WAS ALWAYS SENIOR TO YOUR

14   RECAPTURE.

15           SO IF I FELT THERE WAS SOME ISSUE ABOUT

16   RECAPTURING VIS-A-VIS OTHER PEOPLE WHO GOT THE

17   PERMISSION TO USE YOUR WORD AFTER YOU HAD BEGUN

18   CLOTHED LICENSING, WHICH OF YOUR COUNTERCLAIMS

19   WOULD SURVIVE?

20           MS. KOBIALKA:  I BELIEVE WE HAVE A

21   COUNTERCLAIM FOR UNFAIR COMPETITION AND -- TO BE

22   FRANK, I CAN'T REMEMBER IT VERBATIM OFF THE TOP OF

23   MY HEAD AT THE MOMENT, BUT I BELIEVE THAT WOULD

24   SURVIVE BECAUSE I THINK THERE'S ADDITIONAL CONDUCT

25   OUTSIDE OF JUST TRADEMARK INFRINGEMENT THAT WAS THE

BASIS FOR OUR COUNTERCLAIMS.

        THE COURT:  THAT'S THE ONLY ONE, THEN?

        MS. KOBIALKA:  THAT'S THE ONLY ONE THAT'S
COMING TO MIND.  I WOULD LIKE TO BE ABLE TO TAKE A
LOOK --

        THE COURT:  IS THAT YOUR 17200 CLAIM?

        MS. KOBIALKA:  I BELIEVE THAT'S CORRECT.
LET ME --

        (PAUSE IN PROCEEDINGS.)

        MS. KOBIALKA:  YEAH, WE HAD A 17200,
17500 CLAIM.

        THE COURT:  DOES THAT --

        MS. KOBIALKA:  AND WE HAD A CLAIM UNDER
THE LANHAM ACT AS WELL.  SO A 43(A) CLAIM.

        THE COURT:  AND THOSE ARE ADDRESSED TO
PEOPLE OTHER FREECYCLESUNNYVALE?

        MS. KOBIALKA:  NO.

        THIS PARTICULAR CLAIM, HOWEVER, HAD TO GO
TO MISREPRESENTING THE NATURE, THE CHARACTERISTICS,
AND QUALITIES OF THE FREECYCLE NETWORK'S SERVICES
THEMSELVES, AND THAT THERE WAS A NUMBER OF
STATEMENTS THAT THEY HAD MADE THAT HAD DAMAGED THE
FREECYCLE NETWORK.

        SO WE HAD THAT ADDITIONAL CLAIM SEPARATE
AND APART FROM OUR TRADEMARK INFRINGEMENT CLAIM.

33

THE COURT:  WHAT IS THAT, SOME KIND OF

TRADE LIABLE CLAIM?

MS. KOBIALKA:  YEAH.  I THINK IT'S A

FALSE ADVERTISING TYPE OF CLAIM WHERE THEY WERE

MAKING STATEMENTS ABOUT US WHILE THEY HAD THEIR

COMPETE AND SERVICE.

THE COURT:  OKAY.  SO YOU'RE TALKING

ABOUT AN UNFAIR COMPETITION CLAIM AGAINST

FREECYCLESUNNYVALE FOR DOING WHAT?

MS. KOBIALKA:  SO WE HAVE INDUCING

INFRINGEMENT, THAT'S PARAGRAPH 75 --

THE COURT:  INDUCING INFRINGEMENT.

MS. KOBIALKA:  WE ALSO HAD ENCOURAGING

THE MISUSE OF THE MARKS.

THE COURT:  AND WHAT ELSE?

MS. KOBIALKA:  THOSE WERE THE TWO PRIMARY

ALLEGATIONS THAT SUPPORTED THE --

THE COURT:  AND THEN THIS FALSE --

MS. KOBIALKA:  -- THE 43(A).

THE COURT:  -- ADVERTISING?

MS. KOBIALKA:  YES, AND THE UNFAIR

COMPETITION.

THE COURT:  I THOUGHT THE UNFAIR

COMPETITION WAS INDUCING AND ENCOURAGING OTHERS TO

USE YOUR TRADEMARK.

14:47:08  1          MS. KOBIALKA:  IT IS UNDER 43(A), AS WELL

14:47:09  2   AS 17200 AND 17500 IS WHAT I MEANT.

14:47:12  3          THE COURT:  AND THEN FALSE ADVERTISING.

14:47:21  4          OKAY.  DID YOU WANT TO --

14:47:22  5          MR. FEINBERG:  CAN I MAKE A FEW COMMENTS,

14:47:24  6   YOUR HONOR?

14:47:25  7          THE COURT:  YES.

14:47:26  8          MR. FEINBERG:  ONE --

14:47:26  9          THE COURT:  LET ME ASK YOU FIRST, ARE YOU

14:47:28 10   SUING THEM FOR SOME SORT OF DECLARATION THAT THEY

14:47:30 11   DON'T HAVE A TRADEMARK AT ALL, OR ARE YOU SIMPLY

14:47:33 12   SUING THEM FOR A DECLARATION THAT YOU DON'T

14:47:34 13   INFRINGE IT?

14:47:35 14          MR. FEINBERG:  BOTH.  BUT I DON'T KNOW

14:47:36 15   WHETHER -- I MEAN, THERE'S A STANDING QUESTION.

14:47:38 16          IF WE ARE HELD TO BE NAKEDLY LICENSED,

14:47:42 17   I'M GOING TO HAVE TO LOOK, AND SO WILL OPPOSING

14:47:45 18   COUNSEL, AT WHAT WE HAVE STANDING TO DO AT THIS

14:47:47 19   POINT, BECAUSE IT ISN'T CLEAR TO ME THAT WE HAVE

14:47:50 20   STANDING TO COMPLAIN ABOUT WHAT THEY'VE DONE TO

14:47:52 21   OTHER PEOPLE OR WHAT THEY MIGHT DO TO OTHER PEOPLE.

14:47:56 22          I REPRESENT FREECYCLESUNNYVALE.  I HAVE,

14:47:59 23   FRANKLY, NO INTEREST IN REPRESENTING, ON A PRO BONO

14:48:03 24   BASIS, AND OPPOSING HER ON A PRO BONO BASIS, THE

14:48:06 25   REST OF THE UNIVERSE OF PEOPLE WHO MAY HAVE

                                                          35

SOMETHING, SOME AX TO GRIND WITH MR. BEAL, AND I
SUSPECT YOU WOULD JUST AS SOON NOT SEE US FOR THE
NEXT OF THE THREE YEARS ON A WEEKLY BASIS.

THE COURT:  AND THEN WHAT DID YOU SAY
ABOUT YOUR TORTIOUS INTERFERENCE CLAIM AGAINST
THEM?  YOU WERE SORT OF WAVING YOUR HANDS ABOUT
THAT.  ARE YOU SAYING YOU'LL DISMISS THAT?

MR. FEINBERG:  YEAH.  WE ALREADY WAIVED
THE -- IT SEEMED -- AND INTERESTINGLY, THEY DID NOT
TAKE THIS POSITION, BUT IT SEEMED UNSEEMLY FOR A
NONPROFIT TO SEEK TORT DAMAGES AGAINST A NONPROFIT,
BUT THEY'VE OBVIOUSLY TAKEN A SOMEWHAT DIFFERENT
TACT.

I THINK ONE THING THAT'S WORTH BEARING IN
MIND -- FIRST OF ALL, WE DID MOVE ON THE TRADEMARK
COUNTERCLAIMS.  I LOOKED WHILE WE WERE TALKING,
WHILE OPPOSING COUNSEL WAS TALKING, AND WE CLEARLY
MOVED.

THE COURT:  YEAH.  COULD YOU ADDRESS HER
THEORIES ABOUT WHICH OF THEM WOULD SURVIVE EVEN IF
YOU WERE NAKEDLY LICENSED?

MR. FEINBERG:  YEAH.  AND THEN -- SO WE
DID MOVE ON THEIR CLAIMS.

THE COURT:  RIGHT.

MR. FEINBERG:  WE ALSO, THE -- THE FACT

THAT WE DIDN'T CHALLENGE MR. BEAL AND HIS

DECLARATION IS BECAUSE I DIDN'T COME DOWN WITH THE

LAST SNOWFALL.

        I MEAN, NO COMPETENT LAWYER IS GOING TO

GET INTO A FACTUAL FIGHT OVER MR. BEAL.

        I THINK IT TURNS OUT THAT HE'S COMPLETELY

MISTAKEN AND WE'LL PROVE IT, BUT IT'S IRRELEVANT TO

THIS MOTION, SO WE JUST DIDN'T TAKE HIM ON.

        ONE OF THE THINGS THAT'S INTERESTING --

        THE COURT:  YOU DIDN'T COME DOWN WITH THE

FIRST SNOWFALL?

        MR. FEINBERG:  THE LAST SNOWFALL.

        THE COURT:  THAT'S A NEW ONE.  IS THAT

KIND OF LIKE NOT HAVING A DOG IN THE FIGHT, OR

WHAT?

        MR. FEINBERG:  NO.  IT'S JUST THAT I'M

NOT SO NAIVE THAT I'M GOING TO TAKE ON EVERY ISSUE.

        THE COURT:  I SEE.

        MR. FEINBERG:  I CHASE ENOUGH WILD

RABBITS.  I DON'T NEED TO CHASE THEIRS, TOO.

        ONE OF THE THINGS THAT IS INTERESTING

ABOUT THIS, THOUGH, IS WHAT EXACTLY IS THE QUALITY

CONTROL THAT THEY'RE EXERCISING?  EVEN TODAY IT'S

FREE, IT'S LEGAL, AND IT'S APPROPRIATE FOR ALL

AGES.

THAT ISN'T A QUALITY STANDARD.  THAT'S A
SCOPE OF USE OF THE TRADEMARK.

THEY HAVE BEEN POUNDING PEOPLE OVER THE
HEAD ON WHETHER THEY'RE WITHIN THE SCOPE OF WHAT
YOU'RE ALLOWED TO USE FREECYCLING FOR, BECAUSE OF
COURSE THE MARK FREECYCLE DOES, IN FACT, HAVE THE
WORD "FREE" IN IT.

BUT THIS WOULD BE LIKE MCDONALD'S SUING
PEOPLE BECAUSE THEY LICENSED THE MARK FOR
HAMBURGERS, FRENCH FRIES AND MILK SHAKES AND THEY
WERE USING IT FOR HEALTH FOOD AND THEY SAID YOU'RE
OUTSIDE THE SCOPE OF THE LICENSE.

THAT'S NOT QUALITY CONTROL.

QUALITY CONTROL WOULD BE IF THEY WERE
SELLING LOUSY HAMBURGERS IN A DIRTY RESTAURANT.

SO ACTUALLY, I THINK THE PROBLEM THEY'VE
GOT HERE, AND ULTIMATELY IF WE DO GO TO TRIAL ON
BEHALF OF ALL THESE PEOPLE I HOPE I DON'T
REPRESENT, I THINK THEY'VE GOT A PROBLEM BECAUSE I
DON'T THINK THEY DO QUALITY CONTROL AT ALL.

BUT THAT'S -- WE DON'T NEED TO GET THERE
FOR THIS MOTION.

THIS ONE WAS A VERY LIMITED MOTION.  WE
WOULD LIKE PERMISSION TO GET RID OF ALL THESE OTHER
COUNTERCLAIMS TO THE EXTENT THEY'RE NOT DISPOSED OF

38

14:50:55 1 BY THIS MOTION, BECAUSE I DO THINK THAT THE NINTH

14:50:58 2 CIRCUIT'S DECISION YESTERDAY REALLY DOES GUT THE

14:51:01 3 COUNTERCLAIMS.

14:51:02 4      BY THE WAY, YOU HAVE TO READ DENNIS

14:51:07 5 CORGILL'S DECLARATION. SOME OF WHAT SHE SAYS ISN'T

14:51:10 6 IN THE LETTER ISN'T IN THE LETTER BECAUSE THE

14:51:13 7 DECLARATION SAYS HE WAS TOLD THAT IN A TELEPHONE

14:51:15 8 CALL. SO IT'S NOT EXACTLY A CONTRADICTION.

14:51:18 9      THE COURT: WELL, SO, AGAIN I ASK YOU,

14:51:22 10 WHICH OF -- WHAT DO YOU SAY TO HER ARGUMENT AS TO

14:51:25 11 WHICH OF HER COUNTERCLAIMS SURVIVE IF I FIND NO --

14:51:30 12 IF I FIND THAT YOU WERE NAKEDLY LICENSED, BUT THAT

14:51:33 13 THERE'S A DISPUTE ABOUT THE RECAPTURE?

14:51:36 14      MR. FEINBERG: I THINK NOTHING SURVIVES,

14:51:37 15 YOUR HONOR. I THINK NOTHING SURVIVES.

14:51:39 16      THE COURT: RESPOND TO HER ARGUMENT THAT

14:51:41 17 THE INDUCEMENT AND THE ENCOURAGEMENT SURVIVES AND

14:51:44 18 THAT THE FALSE ADVERTISING SURVIVES.

14:51:46 19      MR. FEINBERG: THE PROBLEM IS THAT WHAT

14:51:47 20 WE ARE ALLEGED TO DO IS NOT TO SAY -- NOT TO USE

14:51:50 21 FREECYCLE TO -- IN A CONFUSINGLY SIMILAR WAY.

14:51:54 22      WHAT THEY'RE ACTUALLY SAYING, IF YOU READ

14:51:55 23 IT, IS THAT WE WERE ENCOURAGING PEOPLE TO USE IT IN

14:51:58 24 A NON-TRADEMARK WAY FOR THE PURPOSE OF DESTROYING A

14:52:02 25 TRADEMARK.

14:52:04  1          THAT'S TRADEMARK INFRINGEMENT, AND THAT'S

14:52:06  2   NOT ACTIONABLE.

14:52:07  3          AND IF WE HAD A LICENSE TO USE IT AND WE

14:52:11  4   ENCOURAGE OTHER PEOPLE TO USE IT, IT'S NOT

14:52:14  5   ACTIONABLE.

14:52:15  6          AND SOME OF THOSE FOLKS WILL TURN OUT TO

14:52:18  7   HAVE BEEN NAKEDLY LICENSED AT WELL.

14:52:20  8          AT THIS POINT THEY HAVEN'T ESTABLISHED --

14:52:22  9   NOTWITHSTANDING WHAT OPPOSING COUNSEL SAYS, THEY

14:52:25 10   HAVEN'T ESTABLISHED A RIGHT TO ANYTHING.

14:52:26 11          THEY MADE A REGISTER, OR AN APPLICATION

14:52:29 12   TO REGISTER THE MARK.

14:52:30 13          WE OPPOSED.

14:52:31 14          IT WAS STAYED AT THEIR REQUEST, AS PEOPLE

14:52:33 15   TEND TO DO WHEN THERE'S A DISTRICT COURT ACTION,

14:52:35 16   AND THEY'RE ENTITLED TO STAY IT.

14:52:37 17          BUT THEY DON'T -- THEY HAVE A PURPORTED

14:52:39 18   MARK.  THEY DON'T HAVE ANY MARK AT THIS POINT.

14:52:41 19          THE COURT:  OKAY.  AND WHAT ABOUT THE

14:52:43 20   FALSE ADVERTISING CLAIM AGAINST YOU?

14:52:45 21          MR. FEINBERG:  IF WE HAD A LICENSE TO USE

14:52:48 22   THE WORD "FREECYCLE" AND WE USED IT, WE WERE

14:52:51 23   NAKEDLY LICENSED AND WE CAN'T BE GUILTY OF FALSE

14:52:54 24   ADVERTISING.

14:52:54 25          THE COURT:  SHE'S SAYING YOU SAID BAD

14:52:55 1    THINGS ABOUT THEM, MAYBE THAT THEY WEREN'T WARM AND

14:52:59 2    FUZZY, OR THAT THEY WERE STALINISTIC, OR WHO KNOWS

14:53:02 3    WHAT.  I'M NOT SURE EXACTLY WHAT IT IS.

14:53:04 4         MR. FEINBERG:  BUT THAT'S NOT A CLAIM FOR

14:53:06 5    FALSE ADVERTISING.

14:53:07 6         AND, UNFORTUNATELY, WE'RE GETTING A

14:53:09 7    LITTLE BIT IN BETWEEN -- THE NINTH CIRCUIT HAS GONE

14:53:12 8    HEAD-ON ON A LOT OF THE ISSUES THAT YOU'RE ASKING

14:53:14 9    ABOUT.

14:53:14 10        THE COURT:  OKAY.  I'LL HAVE TO READ IT.

14:53:16 11        SO MAYBE WHAT WE SHOULD DO IS HAVE SOME

14:53:18 12   POST-HEARING BRIEFS THAT WOULD ADDRESS HOW THE

14:53:21 13   NINTH CIRCUIT'S OPINION WOULD AFFECT THE ISSUES.

14:53:23 14        MR. FEINBERG:  OKAY.  SO IT DOESN'T

14:53:24 15   AFFECT NAKED LICENSING AT ALL.

14:53:27 16        IT DOESN'T AFFECT THE COUNTERCLAIMS,

14:53:28 17   WHICH IS WHY I ASKED FOR PERMISSION TO FILE A

14:53:30 18   MOTION FOR SUMMARY JUDGMENT ON THE COUNTERCLAIMS.

14:53:33 19        THE COURT:  YOU ALREADY DID.  BUT ANOTHER

14:53:34 20   ONE?

14:53:35 21        MR. FEINBERG:  YEAH, BASED ON THE NINTH

14:53:37 22   CIRCUIT CASE.

14:53:37 23        THE COURT:  OKAY.  WELL, I GUESS WE COULD

14:53:39 24   PUT IT THAT WAY, OR WE COULD SAY THAT IT WAS IN

14:53:42 25   FURTHER SUPPORT OF YOUR MOTION YOU'VE ALREADY MADE

FOR SUMMARY JUDGMENT ON THE COUNTERCLAIMS.

MR. FEINBERG:  I THINK THEY'RE ACTUALLY DIFFERENT ISSUES, SO I WOULD PREFER IT AS A SEPARATE MOTION, AND IT'LL BE SHORT BECAUSE BASICALLY I'M GOING TO CITE THE ONE CASE.

THE COURT:  OKAY.  ALL RIGHT.  WELL, WHEN DO YOU WANT TO FILE IT?

MR. FEINBERG:  IN THE NEXT FOUR WEEKS.

THE COURT:  HOW ABOUT SOONER?

MR. FEINBERG:  CAN WE HAVE THREE WEEKS? WE'RE GOING TO HAVE -- DENNIS, WHO'S MY LEAD GUY, HAS LEFT THE FIRM, SO I'M A LITTLE BIT SCRAMBLED.

THE COURT:  OKAY.  ALL RIGHT.  WE'LL MAKE IT FOUR.

MS. KOBIALKA:  WILL WE HAVE AN OPPORTUNITY TO RESPOND TO THIS?  WE'RE GOING TO DO A FULL BRIEFING?

THE COURT:  YEAH.  YOU CAN FILE YOURS TWO WEEKS LATER, AND YOU FILE YOURS A WEEK AFTER THAT.

I DON'T THINK I'LL NEED TO HAVE A HEARING ON IT.  I'LL JUST DECIDE IT ON THE PAPERS.

AND I WON'T RULE ON THIS UNTIL I GET THAT, BECAUSE SOME OF THAT MIGHT AFFECT THIS.

YOU CAN ADDRESS IN THAT HOW THE NINTH CIRCUIT'S OPINION MAY INFLUENCE WHAT WE ALREADY

HAVE BEFORE US.

            MR. FEINBERG:  OKAY.

            THE COURT:  NOW, DO YOU HAVE ANY OTHER
DATES FOR ANYTHING?

            OH, YOU HAD A DISPOSITIVE MOTION CUT OFF.
YOU DON'T -- YOU'RE NOT HOLDING BACK ANYTHING TO
MAKE A DISPOSITION MOTION CUT OFF?

            MR. FEINBERG:  WELL, AT SOME POINT, IF
THE THING ISN'T OTHERWISE RESOLVED -- AND I INTEND
TO HAVE A HALLWAY CONVERSATION WITH OPPOSING
COUNSEL AS TO WHY THEY WANT US OUT OF HERE, BUT
THE -- AT SOME POINT THERE'S GOING TO BE
CROSS-MOTIONS ON WHETHER THIS THING IS A MARK, IF
WE STILL HAVE STANDING AT THAT POINT.

            THE COURT:  WHY DON'T YOU ADDRESS THAT IN
YOUR NEW MOTION?

            MR. FEINBERG:  OKAY.  BECAUSE IF IT'S
GRANTED, I DON'T KNOW IF WE HAVE STANDING.

            THE COURT:  WELL, WOULD YOU LOOK INTO
THAT?

            MR. FEINBERG:  YES.  THERE'S NOT A LOT OF
NAKED LICENSE CASES ANYWAY, SO I HAVE MY DOUBTS OF
HOW CLOSE I'LL GET.

            THE COURT:  YEAH, BECAUSE I WANT TO BE
ABLE TO KNOW BY THE END OF THE NEXT ROUND OF

14:55:30  1    BRIEFING WHAT, IF ANYTHING, THERE IS LEFT.

14:55:33  2              MR. FEINBERG:  ME, TOO.

14:55:34  3              MS. KOBIALKA:  AND IN LIGHT OF DOING ALL

14:55:35  4    THIS BRIEFING THIS EARLY, WE DON'T WANT ANY

14:55:38  5    COMPLAINTS ON THEIR SIDE TO THE EXTENT THAT WE GET

14:55:41  6    EXPERTS TO PROVIDE DECLARATIONS IN THIS MATTER,

14:55:43  7    PARTICULARLY AS IT RELATES TO THE NINTH CIRCUIT

14:55:46  8    OPINION, THAT THEY HAVEN'T HAD THE OPPORTUNITY TO

14:55:48  9    GET DISCOVERY BECAUSE THEY'RE DOING THIS WELL

14:55:50 10    BEFORE ANY OF THE EXPERT DISCLOSURES THAT WE HAD

14:55:52 11    AGREED TO IN THIS CASE.

14:55:54 12              THE COURT:  WHAT WOULD YOU NEED EXPERTS

14:55:55 13    FOR?

14:55:55 14              WELL, LET'S PUT IT THIS WAY:  IF YOU HAVE

14:55:57 15    SOME EXPERTS YOU WANT TO RELY ON IN YOUR

14:56:01 16    OPPOSITION, YOU CAN DO THAT.

14:56:01 17              AND YOU CAN -- IF YOU NEED TO DEPOSE THEM

14:56:03 18    BEFORE YOU FILE YOUR REPLY, I GUESS YOU CAN EITHER

14:56:07 19    STIPULATE OR MOVE FOR AN EXTENSION OF TIME TO FILE

14:56:09 20    YOUR REPLY.

14:56:10 21              BUT I DON'T SEE ANY NEED FOR EXPERTS IN

14:56:12 22    THIS CASE.

14:56:13 23              MS. KOBIALKA:  I THINK THERE'S A NUMBER

14:56:13 24    OF ISSUES THAT MAY COME UP, AND IT'S GOING TO

14:56:16 25    DEPEND ON WHAT THE BRIEFING SAYS AS WELL, THAT MAY

44

ACTUALLY MAKE EXPERT TESTIMONY APPROPRIATE.

THE COURT: I DON'T TAKE EXPERTS ON THE LAW, SO DON'T GET ANY EXPERTS ON TRADEMARK LAW.

MS. KOBIALKA: IT'S NOT.

THE COURT: OKAY. AND THEN -- SO WE'VE GOT A FURTHER CASE MANAGEMENT CONFERENCE ON THE 20TH OF FEBRUARY. WE'LL WORRY ABOUT THAT LATER.

AND YOU'VE ALREADY TRIED TO SETTLE. YOU WEREN'T ABLE TO SETTLE, I GUESS.

THAT WAS A WHILE AGO. YOU WANT TO TRY TO SETTLE AGAIN.

MR. FEINBERG: WE SPENT WEEKS IN MEDIATION BEFORE AN OUTSTANDING NINTH CIRCUIT MEDIATOR AND WE WENT AROUND AND AROUND AND AROUND.

THE COURT: BACK IN JUNE OF '06.

MR. FEINBERG: NO.

THE COURT: WHEN WAS THIS?

MS. KOBIALKA: WE WENT ALL THE WAY THROUGH --

THE COURT: OH, BECAUSE YOU HAD THE NINTH CIRCUIT THING IN CONNECTION WITH THE OTHER CASE.

THAT'S ANOTHER QUESTION I HAVE. WHAT'S THE STATUS OF THAT OTHER CASE, AND DOES IT MAKE SENSE FOR US TO HAVE TWO CASES?

MR. FEINBERG: IT DOESN'T, BUT YOU'VE GOT

THE NINTH CIRCUIT DECISION THAT STAYED IT.

MS. KOBIALKA:  ACTUALLY, NO.  THE NINTH
CIRCUIT --

THE COURT:  THEY REMANDED.

MS. KOBIALKA:  THEY REMANDED, EXACTLY.

AND THAT CASE IS STAYED, AND IN THE
OPINION, THEY ACTUALLY HAD A FOOTNOTE THAT -- THEY
ACTUALLY HAVE AN OPINION SAYING THAT THERE ARE
OTHER CAUSES OF ACTION THAT THE FREECYCLE NETWORK
HAS.

SO I'M NOT SURE WHETHER THAT --

THE COURT:  SO THE JUDGE IN THE OTHER
CASE STAYED HIS CASE?

MR. FEINBERG:  AFTER HE ISSUED A
PRELIMINARY INJUNCTION, HE STAYED IT.

THE NINTH CIRCUIT THEN STAYED THE
PRELIMINARY INJUNCTION AND REVERSED IT, BUT THAT
DOESN'T UNSTAY THE CASE.  SO IT'S STILL STAYED.

THE COURT:  AND HE STAYED IT PENDING THIS
CASE?

MR. FEINBERG:  YES.

THE COURT:  PENDING THIS CASE?

MR. FEINBERG:  YES.

THE COURT:  AND DID WE TALK ABOUT WHETHER
HIS CASE COULD BE TRANSFERRED HERE OR MY CASE COULD

14:57:44  1    BE TRANSFERRED THERE?

14:57:44  2            MS. KOBIALKA:  THEY TRIED TO TRANSFER THE

14:57:46  3    ARIZONA CASE HERE.  IT WAS REJECTED.  IT WAS

14:57:48  4    DENIED.  THE REQUEST WAS DENIED.

14:57:50  5            MR. FEINBERG:  THIS WAS NOT ME.  WE

14:57:51  6    HAD -- MR. OEY, WHO'S THE ONLY INDIVIDUAL, HIS

14:57:53  7    INSURANCE DEFENSE COUNSEL DID IT AND IT WAS NOT

14:57:56  8    TRANSFERRED.

14:57:57  9            WE WERE NOT OF RECORD.

14:57:58  10           THE COURT:  OKAY.  WELL, IF THERE'S NEW

14:58:00  11   AND DIFFERENT GROUNDS BASED ON THE OPINION, YOU CAN

14:58:02  12   CERTAINLY TRY AGAIN.

14:58:04  13           I MEAN, IT WOULD BE GOOD TO GET THESE

14:58:06  14   THINGS RESOLVED.

14:58:09  15           OR YOU CAN MOVE TO TRANSFER MY CASE TO

14:58:11  16   ARIZONA.  I'D LIKE THAT.

14:58:14  17           MR. FEINBERG:  WE WILL NOT BE DOING THAT,

14:58:15  18   YOUR HONOR.

14:58:16  19           MS. KOBIALKA:  WE'D BE HAPPY TO DO THAT

14:58:18  20   IF YOU WANT.

14:58:18  21           THE COURT:  OKAY.  THANK YOU.

14:58:20  22           MS. KOBIALKA:  THANK YOU, YOUR HONOR.

14:58:21  23           MR. FEINBERG:  THANK YOU.

14:58:22  24           (WHEREUPON, THE PROCEEDINGS IN THIS

14:58:22  25   MATTER WERE CONCLUDED.)

47